UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
XDOOD LLC, derivatively on behalf of ELTEK, LTD,

                            Plaintiff,

                              v.

INTERACTIVE BROKERS GROUP,
INC., MORGAN STANLEY SMITH
BARNEY LLC, JOHN DOES 1-10

                            Defendants.
---------------------------------------------------------X

Case No. 1:25-cv-08536 (LAK)

**DECLARATION OF MICHAEL MCGAULEY**

Michael McGauley, being duly sworn, hereby declares as follows:

    1.    I am the manager and sole member of Plaintiff XDOOD LLC ("Plaintiff"), which brings this action derivatively of and in the right of Eltek Ltd. ("Eltek").

    2.    This Declaration with exhibits attached hereto, are being submitted along with the accompanying Declaration of Peter Sverd, Esq., dated March 10, 2026 with exhibits attached, and the Memorandum of Law of even date, in support of Plaintiff's motion to lift the Private Securities Litigation Reform Act ("PSLRA") stay of discovery while motions to dismiss are pending (15 U.S.C. § 78u-4(b)(3)(B)).

    3.    I make this declaration based upon personal knowledge and/or my review of material herein, and on the basis that I believe them to be true.

    4.    Plaintiff seeks leave to perform non-party discovery for the limited and particularized purpose of learning the names/identities of the John Doe Minority Shareholders ("JDMS") of Eltek, so that these now-unknown parties can be added to this action.

    5.    Plaintiff's request is narrowly tailored to obtain entity names and brokerages via non-parties, including FINRA and The Depository Trust Company ("DTC"). Pre-September 2021 audit-trail data maintained by FINRA is in Order Audit Trail System (OATS); later data is in the

1

Consolidated Audit Trail (CAT) system. The identification process is sequential: non-party discovery directed to these systems will identify the brokerage firms where the trades occurred. Upon receipt of this information, Plaintiff must then obtain discovery from those brokerages to obtain account-level information, necessary to specifically identify JDMS.

6. The subpoenas to be served under this application are directed solely to independent record-keepers, the named Defendants bear no administrative or financial burden and need not produce materials while their motions to dismiss are pending.

7. Plaintiff is informed that the Federal claims made in operative Amended Complaint (Dkt 6) have a Statute of Repose of 5 years, and that common law fraud claims under New York Law can be as long as six (6) years.

8. The PSLRA Statute of Repose, and the New York's statute of limitations for common law fraud claims, are being used as a shield from liability by the JDMS, barring, and threatening to bar, Plaintiff's claims each day that ticks by.

9. It is respectfully submitted that the stay is causing undue prejudice to Plaintiff, and that lifting the stay would not offend the fundamental rationales underlying the PSLRA discovery provisions.

**UNDUE PREJUDICE: THE PSLRA STATUTE OF REPOSE & N.Y. CPLR STATUTE OF LIMITATIONS THREATEN TO EXTINGUISH CLAIMS AGAINST THE JDMS**

10. Per the Amended Complaint, Plaintiff identified multiple instances of wrongful trading activities by the JDMS which are on the cusp of being barred by the Statute of Repose.

11. Respectfully, the PSLRA stay prohibiting the Plaintiff from conducting non-party discovery into the identity of the JDMS, pending the Defendants' motions to dismiss the complaint, will continue to unduly prejudice the Plaintiff as the statute of repose threatens to bar Plaintiff's claims against JDMS.

12. The following events plead in the Amended Complaint plausibly allege JDMS Defendants engaged in fraud and unlawful market manipulation and are imminently at risk for extinguishment for federal claims. Excerpts of relevance paragraphs are included for convenience.

13. The trading activity of March 23, 2021, and the May 2021 period are approaching the five-year federal statute of repose. Because the JDMS remain unidentified, the time required to effectuate service of process, including the identification of brokerage entities and subsequent account-level discovery, threatens to bar these claims by operation of law. Plaintiff seeks this limited lift of the stay precisely to mitigate the risk of total extinguishment and to preserve the ability to pursue these federal claims before the repose period expires.

