UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
XDOOD LLC, derivatively on behalf
of ELTEK, LTD.,

                    Plaintiff,           Case No.: .: 1:25-cv-08536 (LAK)

-against-

INTERACTIVE BROKERS GROUP, INC.,
MORGAN STANLEY SMITH BARNEY LLC,
JOHN DOES 1-10
                    Defendants.
-------------------------------------------------------------X

To:    FINRA, Office of the Corporate Secretary
        1700 k Street, NW, Washington, D.C. 2006

## SCHEDULE A

### I. Definitions

    A. "You," "Your," and "FINRA" mean the Financial Industry Regulatory Authority, Inc., including its departments, affiliates, agents, and custodians of OATS and CAT data.

    B. "OATS" means FINRA's Order Audit Trail System and any successor repositories containing OATS-submitted data.

    C. "CAT" means the Consolidated Audit Trail and any data repositories maintained or accessed by FINRA related to CAT reporting.

    D. "Order Event" means any order-related lifecycle event, including but not limited to origination, receipt, route, modification, cancellation, allocation, and execution (full or partial). "Identifying Information" includes, without limitation: firm identifiers, market participant identifiers, customer or client identifiers as reported or masked in OATS/CAT (e.g., FDID/Customer Account ID), order IDs, route destination codes, exchange/ATS identifiers, and any unique event identifiers.

    E. "Covered Period" means **January 1, 2019 through May 12, 2021**.

    F. "Covered Instruments" means all records related to the securities: Eltek Ltd. trading under the NASDAQ Ticker Symbol ELTK; related derivative or linked product identified by CUSIP/CINS M40184109 and M40184208 , /ISIN IL0010828411 , CIK (SEC EDGAR ID): 0001024672 during the Covered Period.

    G. "Covered Accounts/Parties" means All market participants, including but not limited to all registered broker-dealers, ATS platforms, and associated MPIDs, that engaged in the routing, cancellation, modification, or execution of ELTK during the Covered Period.

**II. Scope of Documents and ESI to Be Produced**

**A. OATS Data**:  All OATS-reported records for Covered Instruments during the Covered Period, including for each Order Event:

(a) All available timestamps (in milliseconds or the highest precision available), with time zone designation and clock-synchronization standard;

(b) Order type and time-in-force;

(c) Side, quantity (displayed and non-displayed where reported), price, and price instruction (e.g., limit, market, stop, pegged);

(d) All order identifiers and linkages, including order IDs, route IDs, parent/child relationships, internal IDs, and any subsequent modifications;

(e) MPID or other market participant identifier for the submitting, receiving, and routing parties;

(f) Destination venue identifiers (exchange, ATS, internalization), including routing paths and order handling notes as reported;

(g) Execution details for each fill (partial and full), including execution IDs, execution timestamps, quantities, prices, and contra party identifiers as reported;

(h) Cancellation and replace events, including reason codes;

(i) Any customer or account identifiers reported or maintained in OATS (masked or tokenized as applicable), including FDID or equivalent;

(j) Any error-correction submissions or resubmissions affecting the above records.

(k) All OATS linkage files or cross-reference tables necessary to correlate and interpret order lifecycle events, including data dictionaries, code tables, field definitions, and versioning applicable during the Covered Period.

**B. CAT Data**: All CAT-reported records for Covered Instruments during the Covered Period associated with the Covered Accounts/Parties, including for each Order Event:

(a) All available timestamps (with stated precision), event sequencing, and linkage fields;

(b) Order type, handling instructions, time-in-force, and any special conditions or attributes;

(c) Side, quantity (displayed and hidden where reported), price, limit/peg/stop attributes, and midpoint or reference pricing indicators;

(d) All CAT order and event identifiers, including orderID, eventID, routedOrderID, parent-child linkages, allocations, and cancel/replace chains;

(e) FDID/Customer Account ID or equivalent, and any firm-designated identifiers, masked or tokenized as maintained;

(f) Firm identifiers, MPIDs, LEIs, and other market participant identifiers for origination, receipt, routing, destination, and execution;

(g) Venue identifiers (exchange, ATS, internalization), including ISO flags, routable/non-routable indicators, and venue-specific attributes;

(h) Execution details for each fill (partial and full), including execution IDs, timestamps, quantities, prices, and contra identifiers as reported;

(i) Any corrections, amendments, or resubmissions pertaining to the above events.
All CAT reference materials necessary to interpret the produced records, including data dictionaries, code tables, and field-level definitions applicable during the Covered Period.

