# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

XDOOD LLC, derivatively on behalf of
ELTEK, LTD,

        Plaintiff,

   v.

INTERACTIVE BROKERS GROUP, INC.,
MORGAN STANLEY SMITH BARNEY
LLC, and JOHN DOES 1-10,

        Defendants.

Case No. 1:25-cv-08536 (LAK)

**DEFENDANT INTERACTIVE BROKERS GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION AND PRELIMINARY STATEMENT ...........................................1

BACKGROUND ...................................................................................................2

      A.     Nonparty Interactive Brokers LLC, the subsidiary of Defendant Interactive Brokers Group, Inc., is a registered broker-dealer ........................2

      B.     Certain unnamed shareholders of Eltek allegedly use Interactive Brokers LLC's platform—among many other platforms—to short Eltek stock .......................................................................................3

      C.     XDOOD derivatively sues unnamed Eltek shareholders along with a Morgan Stanley subsidiary and an Interactive Brokers holding company........................................................................................4

      D.     Counsel for Plaintiff and for Interactive Brokers discuss the fatal problems with the complaint, leading Plaintiff's counsel to withdraw ...........5

LEGAL STANDARD ............................................................................................6

ARGUMENT .......................................................................................................7

  I.     THE COMPLAINT IS PROCEDURALLY DEFICIENT FOR THREE REASONS ...........................................................................7

      A.     Plaintiff Insists On Suing The Wrong Interactive Brokers Party.....................7

      B.     The Complaint Flunks The Pleading Requirements For Derivative Actions ......................................................................................10

      C.     Plaintiff's Federal Claim Is Untimely...........................................................12

  II.    COUNT TWO (RULE 10B-5(A) AND (C)) IS SUBSTANTIVELY DEFICIENT...............................................................................14

      A.     No Deception Or Manipulative Act.................................................15

      B.     No Scienter ......................................................................................18

      C.     No Reliance ......................................................................................20

      D.     No Loss Causation.........................................................................21

  III.   COUNT FIVE (COMMON-LAW FRAUD) IS SUBSTANTIVELY DEFICIENT...............................................................................23

      A.     Interactive Brokers Did Not Make Any Representations To Plaintiff ...........................................................................................24

      B.     Plaintiff Did Not Rely On Any Possible "Representations" From Interactive Brokers In Any Event........................................25

CONCLUSION....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page**

C<span style="font-variant:small-caps">ases</span>

*Aimis Art. Corp. v. N. Tr. Secs., Inc.*,
    641 F. Supp. 2d 314 (S.D.N.Y. 2009) ....................................................................23

*Alki Partners, L.P. v. Vatas Holding GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011) .....................................................................8

*Arduini/Messina P'Ship v. Nat'l Medical Fin. Serv. Corp.*,
    74 F. Supp. 2d 352 (S.D.N.Y. 1999) .....................................................................21

*Arnold v. KPMG LLP*,
    334 F. App'x 349 (2d Cir. 2009) .............................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................6

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
    361 F. Supp. 2d 210 (S.D.N.Y. 2005) .....................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    2008 WL 850473 (S.D.N.Y. Mar. 27, 2008) (*ATSI II*), *aff'd in relevant part*,
    579 F.3d 143 (2d Cir. 2009) (*ATSI III*) ................................................................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) (*ATSI I*) .............................................................. passim

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*,
    850 F. Supp. 1199 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995) ................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................6

*Bensinger v. Denbury Res. Inc.*,
    31 F. Supp. 3d 503 (E.D.N.Y. 2014) .....................................................................13

*Berkey v. Third Ave. Ry. Co.*,
    155 N.E. 58 (N.Y. 1926) .........................................................................................8

*BKNS Mgmt. LLC on behalf of Abbson LLC v. Messner Reeves, LLP*,
    2025 WL 2022590 (S.D.N.Y. July 18, 2025) .........................................................................11

*C.R.A. Realty Corp. v. Scor U.S. Corp.*,
    1992 WL 309610 (S.D.N.Y. Oct. 9, 1992) ..............................................................................10

*Campbell v. Weihe Yu*,
    25 F. Supp. 3d 472 (S.D.N.Y. 2014) .....................................................................................11

*Cellucci v. O'Leary*,
    2020 WL 977986 (S.D.N.Y. Feb. 28, 2020)..........................................................................10

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*,
    511 U.S. 164 (1994)...........................................................................................................2, 16

*Citibank, N.A. v. K-H Corp.*,
    968 F.2d 1489 (2d Cir. 1992)................................................................................................22

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010).....................................................................................8

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014)..................................................................................................................12

*Defer LP v. Raymond James Fin., Inc.*,
    654 F. Supp. 2d 204 (S.D.N.Y. 2009) .....................................................................................8

*Dennis v. JP Morgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018).................................................................................2, 16

*Diesenhouse v. Social Learning and Payments, Inc.*,
    2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022).........................................................................25

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993)....................................................................................................14

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................................2

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)....................................................................................................22

*Freedman v. magicJack Vocaltec Ltd.*,
    2018 WL 6110996 (S.D. Fl. Nov. 21, 2018) ........................................................................11

*Galef v. Alexander*,
   615 F.2d 51 (2d Cir. 1980) ............................................................................11

*Gamma Traders-I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F.4th 71 (2d Cir. 2022) .............................................................................23

*Gould on behalf of Bank of Am. v. Moynihan*,
   275 F. Supp. 487 (S.D.N.Y. 2017) .................................................................10

*Goureau v. Lemonis*,
   2021 WL 4847073 (S.D.N.Y. Oct. 15, 2021) ................................................10

*Halpert Enters., Inc. v. Harrison*,
   362 F. Supp. 2d 426 (S.D.N.Y. 2005)............................................................10

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
   585 F. Supp. 3d 405 (S.D.N.Y. 2022).............................................17, 19, 24

*Healthcare Fin. Grp., Inc. v. Bank Leumi USA*,
   669 F. Supp. 2d 344 (S.D.N.Y. 2009)............................................................22

*Holmes v. Grubman*,
   568 F.3d 329 (2d Cir. 2009)..............................................................................9

*In re Amaranth Nat. Gas Commodities Litig.*,
   730 F.3d 170 (2d Cir. 2013).................................................................2, 16, 17

*In re Blech Sec. Litig.*,
   961 F. Supp. 569 (S.D.N.Y. 1997) .................................................................16

*In re BP p.l.c. Derivative Litig.*,
   507 F. Supp. 2d 302 (S.D.N.Y. 2007).............................................................11

*In re Digit. Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)...............................................................9

*In re Lehman Bros. Sec. & ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011) (*Lehman I*) ................................13

*In re Lehman Bros. Sec. & ERISA Litig.*,
   2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) (*Lehman II*) ....................25

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013).............................................................13

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
   568 F. Supp. 2d 349 (S.D.N.Y. 2008) ...................................................................22

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) (*Merrill Lynch I*) ........................................21

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005) (*Parmalat I*) ................................15, 16, 19

*In re Parmalat Sec. Litig.*,
   414 F. Supp. 2d 428 (S.D.N.Y. 2006) (*Parmalat II*) ........................................15, 19

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022) ...................................................................21

*Jackson Nat'l Life Ins. Co. v. Ligator*,
   949 F. Supp. 200 (S.D.N.Y. 1996) ........................................................................24

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020)......................................................................................18

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)...........................................................................................2, 16

*Kalin v. Xanboo, Inc.*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007)....................................................................11

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)............................................................................18, 19

*Koock v. Charter Group, Inc.*,
   1989 WL 126064 (S.D.N.Y. Oct. 13, 1989) ..........................................................10

*Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*,
   128 F. Supp. 3d 792 (S.D.N.Y. 2015)....................................................................13

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413 (1996) ............................................................................................24

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)...................................................................................22