### March 23, 2021 - Post Market Trading

14. Per Amended Complaint ¶¶ 94-95. "On March 23, 2021, Eltek traded 167,021 shares. Prior to 4:00 pm there were 14,958 shares traded in 150 separate trades. After 4:00 pm, there were 1,234 separate trades with a total of 165,061 shares traded." And "There was no news on March 23, 2021, or the day before that could account for this trading activity."

15. The March 23, 2021 activity serves as a primary example of the anomalous trading patterns alleged in the Amended Complaint. The requested discovery is the only technical mechanism capable of cross-referencing these trade legs to determine if they originate from a single beneficial owner or a coordinated group, thereby distinguishing this anomalous activity from legitimate, market-driven liquidity.

### May 2021 Trading

16. Per the Amended Complaint ¶¶ 96-98 "May 3,2021 to May 12, 2021, the trading volume of Eltek went from 2,000 shares to 1.6M shares, equating to 92% of the Company Float. The Company stock price went up and down more than $2 per share in minutes. No public news

or events explain this trading." Additionally, "MSSB was not a primary market participant at this time", "Hence, John JDMS shareholders using other brokers were responsible for the trading activity." The following table summarized the trading activity.

*Trading between May 6, 2021, and May 10, 2021*

|  | Volume of Shares Traded | | | Price Per Share $ | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Date | Total Number | Percent of Outstanding | Percent of Float | Open | High | Low | Close |
| 6-May | 1,635,697 | 28.01% | 92.18% | 6.03 | 7.92 | 5.87 | 6.93 |
| 7-May | 85,441 | 1.46% | 4.81% | 6.86 | 7.28 | 6.67 | 7.25 |
| 10-May | 1,140,764 | 19.52% | 64.23% | 7.16 | 8.8 | 6.28 | 6.55 |

17. The trading patterns observed between May 3 and May 12, 2021, exhibit the specific signatures of the coordinated price fixing and artificial volume spikes alleged in the Amended Complaint. Identifying the participants behind these specific transactional patterns, which deviate significantly from lawful trading, is a ministerial necessity to distinguish between legitimate market participants and the anonymous JDMS actors responsible for the manipulative activity at issue.

### THE DISCOVERY SOUGHT FROM NON-PARTIES SEEKS MINISTERIAL INFORMATION & IS NARROWLY TAILORED

18. Plaintiff seeks partial discovery solely from non-parties, Depository Trust Company ("DTC") through its nominee Cede & Co., and from FINRA as the regulator that maintains the relevant audit-trail systems.

19. This level of discovery is the only method for the Plaintiff to obtain order-level audit-trail data necessary to identify the JDMS defendants responsible for the conduct set forth in the Amended Complaint.

20. For trading activity occurring prior to September 1, 2021, the relevant audit-trail information is maintained by FINRA in the Order Audit Trail System ("OATS"). For trading

activity occurring thereafter, the equivalent data is maintained in the SEC-mandated Consolidated Audit Trail ("CAT").

21. Although the alleged manipulative trading activity detailed in the Amended Complaint spans both the OATS and CAT reporting periods, limited discovery from the OATS system, which contains the data for the events detailed herein, is necessary to prevent undue prejudice. This data is exclusively within FINRA's possession and control.

22. Because the subpoenas will be directed solely to these independent record-keepers, FINRA, DTC, and Cede & Co., Defendants Interactive Brokers Group, Inc. and Morgan Stanley Smith Barney LLC will bear no administrative or financial burden. This targeted approach eliminates the "burdensome discovery" concern that the PSLRA stay is designed to address and ensures that Defendants are not required to produce any discovery.

23. The identification process is sequential: non-party discovery directed to these systems will identify the brokerage firms. Upon receipt, Plaintiff will seek leave for follow-on subpoenas to those brokerages for account-level information.

24. For the reasons set forth herein and contained in the accompanying Memorandum of Law, it is respectfully requested that the court lift the Stay under the PSLRA so that the Plaintiff can conduct limited discovery.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/10/2026
County: Norfolk, Massachusetts

/s/ *Michael McGauley*
Michael McGauley
Managing Member of XDOOD LLC

5