**C. Ancillary Materials**

(a) Any communications, notices, or logs maintained by FINRA reflecting data quality issues, corrections, or system outages that would materially affect OATS or CAT records responsive to this subpoena for the Covered Period.

(b) Any audit logs or metadata sufficient to show when responsive OATS or CAT records were created, modified, or corrected within FINRA's systems, to the extent maintained.

**III. Format of Production**

(a) Produce OATS and CAT data in an industry-standard, machine-readable format (e.g., CSV, Parquet, or JSON), with accompanying load files and field-level metadata.

(b) Provide a data dictionary for each dataset and version, including field names, descriptions, value domains, code tables, and units.

(c) Provide a record layout describing tables, primary keys, and linkages required to reconstruct order lifecycles.

(d) Include a production cover letter identifying datasets, date ranges, instruments, and any exclusions or redactions.

(e) If any data is withheld, redacted, or not reasonably accessible, state the basis with sufficient detail to evaluate the claim and identify alternative sources or formats.

(f) All timestamps should include time zone and precision and specify the time standard used (e.g., UTC) and any clock-synchronization tolerances.

## IV. Time Period and Limitation

(a) The Covered Period is January 1, 2019 through May 12, 2021. If You contend that responsive records do not exist for any portion of this period, identify the affected dates and the reason.
(b) If exact matches for Covered Accounts/Parties or Covered Instruments are not feasible, produce records sufficient to identify and link the closest available identifiers, with an explanation of the mapping methodology.

## V. Confidentiality and Protective Measures

(a) If production of any materials is subject to confidentiality, privacy, or regulatory restrictions, produce such materials subject to the Protective Order entered in this action on [date to be determined], or, if none exists, promptly confer with the undersigned to establish appropriate protections.

(b) To the extent personally identifiable information or sensitive customer data must be masked, tokenize or mask consistent with FINRA's standard practices and provide the mapping method sufficient to maintain intra-dataset linkages without revealing underlying PII, unless otherwise ordered.

## VI. Instructions

(a) This subpoena requires a diligent search of all reasonably accessible records, including archived or backup repositories to the extent they are used for routine access or retrieval of OATS or CAT data.

(b) If compliance by the return date is impracticable, contact the undersigned promptly to discuss a reasonable schedule.

(c) This subpoena continues in effect until You have produced all responsive documents or have certified that no further responsive documents are in Your possession, custody, or control.

(d) If documents are withheld based on privilege, immunity, or other objection, produce a log identifying the nature of the documents, the basis for withholding, and sufficient detail to assess the claim without revealing privileged content.

(e) Do not destroy, alter, or modify responsive materials after receipt of this subpoena. Implement a litigation hold to preserve relevant OATS and CAT data for the Covered Period.

## VII. Certification

I certify that this subpoena is issued for a proper purpose, that the information sought is relevant and proportional to the needs of the case, and that reasonable steps have been taken to avoid imposing undue burden or expense on the recipient.

## VIII. Objections and Motion to Quash

Your rights to object or move to quash or modify this subpoena are preserved as provided by applicable law. Any objections shall be served in writing on the undersigned by the date and time set forth in the Federal Rules of Civil Procedure 45 (d). Failure to comply with this subpoena without adequate excuse may be deemed contempt of court.

Dated: New York, New York
      March 10, 2026

                                    The Law Offices of Peter Sverd, PLLC

                                    By: */s/ Peter Sverd*
                                    Peter Sverd, Esq. (PS0406)
                                    225 Broadway, Ste 613
                                    New York, NY 10007
                                    (646) 751-8743
                                    psverd@sverdlawfirm.com


SO ORDERED: _____
            Judge Lewis A. Kaplan, U.S.D.J.