*Levner v. Saud*,
   903 F. Supp. 452 (S.D.N.Y. 1994) ........................................................................11

*Marini v. Adamo*,
    995 F. Supp. 2d 155 (E.D.N.Y. 2014) ....................................................................13

*McDaniel v. Bear Stearns & Co.*,
    196 F. Supp. 2d 343 (S.D.N.Y. 2002)....................................................................16

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)..........................................................................................12, 14

*Mullen Auto., Inc. v. IMC Fin. Mkts.*,
    2025 WL 951501 (S.D.N.Y. Mar. 28, 2025) ..........................................................17

*Nerey v. Greenpoint Mortg. Funding, Inc.*,
    144 A.D.3d 646 (N.Y. App. Div. 2016) .................................................................24

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
    2023 WL 9102400 (S.D.N.Y. Dec. 29, 2023) ........................................................17

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
    2025 WL 368717 (S.D.N.Y. Jan. 31, 2025) ...........................................................23

*Nypl v. JP Morgan Chase & Co.*,
    2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018) .....................................................8, 9

*P. Stolz Fam. P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)....................................................................................12

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)............................................................................20, 21

*Phunware, Inc. v. UBS Sec. LLC*,
    2024 WL 1465244 (S.D.N.Y. Apr. 4, 2024)......................................................17, 23

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ..............................................................................15, 17

*Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)....................................................................................13

*Prestige Inst. for Plastic Surgery, PC v. Aetna, Inc.*,
    2024 WL 4349012 (D. Conn. Sept. 30, 2024) ........................................................8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
    75 F.3d 801 (2d Cir. 1996).....................................................................................18

*S.E.C. v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) .................................................................................... 15

*Steginsky v. Xcelera, Inc.*,
    741 F.3d 365 (2d Cir. 2014) ................................................................................. 12

*Stoner v. Walsh*,
    772 F. Supp. 790 (S.D.N.Y. 1991) ....................................................................... 11

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) ....................................................................................... 20, 21

*Strauss v. Long Island Sports, Inc.*,
    60 A.D.2d 501 (N.Y. App. Div. 1978) ................................................................. 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................... 19, 20

*Terry v. Charitable Donor Advised Fund, L.P.*,
    2024 WL 898907 (S.D.N.Y. Mar. 1, 2024) ......................................................... 11

*Union Cent. Life Ins. Co. v. Ally Fin., Inc.*,
    2013 WL 2154220 (S.D.N.Y. Mar. 29, 2013) ..................................................... 19

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................... 1, 8

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ................................................................................... 21

*Warren v. Forest Lawn Cemetery & Mausoleum*,
    222 A.D.2d 1059 (N.Y. App. Div. 1995) ............................................................. 24

## RULES

Federal Rules of Civil Procedure:
    Fed. R. Civ. P. 9 ......................................................................................... passim
    Fed. R. Civ. P. 11 ................................................................................................. 9
    Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6
    Fed. R. Civ. P. 15 ............................................................................................... 13
    Fed. R. Civ. P. 23.1 ................................................................................... passim

**STATUTES**

15 U.S.C.
§ 78j(b) ............................................................................................................15
§ 78u-4(b) ..........................................................................................................6
§ 78u–4(b)(2) ....................................................................................................18
§ 78u-4(c) ............................................................................................................1

28 U.S.C.
§ 1658(b) ..........................................................................................................14
§ 1658(b)(1) ................................................................................................12, 13

Israel Companies Law 5759-1999
§ 194 ..................................................................................................................11
§ 195 ..................................................................................................................11
§ 196 ..................................................................................................................11
§ 198 ..................................................................................................................11

**REGULATIONS**

17 C.F.R. § 240.10b-5 .................................................................................... passim

17 C.F.R. § 240.14b-1(b)(ii) ................................................................................17

**OTHER AUTHORITIES**

Interactive Brokers Group, Inc., Form 10-K (Feb. 27, 2026),
        https://perma.cc/F38Y-6NHF ....................................................................3

Michael McGauley, *Eltek Ltd.: A Company Poised and Ready to Take Advantage
        of the Global Supply Chain Shift* (Mar. 10, 2020), https://perma.cc/C4A3-L3Y ..................13

Michael McGauley, *Eltek Ltd.: With Turnaround Completed, This Deep Value
        High-Tech Manufacturer is an Intriguing Growth Story* (Sept. 23, 2020),
        https://perma.cc/ZLL4-VBNS ..................................................................13

## INTRODUCTION AND PRELIMINARY STATEMENT

Plaintiff's former counsel withdrew from this case because the complaint is "facially defective" against Defendant Interactive Brokers Group, Inc.  Doc. 16-1 at 2.  He was right to do so.  As the complaint itself admits, Defendant Interactive Brokers Group, Inc. is a mere "holding company," Am. Compl. ¶ 23, and is not the registered broker-dealer who is alleged to have engaged in the "improper" conduct set forth in the complaint (that's nonparty Interactive Brokers LLC, *see id.* ¶ 1).  Under "deeply ingrained" principles of corporate law—that, absent exceptions not alleged here (such as alter ego)—such a parent company "is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Yet Plaintiff—after repeated warnings, and after finding counsel willing to take on the risk of this case, *see, e.g.*, Docs. 16-2 at 4, 21-5 at 6, 21-7 at 1–2, 21-10 at 1—refuses to amend and insists instead on proceeding against this one parent company alone.  Especially in cases governed by the Private Securities Litigation Reform Act (PSLRA), this should warrant, at least, dismissal with prejudice.  *See also* 15 U.S.C. § 78u-4(c).

Plaintiff's problems there are just the beginning.  Plaintiff sues the wrong party, yes, but also on the wrong legal theory—ostensibly a theory of aiding and abetting, trying to transform the perfectly lawful and routine conduct of a highly regulated trading platform into a federal securities violation, all through guilt-by-association.  Plaintiff says that certain unnamed shareholders "committed corporate sabotage" against Eltek's publicly traded stock.  Am. Compl. ¶ 2.  Those "masterminds" conceived of, orchestrated, and executed a supposed "campaign to artificially suppress, freeze, and distort the price of [Eltek] shares," in violation of Section 10(b) and Rule 10b-5(a) and (c), and are therefore "primarily liable" as the bad guys.  *Id.* ¶¶ 67, 161, 163.

But what did *Interactive Brokers* do wrong?  If you ask Plaintiff, the answer is that it was "just around the bad guys."  Or, as the complaint repeatedly says of Interactive Brokers, it "facilitated" supposedly illegal trades by offering a platform where trades could be made.  *E.g.*,

Am. Compl. ¶¶ 8, 157–60.  If there were a private right of action for aiding and abetting under Section 10(b), this would be a failed attempt at a sweeping aiding-and-abetting claim—an aiding-and-abetting claim for merely serving as a broker-dealer.  But Section 10(b) does not even permit such a claim.  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994).  So this is instead a woefully deficient—but dangerous—attempt at *primary liability* against a broker-dealer for "the performance of routine clearing services."  *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 185 (2d Cir. 2013); *see Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143 & n.6 (2011); *cf. Dennis v. JP Morgan Chase & Co.*, 343 F. Supp. 3d 122, 179–80 (S.D.N.Y. 2018) (Kaplan, J.), *abrogated on other grounds sub nom., DirecTV, LLC v. Nexstar Media Grp., Inc.*, 162 F.4th 295 (2d Cir. 2025).  Interactive Brokers did nothing wrong; and neither the federal securities laws nor New York law makes it "a partial downside insur[er]" against external bad actors.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347–48 (2005).  It is not primarily liable for alleged securities fraud committed *by others* simply by serving as an executing-and-clearing broker for securities traded on its platform.

This Court should dismiss the complaint with prejudice.

## BACKGROUND

### A.    Nonparty Interactive Brokers LLC, the subsidiary of Defendant Interactive Brokers Group, Inc., is a registered broker-dealer.

Nonparty Interactive Brokers LLC is a registered broker-dealer with an online trading platform and over four million customers.  Am. Compl. ¶¶ 1, 23.  But despite Defendant's willingness to allow Plaintiff to name *that entity* as the defendant—the entity that even the complaint recognizes supposedly did the things alleged, *id.* ¶ 1—Plaintiff refused.  Docs. 16-1 at 2, 16-2 at 4, 21-7 at 1–2.  So the only Interactive Brokers defendant in this case remains Interactive Brokers Group, Inc.:  the ultimate parent and "holding company" of the subsidiary that operates

the trading platform. *Id.* ¶ 23. As described in Interactive Brokers Group, Inc.'s public filings with the U.S. Securities & Exchange Commission, Interactive Brokers Group, Inc. "is a holding company whose primary asset is the ownership of approximately 26.3% of the membership interests of [Interactive Brokers Group LLC], the current holding company for our business," including Interactive Brokers LLC. Interactive Brokers Group, Inc., Form 10-K (Feb. 27, 2026), https://perma.cc/F38Y-6NHF. Nonparty Interactive Brokers LLC, by contrast, is the entity that operates an alternative trading system (IATS IBKR ATS), where users can trade securities, including Eltek shares. *See id.* ¶¶ 1, 38.

### B. Certain unnamed shareholders of Eltek allegedly use Interactive Brokers LLC's platform—among many other platforms—to short Eltek stock.

Plaintiff alleges that certain "John Does" conspired to manipulate Eltek's stock price using a portion of Eltek's shares from November 2019 onward. *Id.* ¶¶ 1, 28, 33. As can happen on platforms that host millions of users making millions of trades per day, Plaintiff alleges that some of these John Doe trades happened to use Interactive Brokers LLC's platform—among some thirteen or more other similar platforms. *Id.* ¶¶ 2, 37, 76, 97.

The complaint is a bit jumbled about the John Does' supposed market manipulation. Piecing things together, it seems Plaintiff takes issue with certain days with high trade volumes, especially that took place on November 20, 2019 and October 16, 2020. *Id.* ¶ 68. In particular, Plaintiff believes that the John Does engaged in high volumes of short selling—which is not, by itself, illegal or manipulative—that occasionally resulted in trading halts due to volatility. *See, e.g.*, *id.* ¶¶ 68–89. Additionally, Plaintiff surmises that the John Does closed out various short positions without major fluctuations of Eltek's stock price. *See, e.g.*, *id.* ¶¶ 110–11.

As for what Nonparty Interactive Brokers LLC supposedly did wrong, Plaintiff is even less clear. Plaintiff features three supposed policies of Interactive Brokers' "entire business model"

that, Plaintiff seems to say, operate as a fraudulent scheme.  Am. Compl. ¶ 157.  *First*, Plaintiff alleges that Interactive Brokers LLC defaults customers to objecting-beneficial-owner status—a perfectly lawful thing to do, and which protects the privacy of customers while allowing Interactive Brokers LLC to streamline shareholder communications and serve as the central point of contact for its "institutional" customers.  *Id.* ¶¶ 53, 60.  *Second*, Plaintiff thinks (without any articulated evidence) that Interactive Brokers LLC's "implementation of the Market Access Rule (15c3-5)," while not illegal, "is more lax than its peers."  *Id.* ¶ 54.  And *third*, Plaintiff alleges that Interactive Brokers LLC "presented an opportunity for [the John Does] to execute their trading schemes" by making Eltek stock available for shorting.  *Id.* ¶ 55.  All this amounts, according to Plaintiff, to offering and incentivizing customers the ability to short stock using its platform.

### C.   XDOOD derivatively sues unnamed Eltek shareholders along with a Morgan Stanley subsidiary and an Interactive Brokers holding company.

The John Does' trading, Plaintiff says, harmed the stock price of Eltek Ltd.—an Israeli-based company whose shares have been publicly traded, including on the Nasdaq, since 1997.  Am. Compl. ¶¶ 12, 16–18.  Plaintiff is also an Eltek shareholder; it operates under the name XDOOD LLC and wants to recover derivatively for Eltek's supposed harm.  *Id.* ¶¶ 1, 19, 22, 132–36.  That harm, according to Plaintiff, includes suppressed stock value, impaired capital raising, lost growth opportunities, and harm to corporate integrity and shareholder trust.  *Id.* ¶¶ 142, 150.

Plaintiff filed its complaint on October 15, 2025.  That complaint spanned 346 paragraphs and 107 pages.  Doc. 1.  Less than two weeks later, and before Interactive Brokers Group, Inc. was properly served, this Court sua sponte dismissed that complaint without prejudice to Plaintiff filing an amended complaint no more than 50 pages long.  Doc. 5.  Plaintiff did so on November 24, 2025.  Doc. 6 ("Am. Compl.").  In that operative complaint, Plaintiff asserted two claims against Interactive Brokers Group, Inc. (but none against Interactive Brokers LLC):  (1) for scheme

liability under Section 10(b) of the Securities Exchange Act and Rule 10b-5(a) and (c) (Count II); and (2) for common-law fraud under New York law (Count V).

### D.     Counsel for Plaintiff and for Interactive Brokers discuss the fatal problems with the complaint, leading Plaintiff's counsel to withdraw.

Service remained improper, but there was a bigger problem lurking:  The amended complaint was facially defective against Interactive Brokers Group, Inc., including because that was the wrong party; it was not the Interactive Brokers entity that actually serves as the broker-dealer and that actually hosts the platform.  Am. Compl. ¶¶ 1, 23; Doc. 16-2 at 4.  The two parties' counsel discussed these problems via phone and email, and counsel for Interactive Brokers agreed to stipulate to the filing of a further amended complaint that named the proper party.  *See* Docs. 21-5 at 5, 21-7 at 1.

The lone member of XDOOD, however, refused that invitation.  He insisted on proceeding against a "holding company" (Am. Compl. ¶ 23) and ultimate "Parent Organization" (Doc. 21-5 at 6) alone.  *See also, e.g.*, Docs. 16-2 at 4, 21-7 at 2.  This, in addition to Plaintiff attempting to refuse a courtesy extension over the holidays and to avoid a fight over whether service was proper, caused Plaintiff's counsel to withdraw.  *See* Doc. 16-2 at 4.  Plaintiff's former counsel explained that, after "conduct[ing] due diligence, . . . counsel realizes that Interactive Brokers, LLC is the correct defendant in this action."  Doc. 16-1 at 2.  But, counsel went on, XDOOD's lone member was dead set on suing Interactive Brokers Group, Inc. instead of Interactive Brokers LLC.  *Id.* Because Plaintiff's former counsel did "not want to pursue unnecessary motion practice based on facially defective pleadings," he requested to withdraw.  *Id.*

This Court agreed to let counsel out of the case.  But as Interactive Brokers Group, Inc. explained, Plaintiff—as an LLC in a derivative action—could not proceed without counsel. Doc. 18 at 2.  And so this Court, on January 22, 2026, issued an order requiring Plaintiff to obtain

new counsel by February 2, 2026, or else risk dismissal of the case for failure to prosecute. Doc. 22.  The lone member of XDOOD wrote the Court a few times, explaining that "[m]ultiple firms have declined or have not responded."  Doc. 23 at 1.  This Court extended the deadline for Plaintiff to find new counsel to February 15, 2026.  Doc. 24.  New counsel filed a notice of appearance on February 10.  Doc. 26.

Counsel for Interactive Brokers reached out to Plaintiff's new counsel to raise the same problems that led the previous counsel to withdraw.  The two sides met the day before this Court's initial conference.  *See* Exhibit 1.  But at that conference, on February 18, 2026, Plaintiff's new counsel informed counsel for Interactive Brokers Group, Inc. (and, ultimately, the Court) that Plaintiff was standing on the complaint as is.  This motion to dismiss followed.

## LEGAL STANDARD

This Court orders dismissal of a complaint under Civil Rule 12(b)(6) when the complaint fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard demands a pleading that raises "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs face additional hurdles in securities or fraud cases such as this one.  These cases are "subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (*ATSI I*). "Because a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)" and the PSLRA.  *Id.* at 101; 15 U.S.C. § 78u-4(b) (setting forth pleading "requirements for securities fraud actions").  Specifically, "a manipulation complaint must plead

with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *ATSI I*, 493 F.3d at 102.

## ARGUMENT

Plaintiff's complaint fails at every turn—procedurally and substantively, across all elements. Perhaps most straightforwardly, the complaint is "facially defective" for suing a "holding company" that does not even operate a trading platform. Doc. 16-1 at 2; Am. Compl. ¶¶ 1, 23. But that is not its only procedural flaw. It also fails the requirements for bringing a derivative lawsuit under Federal Rule of Civil Procedure 23.1. And it is untimely on its face. Nor does it fare better on the substance of the securities and common-law claims. All four elements of the federal claim under Rule 10b-5(a) and (c) are lacking. And the common-law fraud claim does not even allege a "misrepresentation" by Interactive Brokers, far less the needed actual reliance.

## I.     THE COMPLAINT IS PROCEDURALLY DEFICIENT FOR THREE REASONS.

Before this Court would even reach the merits, it should dismiss because (A) Plaintiff insists on suing the wrong party; (B) Plaintiff failed both to verify its complaint and to plead its derivative standing with particularity; and (C) the federal claim is time-barred.

### A.     Plaintiff Insists On Suing The Wrong Interactive Brokers Party.

Dismissal with prejudice should be swift: The complaint is facially defective for suing only a parent and holding company (with no basis for veil piercing or alter ego)—not the entity whose alleged conduct forms the basis for the complaint.

The complaint expressly recognizes that it sues only a parent company, Defendant Interactive Brokers Group, Inc., "a Delaware holding company"—not "Interactive Brokers LLC," the registered broker-dealer that operates the trading platform. Am. Compl. ¶¶ 1, 23. Yet at the same time, the complaint also alleges that the *nonparty* subsidiary and actual operator—not the ultimate parent company sued—is the entity that did the alleged activity and "perpetrated" the

supposed "manipulation." *Id.* ¶ 1. Plaintiff and its current and former counsel repeatedly acknowledged this as well, including at this Court's initial hearing. *Id.* ¶¶ 1, 23; Docs. 16-1 at 2, 16-2 at 4, 21 at 2–3, 21-5 at 3–6, 21-7 at 1–2, 21-8 at 2. This is therefore unlike Defendant Morgan Stanley Smith Barney, where Plaintiff sued the "subsidiary of Morgan Stanley" that operates the trading platform and is the actual "registered broker-dealer." Am. Compl. ¶ 25. As to Interactive Brokers, by contrast, the named defendant was quite consciously the ultimate "Parent Organization" not engaged in the activities alleged in the complaint. Doc. 21-5 at 6.

That ends this case against Interactive Brokers Group, Inc. Courts routinely dismiss "parent corporations not engaged in the activities alleged in the Complaint." *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 421 n.1 (S.D.N.Y. 2010); *see, e.g.*, *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011); *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009) (Kaplan, J.); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d 210, 217 (S.D.N.Y. 2005); *Nypl v. JP Morgan Chase & Co.*, 2018 WL 1472506, at *7 (S.D.N.Y. Mar. 22, 2018); *Prestige Inst. for Plastic Surgery, PC v. Aetna, Inc.*, 2024 WL 4349012, at *4 (D. Conn. Sept. 30, 2024). When plaintiffs "allege no independent basis for liability against [those parents], those companies do not belong as named parties in [the] action and [must be] dismissed." *Cohen*, 722 F. Supp. 2d at 421 n.1.

"[D]eeply ingrained" principles of corporate law require no less. *Bestfoods*, 524 U.S. at 61. "[S]tock ownership and control is not sufficient to make the one company liable for the other, its subsidiary." *Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 65 (N.Y. 1926) (Cardozo, J.).

Plaintiff's former counsel so understood these ingrained corporate-law principles—and so understood Plaintiff's mistake in naming only a parent company—that he repeatedly requested Plaintiff to change the named defendant to Interactive Brokers LLC. When Plaintiff refused, Doc.

21-7 at 2, Plaintiff's former counsel openly called the complaint "facially defective," and realized that he could not ethically oppose a motion to dismiss on these grounds.  Doc. 16-1 at 2.  So Plaintiff's former counsel secured this Court's permission to withdraw.  *See* Doc. 19.

Yet despite these deeply ingrained corporate-law principles and this abundance of precedent dismissing complaints just like this one, the layperson running XDOOD claims that the case may proceed.  This Court and Interactive Brokers Group, Inc. will learn together what theory Plaintiff will offer in response.  But one theory that is unavailable to Plaintiff is any sort of veil-piercing or alter-ego theory.  At the recent hearing, Plaintiff's new counsel gestured toward this sort of theory, mentioning the words "command and control."  But nothing of that sort is even hinted at in the complaint, far less adequately pleaded.  *See Nypl*, 2018 WL 1472506, at *7.  All that's pleaded is that Interactive Brokers Group, Inc. owned part of its "affiliates," including ultimately "Interactive Brokers LLC."  Am. Compl. ¶¶ 1, 23.  But "[i]t is clear that simply owning, even wholly owning, a subsidiary is insufficient to pierce the corporate veil."  *In re Digit. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 419 (S.D.N.Y. 2011).

On this ground alone, therefore, Plaintiff's complaint should be dismissed.  And it should be dismissed with prejudice, *see Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009)—and with the Court conducting the PSLRA-mandated Rule 11 review at the end of the case with an eye toward this "unnecessary motion practice," to quote Plaintiff's former counsel.  Doc. 16-2 at 4. Plaintiff had opportunity after opportunity to sue the right party and test its sweeping theories on the merits.  But despite being warned by its own counsel, and despite Defendant Interactive Brokers Group, Inc. offering to stipulate to a second amendment to name the correct defendant, Plaintiff decided to rest on this complaint.  That conscious decision should have consequences.

**B.      The Complaint Flunks The Pleading Requirements For Derivative Actions.**

The complaint also fails to comply with Federal Rule of Civil Procedure 23.1, which governs derivative actions.  Fed. R. Civ. P. 23.1, 41(b); *see, e.g.*, *C.R.A. Realty Corp. v. Scor U.S. Corp.*, 1992 WL 309610, at *1 (S.D.N.Y. Oct. 9, 1992).  That Rule requires (1) derivative complaints to "be verified"; and requires (2) the would-be derivative plaintiff to "state with particularity" both the "effort[s]" it took to try first to get the company to sue directly and why the company did not sue.  This complaint does neither thing.

*First*, the complaint is not "verified."  Fed. R. Civ. P. 23.1(b).  "For a complaint to be verified, the plaintiff must swear (either in an affidavit or in the complaint) as to the veracity of the statements contained in the pleading."  *Goureau v. Lemonis*, 2021 WL 4847073, at *4 (S.D.N.Y. Oct. 15, 2021).  Plaintiff here nowhere so swore.  Instead, this complaint is signed only by (former) counsel—which is insufficient under Rule 23.1.  *See, e.g.*, *id.*; *Cellucci v. O'Leary*, 2020 WL 977986, at *6 (S.D.N.Y. Feb. 28, 2020).  Rule 23.1 thus "prohibits any such derivative claims."  *Koock v. Charter Group, Inc.*, 1989 WL 126064, at *4 (S.D.N.Y. Oct. 13, 1989).

*Second*, far from stating it "with particularity," the complaint breezes past the "effort[s] by the plaintiff to obtain the desired action" from Eltek.  Fed. R. Civ. P. 23.1(b)(3)(A).  Plaintiff's lone allegation on this score is this:  "On September 22, 2025, XDOOD made [a] demand upon Eltek . . . that the Company pursue the legal claims articulated in this Complaint.  Eltek declined to do so, but authorized XDOOD to pursue the claims."  Am. Compl. ¶ 22.  This comes up well short of Rule 23.1's "atypically rigorous" pleading standard, *Gould on behalf of Bank of Am. v. Moynihan*, 275 F. Supp. 3d 487, 494 (S.D.N.Y. 2017)—one that requires "*specific* factual allegations" about the plaintiff's demand and why the company refused, *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 429 (S.D.N.Y. 2005) (emphasis added).  It instead tracks, nearly to a T, the "bare pleading" on derivative standing that courts in this District have held are not

particularized enough. *E.g.*, *Stoner v. Walsh*, 772 F. Supp. 790, 797 (S.D.N.Y. 1991); *see also, e.g.*, *BKNS Mgmt. LLC on behalf of Abbson LLC v. Messner Reeves, LLP*, 2025 WL 2022590, at *3 (S.D.N.Y. July 18, 2025); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 410 (S.D.N.Y. 2007); *Levner v. Saud*, 903 F. Supp. 452, 455–56 (S.D.N.Y. 1994). "The bare and conclusory assertions in the Complaint" thus "do not satisfy the particularity requirement of Rule 23.1." *Campbell v. Weihe Yu*, 25 F. Supp. 3d 472, 485 (S.D.N.Y. 2014) (Kaplan, J.).

And that would be true even if Eltek were an American company. The fact that it is an Israeli company makes the complaint's failures even more pronounced. *See Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980) (New York courts look to "state of incorporation"); *see, e.g.*, *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 898907, at *13 (S.D.N.Y. Mar. 1, 2024); *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 310 (S.D.N.Y. 2007). Under Israeli law, before bringing a derivative action, the shareholder must address "the chairman of the board of directors of the company," "in writing, demanding that [the company] exhaust its rights by instituting an action" and setting out "in detail the facts giving rise to the cause of action and the reasons for its submission." Israel Companies Law 5759-1999, § 194(b), (c). The company must then "giv[e] details of the action taken and the body that passed the resolution, including the names of those who participated in passing the resolution." *Id.* § 196; *see id.* § 195. And even then, the plaintiff may file a derivative action *only if* it obtains court approval—which happens only if the court is "convinced that the claim, and the conduct thereof, are *prima facie* in the best interests of the company and that the plaintiff is not acting with lack of good faith." *Id.* § 198(a). If any of that happened, Plaintiff certainly did not allege it—leading to a straightforward dismissal. *See, e.g.*, *BP*, 507 F. Supp. 2d at 311; *Freedman v. magicJack Vocaltec Ltd.*, 2018 WL 6110996, at *4–6 (S.D. Fl. Nov. 21, 2018), *aff'd*, 963 F.3d 1125 (11th Cir. 2020).

### C.    Plaintiff's Federal Claim Is Untimely.

Moving a bit closer to the merits, the federal claim is time-barred.  Claims under Section 10(b) must clear two time-related hurdles.  They must be brought no later than "2 years after the discovery of the facts constituting the violation" (the statute of limitations).  28 U.S.C. § 1658(b)(1).  And in no event may they be brought more than "5 years after such violation" (the statute of repose).  *Id.* § 1658(b)(2); *see Steginsky v. Xcelera, Inc.*, 741 F.3d 365, 369 (2d Cir. 2014).  This federal claim is time-barred by both statutes.

**Statute of repose.**  The statute contains "an unqualified bar on actions instituted '5 years after [a] violation,' § 1658(b)(2), giving defendants total repose after five years."  *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010).  And by total repose, Congress meant *total repose*.  Once the repose period begins running, it does not stop running—not for "equitable considerations," no matter if the plaintiff has "discovered that she has a cause of action," and indeed even if the plaintiff has not yet been injured, "extinguishing a cause of action before it even accrues."  *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102–03 (2d Cir. 2004); *see CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014).  After five years, the plaintiff may not sue.  *See* Doc. 31-7 at 2 (recognizing this).

Plaintiff initially filed its complaint on October 15, 2025—meaning there is total repose if Interactive Brokers' supposed violation occurred before October 15, 2020.  According to the complaint, it did.  Interactive Brokers was operating its supposedly "Deceptive Business Model" well before that time, Am. Compl. ¶ 157, and Plaintiff alleges nothing about that business model that changed after that date.  If that really were a violation, then it would have been a violation before October 2020.  Interactive Brokers thus had total repose for that alleged "scheme"—the only "scheme" alleged against Interactive Brokers.  *See id.* ¶¶ 157–60.

The same is true for many of the specific "bad" trades at issue here (the John Does' alleged violations).  The triggering event for those trades was "the date the parties have committed

themselves to complete the purchase or sale transaction." *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009).  Some of the supposedly illegal trades happened in November 2019, which are facially time barred.  And even those that occurred in October 2020 should be time barred by the statute of repose, given that the initial complaint was dismissed for its failure to comply with Civil Rule 8, and that Plaintiff filed the operative complaint on November 24, 2025. *See* Am. Compl. ¶¶ 70–90.  *See, e.g.*, *Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 807–09 (S.D.N.Y. 2015); *Marini v. Adamo*, 995 F. Supp. 2d 155, 183–84 (E.D.N.Y. 2014); *see also In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 379–80 (S.D.N.Y. 2013) (no "relation-back" under Civil Rule 15 for this statute of repose); *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 479–80, 483 (S.D.N.Y. 2011) (Kaplan, J.) (*Lehman I*); *Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 510 (E.D.N.Y. 2014); *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 110–112 (2d Cir. 2013).

**Statute of limitations.**  The whole federal claim is time barred, too, by the statute of limitations, 28 U.S.C. § 1658(b)(1):  The complaint itself makes clear that Plaintiff discovered the existence of the alleged fraud more than two years before October 15, 2025.

The complaint shows that Plaintiff has long been paranoid about the shorting of and activity around Eltek stock.  Over six years ago, in "November 2019," Plaintiff "began its scrutinization of Eltek"—the same month of the trading activity for which Plaintiff now claims that Interactive Brokers should be liable.  Am. Compl. ¶ 137; *see also id.* ¶ 86.  Over the next year, Plaintiff's sole member proceeded to write articles on Eltek stock and investigate, investigate, investigate.[1]

---

[1] Michael McGauley, *Eltek Ltd.: A Company Poised and Ready to Take Advantage of the Global Supply Chain Shift* (Mar. 10, 2020), https://perma.cc/C4A3-DL3Y; Michael McGauley, *Eltek Ltd.: With Turnaround Completed, This Deep Value High-Tech Manufacturer is an Intriguing Growth Story* (Sept. 23, 2020), https://perma.cc/ZLL4-VBNS.

Within months, by early 2020, Plaintiff had performed enough of an "investigation" to find "suspicious Eltek stock trading events" that it submitted to "the SEC whistleblower website." *Id.* ¶ 138. And by "February 9, 2021, [Plaintiff's sole member] commenced an action in New York State[] Court[]" stemming from the same trading activity alleged in this complaint. *Id.* ¶ 139. In that state action, moreover, Plaintiff received even *more* information "detail[ing] the trading activity" at issue. *Id.* ¶ 140; *see also id.* ¶ 76. All the while, too, Plaintiff had additional reports at its disposal, including a "Bank-Broker Breakdown report" and "Share Range Analysis report." *Id.* ¶ 50. And Plaintiff concedes it can use publicly available data to discover the connection between Eltek's trading activity and the related broker-dealer *the very same day* that the trading activity takes place. *See id.* ¶¶ 63, 111.

By 2021, therefore, Plaintiff had not only undertaken a thorough "investigation" but had also "discover[ed] the facts constituting the [alleged] violation"—the trading activity related to Eltek and Interactive Brokers' supposed general "policies." *Merck*, 559 U.S. at 653. It thus needed to bring this complaint by 2023. There is no conceivable reason—and certainly none alleged— why Plaintiff needed an *additional two years* of investigating to "have discovered the existence of the [alleged] fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350–52 (2d Cir. 1993). Its failure to sue sooner means it cannot maintain this federal claim now. 28 U.S.C. § 1658(b).

## II.    COUNT TWO (RULE 10B-5(A) AND (C)) IS SUBSTANTIVELY DEFICIENT.

Perhaps the reason Plaintiff did not sue Interactive Brokers sooner is because there is no legitimate suit to bring. When a reputable, highly regulated, Fortune 500 company's "entire business model" (Am. Compl. ¶ 157) is alleged to be a "business which operates … as a fraud," 17 C.F.R. § 240.10b-5(c), it should be no surprise that the complaint needs to stretch to try to make out the elements of a scheme-liability claim. And this complaint does more than just stretch. On

element after element, Plaintiff's complaint is light years away from pleading with particularity the required elements of the Rule 10b-5(a) and (c) claim it asserts.

Those basic elements—which, again, "must be pled with particularity under Rule 9(b)," *ATSI I*, 493 F.3d at 101—are that the defendant "(1) committed a deceptive or manipulative act, (2) with *scienter*, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491–92 (S.D.N.Y. 2005) (Kaplan, J.) (*Parmalat I*); *see Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).  Plaintiff's claim against Interactive Brokers flunks all four of those elements.

### A.    No Deceptive or Manipulative Act.

For the first element, the defendant must have "used or employed a[] device or contrivance with the capacity or tendency to deceive."  *Parmalat I*, 376 F. Supp. 2d at 504; *see* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a), (c).  To be deceptive, and thus to be actionable, the defendant's conduct must be "by nature deceptive," *Parmalat I*, 376 F. Supp. 2d at 504, or "deceptive in itself," *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 434 (S.D.N.Y. 2006) (*Parmalat II*).

Interactive Brokers' "entire business model" (Am. Compl. ¶ 157) is not, by its very nature, deceptive.  Much to the contrary, millions of users make millions of legitimate trades per day using that business model while staying entirely in bounds of the securities laws.  The services Interactive Brokers provides, far from being inherently dishonest, are inherently *legitimate*.

In maintaining otherwise, Plaintiff badly "muddle[s] primary and secondary liability." *SEC v. Rio Tinto plc*, 41 F.4th 47, 55 (2d Cir. 2022).  Any possible "deceptiveness" by Interactive Brokers here "stemmed entirely from the actions of" the John Does who made the supposedly illegal trades.  *Parmalat I*, 376 F. Supp. 2d at 497, 505.  Plaintiff is quite open about this. According to the complaint, Interactive Brokers "created the mechanisms for fraud" by providing

the tools to allow the John Does "to execute the[ir] trading activity"—thereby "*facilitating*" the John Does' supposed fraud in much the same way Ferrari might be said to "facilitate" speeding by manufacturing cars that can go fast. *Id.* ¶¶ 65, 159 (emphasis added). But that would be *at most* aiding and abetting. *See Parmalat I*, 376 F. Supp. 2d at 493 ("deliberately facilitat[ing] another's primary violation"). And "for *Central Bank* to have any meaning, there must be some distinction between those who are primarily liable (and thus may be pursued in private suits) and those who are secondarily liable (and thus may not be pursued in private suits)." *Janus*, 564 U.S. at 143 n.6. Plaintiff would have this Court collapse this critical distinction. It should decline the invitation. *See, e.g.*, *Parmalat I*, 376 F. Supp. 2d at 499.

In dismissing this action, this Court would join a chorus of similar decisions. "[T]he performance of routine clearing services, without more, cannot trigger primary liability under § 10(b)." *Amaranth*, 730 F.3d at 185; *see, e.g.*, *In re Blech Sec. Litig.*, 961 F. Supp. 569, 584 (S.D.N.Y. 1997); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352–53 (S.D.N.Y. 2002) (collecting cases). Or, as this Court has held even for an aiding-and-abetting claim, "the routine provision of brokerage services" does not turn a company into a securities fraudster. *Dennis*, 343 F. Supp. 3d at 180 (Kaplan, J.).

It does not get better for Plaintiff when it tries to get more specific about what, exactly, was "by nature deceptive" about Interactive Brokers' business. The complaint points to three items: (1) alleged defaulting of customers to objecting-beneficial-owner status; (2) maintaining a lawful but allegedly "permissive interpretation" of the Market Access Rule; and (3) providing "short shares and [low] borrow rates." *E.g.*, Am. Compl. ¶ 8. These boil down to offering and incentivizing short selling on its platform. *See id.* ¶ 158. But nothing about any of these things—or about short selling generally—is inherently deceptive. Short selling "is not, by itself,

manipulative." *ATSI I*, 493 F.3d at 101. And offering it of course cannot be either. The same goes for allegedly having a brokerage account set to objecting-beneficial-owner status: that is expressly authorized by law. 17 C.F.R. § 240.14b-1(b)(ii). So too for Interactive Brokers' implementation of the Market Access Rule. In addition to not being "articulate[d] with precision," *Danske Bank*, 11 F.4th at 105, Plaintiff does not even allege that Interactive Brokers *violated* this rule. *See* Am. Compl. ¶¶ 54, 158. Rule 9(b) does not permit this sort of see-what-sticks form of pleading, especially of lawful conduct.

Even the outlier courts that have (wrongly) allowed certain Section 10(b) claims against broker-dealers to proceed past the motion-to-dismiss stage would dismiss here.[2] In *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022), for example, even as the court let certain spoofing claims go forward, it dismissed the claims related to short selling for lack of inherently manipulative conduct. *Id.* at 422–23. Even with allegations not made here (for example, that the brokers *themselves* actively traded and manipulated the stock, "that short selling took place at high volumes, and that naked short selling may have taken place"), the Court explained that "the Complaint does not plead with particularity" that the short sales were actually illegal. *Id.* This case is *a fortiori* from that one.

---

[2] These outlier courts have seemingly approved a "theory of the case" for Section 10(b) liability against broker-dealers for spoofing allegations (not alleged here) based on "control" over trading algorithms and a "responsibility to monitor such algorithms." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2023 WL 9102400, at *18 (S.D.N.Y. Dec. 29, 2023); *see also Harrington*, 585 F. Supp. 3d at 416; *Phunware, Inc. v. UBS Sec. LLC*, 2024 WL 1465244, at *4 (S.D.N.Y. Apr. 4, 2024); *Mullen Auto., Inc. v. IMC Fin. Mkts.*, 2025 WL 951501, at *3 (S.D.N.Y. Mar. 28, 2025). To the extent they have approved this theory, a theory of primary liability based on a "responsibility to monitor" trading activity directly contravenes Second Circuit authority that "performance of routine clearing services, without more, cannot trigger primary liability under § 10(b)." *Amaranth*, 730 F.3d at 185.

By every metric, then, Plaintiff has failed to plead a deceptive or manipulative act. At best, Plaintiff attempts a faulty aiding-and-abetting claim—but Section 10(b) permits no such claim.

### B.       No Scienter.

It may be even worse for Plaintiff on scienter. On this element, in addition to Rule 9(b) applying, "the PSLRA's heightened standards for pleading scienter also apply." *ATSI I*, 493 F.3d at 102. Under those extra-heightened standards, a securities complaint must "state with particularity facts giving rise to a strong inference that the defendant acted" with "an intent to deceive, manipulate, or defraud" the plaintiff. *See* 15 U.S.C. § 78u–4(b)(2); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). "This pleading requirement is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI I*, 493 F.3d at 102.

Interactive Brokers did not intend to deceive Plaintiff about anything. And Plaintiff barely even tries to *allege* otherwise. Plaintiff does not, for example, attempt to identify anyone at Interactive Brokers who "acted"—let alone who acted with "an intent to deceive, manipulate, or defraud." 15 U.S.C. § 78u–4(b)(2); *Kalnit*, 264 F.3d at 138. Plaintiff instead would have this Court infer collective corporate scienter based on circumstantial allegations (such as that Interactive Brokers made money by executing the underlying trades, Am. Compl. ¶¶ 66, 126). But only in "exceedingly rare instances," not close to met here, may "collective corporate scienter [] be inferred." *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020). When the "defendant is a corporation," Plaintiff needs to plead facts giving rise to a "strong inference that *someone* whose intent could be imputed to the corporation acted with the requisite scienter." *Id.* at 98. Plaintiff neither identifies any individual acting for Interactive Brokers nor demonstrates the rare circumstances warranting corporate scienter—enough to dismiss. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996).

But there is more. Plaintiff bases scienter on supposed "conscious behavior or recklessness"—where the "strength of the circumstantial allegations" must demonstrate "highly unreasonable" conduct "represent[ing] an *extreme* departure from the standards of ordinary care." *Kalnit*, 264 F.3d at 142 (emphasis added). Nothing of the sort is alleged. The mere "high turnover rate of [] shares and the high percentage of short sales" does not get Plaintiff close. *Harrington*, 585 F. Supp. 3d at 423. Neither does Plaintiff's allegation that Interactive Brokers "supplied short positions despite warning signs," Am. Compl. ¶ 125; *see Harrington*, 585 F. Supp. 3d at 423. That would at most be "facilitat[ing] another's primary violation"—the canonical formulation of aiding and abetting, and thus not enough. *Parmalat I*, 376 F. Supp. 2d at 493; *see id.* at 497. The same goes for the allegations about the supposed "financial benefits" Interactive Brokers received, Am. Compl. ¶¶ 66, 126: "A motive to grow profits and generate commissions is [] totally insufficient to demonstrate scienter." *Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, 2013 WL 2154220, at *3 (S.D.N.Y. Mar. 29, 2013); *see, e.g.*, *Parmalat II*, 414 F. Supp. 2d at 438 (Kaplan, J.).

The best Plaintiff can possibly muster on scienter, then, is that "the broker-defendants, as the literal gatekeepers of every share traded, must have known, or were deliberately reckless in not knowing, that their platforms were being used to manipulate stocks like Eltek." Am. Compl. ¶ 127. But this "must have known" allegation against a broker-dealer is "simply ridiculous." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 2008 WL 850473, at *3 (S.D.N.Y. Mar. 27, 2008) (Kaplan, J.) (*ATSI II*). Such allegations indeed have led to sanctions. *See, e.g.*, *id.*, *aff'd in relevant part*, 579 F.3d 143, 149 (2d Cir. 2009) (*ATSI III*). Even if Interactive Brokers somehow did "suppose that the [John Does'] object of the [trades] was to depress the price" of Eltek stock, "it is hard to see how," by executing the transactions, it "thereby would have become a culpable participant in that scheme." *ATSI II*, 2008 WL 850473, at *3; *see ATSI III*, 579 F.3d at 149.

19

In the end, there is simply no way to reach an "inference of scienter" that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The obvious inference is, instead, that Interactive Brokers operates a legitimate business with legitimate purposes for everything involved here (none of which is unlawful on its own or in combination). *See, e.g.*, Am. Compl. ¶ 159 (conceding that Interactive Brokers' policies can "be explained away"). Interactive Brokers legitimately provides open-market access to its millions of users, including for lawful short selling. Plaintiff has failed to meet its heavy burden of pleading, with particularity, otherwise.

C.    **No Reliance.**

Plaintiff similarly fails to plead reliance. This element for a scheme-liability claim under Rule 10b-5(a) and (c) helps ensure the "requisite causal connection between a defendant's [unlawful acts] and a plaintiff's injury." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008). It requires the plaintiff to allege with particularity that it relied on the *particular* "defendants' own conduct" (Interactive Brokers' conduct) in connection with the trades. *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010).

Something should already seem amiss: Nowhere in the complaint does Plaintiff allege that it relied on Interactive Brokers' "entire business model," or any part of it, with respect to the stock at issue or anything else. Am. Compl. ¶ 157. Plaintiff indeed does not allege anything about when or how it learned of Interactive Brokers' allegedly deceptive policies. In fact, the complaint never even uses the word "reliance," and it uses the word "rely" only in the context of the New York fraud claim. *See id.* ¶¶ 175–76. According to the complaint, instead, Interactive Brokers was merely in the background, behind the scenes, processing the trades of the John Does. If Plaintiff relied on anything, it relied on *the John Does' conduct* in making the trades that helped set a market price. Interactive Brokers is "alleged to have facilitated" those supposedly illegal trades, yes, but

20

that does not suffice for reliance. *Mayer Brown*, 603 F.3d at 159. Unlike with the John Does, "nothing about [Interactive Brokers'] actions made it necessary or inevitable" that the market would be manipulated. *Id.* at 159–60; *see, e.g.*, *Stoneridge*, 552 U.S. at 159; *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 254 (S.D.N.Y. 2022).

Nor does any sort of presumption of reliance save the complaint. For one thing, *Stoneridge* and its progeny forecloses it on these facts. And for another, Plaintiff did not invoke a fraud-on-the-market theory here. "The fraud on the market theory can only apply when a plaintiff alleges an efficient market." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (*Merrill Lynch I*), *aff'd sub nom. Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011). And Plaintiff did not do so. The complaint is devoid of all the factors courts consider—"(1) the average weekly trading volume of the stock, (2) the number of securities analysts following and reporting on it, (3) the extent to which market makers traded in the stock, (4) the issuer's eligibility to file an SEC registration Form S-3, and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the stock's price." *Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017). And all indications, anyway, are that the market for Eltek stock was *not* efficient. *See, e.g.*, Am. Compl. ¶ 96 (trading of only 2000 shares, representing approximately .115% of the float). Plus, and again, *Interactive Brokers'* alleged conduct was not "reflected in the market price." *Merrill Lynch I*, 704 F. Supp. 2d at 394. All roads thus lead to no reliance on Interactive Brokers' allegedly deceptive conduct.

### D.    No Loss Causation.

Finally, Plaintiff fails to allege loss causation, which requires a "proximate causal link between the alleged misconduct [of Interactive Brokers] and the plaintiff's economic harm." *ATSI I*, 493 F.3d at 106. "The loss causation requirement is often analogized to the tort concept of proximate cause." *Arduini/Messina P'Ship v. Nat'l Medical Fin. Serv. Corp.*, 74 F. Supp. 2d 352,

360 (S.D.N.Y. 1999) (collecting cases). To establish loss causation, then, the plaintiff must show "that the economic harm that it suffered *occurred as a result of* the alleged [manipulation]" by the particular defendant at issue. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis in original).

Other than the bare assertion that Plaintiff suffered loss "[a]s a direct and proximate result of [Interactive Brokers'] 'Deceptive Business Model'" (Am. Compl. ¶ 160), this complaint contains nothing proximately connecting *Interactive Brokers* to Eltek's supposed losses. The complaint does not even allege *but-for* causation—that, but for Interactive Brokers' platform, the illegal trades would not have happened. Rather, these trades could have been made—and were in fact made—on *scores* of other platforms and using *thousands* of other broker-dealers. *See, e.g.*, Am. Compl. ¶ 76. The complaint thus fails to allege that these trades would not have happened without Interactive Brokers' supposedly deceptive practices, and it fails to explain how Interactive Brokers' "entire business model" (Am. Compl. ¶ 157) somehow played a substantial factor in causing Plaintiff's losses. *See Lentell*, 396 F.3d at 175. Nor is it at all a "foreseeable consequence" of, say, allegedly defaulting a customer to objecting-beneficial-owner status (Am. Compl. ¶¶ 53, 60) that Eltek stock would be manipulated. *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495–1496 (2d Cir. 1992). The complaint thus pleads itself out of court on loss causation. *See, e.g.*, *Healthcare Fin. Grp., Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 349–50 (S.D.N.Y. 2009); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 359–65 (S.D.N.Y. 2008).

Instead of pleading loss causation against Interactive Brokers, the complaint targets *the John Does*—the "masterminds" and "primary violators who executed the [actual] manipulation." Am. Compl. ¶¶ 9, 163. According to the complaint, those John Does are the "direct cause of [the] plaintiff's injury"—which means "that same injury cannot be said to have occurred by reason of

[Interactive Brokers'] actions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). There were other intervening direct causes, too. The complaint showcases, for instance, that Eltek's price movements were directly correlated with the company's earnings. *See, e.g.*, Am. Compl. ¶¶ 84–85, 115. And in what Plaintiff identifies as one of the worst instances of the John Does' trading—trading that occurred on March 9, 2020, *see id.* ¶ 89—that trading occurred on the day that began the COVID-19 stock market crash, during which the S&P 500 fell 7% within four minutes of opening and which ended in the Dow's worst day since 2008. What more plausibly caused that loss: the broader market dislocations around the COVID-19 pandemic, or Interactive Brokers' alleged policies around "objecting beneficial owners"?

Plaintiff faces one more headwind on pleading loss causation. For its "losses"—all of which are "hypothetical" and thus not enough, *Aimis Art. Corp. v. N. Tr. Secs., Inc.*, 641 F. Supp. 2d 314, 320 (S.D.N.Y. 2009)—Plaintiff relies on "the long-term cumulative effect of [the supposed] manipulation," over the course of some six-plus years. Am. Compl. ¶ 145. But courts routinely reject these "long-term" price-impact theories as "rest[ing] on speculation rather than plausibly nonconclusory factual allegations." *E.g.*, *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2025 WL 368717, at *15–20 (S.D.N.Y. Jan. 31, 2025); *see also, e.g.*, *Phunware, Inc.*, 2024 WL 1465244, at *7; *cf., e.g.*, *ATSI I*, 493 F.3d at 107 (finding no loss causation based on misrepresentation that defendants were "long-term investor[s]"); *Gamma Traders-I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022). This Court should too. This complaint should be dismissed for failure to plead loss causation—among all the many other reasons it fails.

## III.    COUNT FIVE (COMMON-LAW FRAUD) IS SUBSTANTIVELY DEFICIENT.

Based on the same alleged conduct by Nonparty Interactive Brokers LLC, Plaintiff also asserts against Interactive Brokers Group, Inc. a claim under New York law for common-law

fraud.  *See* Am. Compl. ¶¶ 172–78.  In addition to failing for procedural reasons (it is against the wrong Interactive Brokers party and flunks Rule 23.1), this claim fails on the merits for two straightforward reasons:  (A) Interactive Brokers did not make any representations to Plaintiff; and even if it did, (B) Plaintiff did not rely on any such "representations."

### A.    Interactive Brokers Did Not Make Any Representations To Plaintiff.

A New York fraud claim is not like a federal securities claim under Rule 10b-5(a) or (c). There is no "scheme liability" under New York common-law fraud.  Instead, to make out a state-law claim for fraud, the plaintiff must allege—akin to Rule 10b-5*(b)*—that the defendant made a representation, in particular a "misrepresentation or material omission," specifically to the plaintiff.  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Interactive Brokers made no representations to Plaintiff or Eltek, far less ones that anyone could count as misrepresentations or material omissions.  That sinks this claim, plain and simple. *See, e.g.*, *Nerey v. Greenpoint Mortg. Funding, Inc.*, 144 A.D.3d 646, 647 (N.Y. App. Div. 2016) *Warren v. Forest Lawn Cemetery & Mausoleum*, 222 A.D.2d 1059, 1059 (N.Y. App. Div. 1995).

The most the complaint possibly alleges on this front is that Interactive Brokers' "*conduct* constituted material misrepresentations and omissions of fact to Eltek," namely, "the false representation that the market for Eltek stock was free, fair, and not subject to manipulation."  Am. Compl. ¶ 174 (emphasis added).  But this conduct-as-misrepresentation theory has been uniformly rejected.  "[T]rading activity can[not] constitute a misstatement for purposes of fraud" under New York law.  *Harrington*, 585 F. Supp. 3d at 424.  A broker-dealer's supposedly "fraudulent and deceptive scheme[] to manipulate the market" thus does not count as a representation to support a common-law fraud claim.  Am. Compl. ¶ 173.  And even it did, Plaintiff's fraud claim engages in "an egregious example of prohibited 'group pleading,'" badly failing Rule 9(b).  *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 208 (S.D.N.Y. 1996).  Nowhere does Plaintiff even

24

attempt to distinguish among the "Defendants"—let alone plead the "who, what, where, when and how" of any Interactive Brokers misrepresentation or omission.  *Id.*; *see, e.g.*, *Diesenhouse v. Social Learning and Payments, Inc.*, 2022 WL 3100562, at *8 (S.D.N.Y. Aug. 3, 2022).

**B.    Plaintiff Did Not Rely On Any Possible "Representations" From Interactive Brokers In Any Event.**

Even if Interactive Brokers' business conduct could somehow constitute a representation, Plaintiff fails to plausibly allege its reliance on Interactive Brokers' conduct—including for the same reasons Plaintiff fails to plead reliance for its federal claim.  But even more so here, Plaintiff must allege, with particularity, "actual reliance."  *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *4 (S.D.N.Y. Oct. 22, 2013) (Kaplan, J.) (*Lehman II*).  "Case law has consistently held that the presumption of reliance afforded a plaintiff in a 10b-5 action does not apply to a common law fraud claim."  *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 850 F. Supp. 1199, 1221 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995).  So Plaintiff's conclusory allegation that "Eltek justifiably relied on the integrity of the market when making capital-raising and strategic decisions" does not suffice as a matter of law, even if it could possibly clear the Rule 9(b) threshold.  Am. Compl. ¶ 176; *see, e.g.*, *Strauss v. Long Island Sports, Inc.*, 60 A.D.2d 501, 509 (N.Y. App. Div. 1978).  And as explained, Plaintiff says nothing about how and when—or even *whether*—it actually relied on Interactive Brokers in all this.

**CONCLUSION**

For these reasons, this Court should dismiss the Amended Complaint with prejudice.

Dated: March 16, 2026                    Respectfully submitted,

                                         */s/ James R. Saywell*
                                         _____
                                         Geoffrey J. Ritts (*pro hac vice* forthcoming)
Henry Klehm III                          James R. Saywell (*pro hac vice*)
JONES DAY                                JONES DAY
250 Vesey Street                         901 Lakeside Avenue
New York, NY 10281-1047                  Cleveland, Ohio 44114
Tel: (212) 326-3939                      Telephone: (216) 586-3939
Facsimile: (212) 755-7306                Fax: (216) 579-0212
hklehm@jonesday.com                      jsaywell@jonesday.com

                                         *Counsel for Defendant*
                                         *Interactive Brokers Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


<u>*/s/ James R. Saywell*</u>
James R. Saywell

*Counsel for Defendant*
*Interactive Brokers Group, Inc.*