**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XDOOD LLC, derivatively on behalf of ELTEK, LTD, | Civil Action: 1:25-cv-08536 (LAK) |
| Plaintiff, | |
| v. | ORAL ARGUMENT REQUESTED |
| INTERACTIVE BROKERS GROUP, INC., MORGAN STANLEY SMITH BARNEY LLC, and JOHN DOES 1-10, | |
| Defendants. | |

**DEFENDANT MORGAN STANLEY SMITH BARNEY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ALLEGATIONS OF THE AMENDED COMPLAINT .............................................................. 5

ARGUMENT ................................................................................................................................ 9

    I.       PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER
               SECTION 10(b) OF THE EXCHANGE ACT OR RULE 10b-5(a) or (c) ............. 9

           A.     Plaintiff Has Failed to Plead Scienter .................................................... 11

           B.     Plaintiff Has Failed To Allege That Morgan Stanley
                  Engaged In A Manipulative Act ............................................................. 14

           C.     Plaintiff Has Failed To Allege A Cognizable Loss
                  or Loss Causation .................................................................................. 15

           D.     Plaintiff Has Failed To Plead Reliance .................................................. 18

    II.     Plaintiff's Common Law Fraud Claim Fails ...................................................... 19

    III.    Plaintiff Does Not Adequately Plead a Basis for
            Bringing A Derivative Action ............................................................................ 20

    IV.    Plaintiff's Section 10(b) Claim is Time-Barred ................................................ 22

CONCLUSION ........................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Aimis Art Corp. v. N. Tr. Secs., Inc.*,
  641 F. Supp. 2d 314 (S.D.N.Y. 2009) ..................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................................ 10, 11, 14, 19

*Axar Master Fund, Ltd. v. Bedford*,
  308 F. Supp. 3d 743 (S.D.N.Y. 2018) ..................................................... 19

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat. Bank*,
  850 F. Supp. 1199 (S.D.N.Y. 1994) ....................................................... 20

*Basic Inc. v. Levinson*,
  485 U.S. 224, 108 S. Ct. 978, 99 L. Ed.2d 194 (1988) ........................... 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 9, 10

*Cartwright v. D'Alleva*,
  2018 WL 9343524 (S.D.N.Y. Aug. 27, 2018) ......................................... 20

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994) ............................................................................. 10

*Citibank, N.A. v. K-H Corp.*,
  968 F.2d 1489 (2d Cir. 1992) ................................................................ 17

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) ............................................... 15, 16

*Dover Ltd. v. A.B. Watley, Inc.*,
  423 F. Supp. 2d 303 (S.D.N.Y.2006) ..................................................... 19

*ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .................................................................. 14

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ............................................................................. 14

*Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*,
  797 F.3d 229 (2d Cir. 2015) .................................................................. 20

*Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F.4th 71 (2d Cir. 2022) ..................................................................................... 17

*Guo v. Perry*,
   No. 23-CV-00119 (DEH)(SN), 2024 WL 5508500 (S.D.N.Y. Oct. 25, 2024) ...................... 12

*Hausman v. Buckley*,
   299 F.2d 696 (2d Cir. 1962) .................................................................................. 20

*In re Citigroup Auction Rate Sec. Litig.*,
   700 F. Supp 2d 294 (S.D.N.Y. 2009) ........................................................... 11, 12, 16

*In re ITT Corp. Derivative Litig.*,
   588 F. Supp. 2d 502 (S.D.N.Y. 2008) ....................................................................... 21

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014) ........................................................................ 18

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...................................................................... 10

*Kalin v. Xanboo, Inc.*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007) ................................................................. 20, 21

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) .................................................................................. 12

*Kasilingam v. Tilray, Inc.*,
   2024 WL 4350118 (S.D.N.Y. Sept. 30, 2024) ............................................................ 13

*Kraft v. Third Coast Midstream*,
   No. 19-CV-9398 (LJL), 2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) ................................. 15

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) .................................................................................. 18

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) .................................................................................. 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) .................................................................................. 19

*Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ........................................................................ 13

*Maher v. Glob. Factors LLC*, No. 22-CV-,
   6506 (LJL), 2024 WL 3356985 (S.D.N.Y. July 8, 2024) ............................................... 19

*May v. Barclays PLC*,
    No. 23-CV-2583 (LJL), 2025 WL 887300 (S.D.N.Y. Mar. 21, 2025) .................................... 13

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010) ................................................................................................ 22

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
    75 F.3d 801 (2d Cir. 1996) ....................................................................................... 12

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010) ..................................................................................... 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................. 9, 23

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008) ........................................... 18

*Sullivan & Long, Inc. v. Scattered Corp.*,
    47 F.3d 857 (7th Cir. 1995) ...................................................................................... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................. 9, 11, 14, 23

*Thea v. Kleinhandler*,
    807 F. 3d 492 (2d Cir. 2015) .................................................................................... 23

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) ..................................................................................... 15

**Statutes**

15 U.S.C. § 78u-4(b)(2) ................................................................................................. 10

28 U.S.C. § 1658(b) ..................................................................................................... 22

**Rules**

Fed. R. Civ. P. 23.1 ......................................................................................... 1, 4, 20, 23

Fed. R. Civ. P. 9(b) ................................................................................................ 1, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 10

iv

Morgan Stanley Smith Barney LLC ("Morgan Stanley") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff XDOOD LLC's ("Plaintiff" or "XDOOD") Amended Complaint (the "Amended Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (the "PSLRA").

## PRELIMINARY STATEMENT

Plaintiff brings this securities fraud and common law fraud action derivatively on behalf of Eltek, Ltd. ("Eltek"), a publicly traded company. The Court dismissed Plaintiff's original complaint *sua sponte* on the grounds that it was "not the 'short and plain statement of the claim showing that the pleader is entitled to relief' that Rule 8(a) requires." The Amended Complaint, while shorter, remains a jumble of confusing, conclusory, and self-contradicting allegations that fails to state any claim against Morgan Stanley as a matter of law, fails to meet Rule 23.1 derivative action requirements, and is barred by the statute of limitations.

### *Defendants and Claims*

The majority of Plaintiff's allegations are against several unknown Eltek shareholders, who Plaintiff alleges may include "family offices" and "institutional investors" (hereafter, the "John Doe Defendants"). Plaintiff asserts that, starting in November 2019, the John Doe Defendants manipulated Eltek's share price through deceptive practices like wash trades and spoofing in violation of Section 9(a)(1) and (2) of the Securities Exchange Act ("SEA").

Plaintiff also attempts to bring derivative fraud claims (under SEA Section 10(b), Rule 10b-5, and common law) against two trading platforms: Interactive Brokers Group, Inc., and Morgan Stanley (which operates E*TRADE). Plaintiff's claims against Morgan Stanley relate to a temporary Morgan Stanley policy that required purchases of Eltek shares be made by phone,

and not electronically (the "P-Trade Policy").  In a conclusory and nonsensical fashion, Plaintiff alleges that the P-Trade Policy was a "secret" and "fraudulent scheme" relating to some unexplained "Know Your Customer" issues at Morgan Stanley.

But Plaintiff's own allegations about what led up to the P-Trade Policy and why it was implemented actually establish that Morgan Stanley was acting to prevent fraud.  Plaintiff alleges that, on October 16, 2020, NASDAQ halted trading of Eltek shares due to anomalously high trading volume in the market caused by the John Doe Defendants. (AC ¶ 3.)  Plaintiff then alleges that Morgan Stanley implemented the P-Trade Policy later that same day. (AC ¶ 3.) Vitiating its claim that there was fraudulent intent, Plaintiff expressly pleads that the reason Morgan Stanley implemented the P-Trade Policy was "[t]o address detected manipulation" in the market (*id*.) and that "other major brokerage firms, including Merryl Lynch of Bank of America and Charles Schwab, instituted similar trading restrictions . . ." (AC ¶ 6.)  Moreover, contradicting its own allegation that the P-Trade Policy was a "secret," Plaintiff concedes that Morgan Stanley expressly disclosed the P-Trade Policy to customers who sought to purchase Eltek shares on its platform and that Plaintiff knew of the policy at the time.[1] (AC ¶¶ 41-43, 139-140.)

In sum, the Amended Complaint demonstrates that Morgan Stanley acted transparently and with the intention to combat fraud, which, of course, eviscerates Plaintiff's claims. Moreover, Plaintiff's conclusory, disjointed, and irrational allegations otherwise do not even come close to stating a valid cause of action.

---

[1] Plaintiff's allegation that the P-Trade policy was a "secret," followed by its admission that the policy was actually disclosed to customers and known to Plaintiff, is nonsensical and closer to what one may find in an AI-generated pleading rather than a good faith, fact-based submission written by counsel.

***Plaintiff Fails to State a Claim***

Securities fraud claims are subject to heightened pleading requirements that a plaintiff must meet to survive a motion to dismiss. Here, Plaintiff has failed to adequately plead any of the elements of its claims, including scienter, a manipulative act, reliance, a legally cognizable loss, and loss causation.

First, Plaintiff fails to sufficiently plead scienter. Indeed, as discussed above, Plaintiff refutes its own scienter claim when it concedes that Morgan Stanley's intent in implementing the P-Trade Policy was "[t]o address detected manipulation" in the market and that Morgan Stanley expressly disclosed the policy to customers attempting to purchase Eltek Shares. Moreover, Plaintiff's vague and conclusory allegations that Morgan Stanley was motivated to put the P-Trade Policy in place because of some unexplained internal "Know Your Customer" issues are unsupported by any particularized facts whatsoever. (In addition, this allegation is inconsistent with Plaintiff's concession that the policy was implemented to address manipulation).

Second, the Amended Complaint fails to plead an actionable "manipulative act." Under established Second Circuit precedent, acts that are fully disclosed cannot form the basis of a market manipulation claim. Here, Plaintiff concedes that the P-Trade Policy was expressly disclosed to buyers of Eltek shares on its platform and that Plaintiff knew about the policy at the time it was in place. The Amended Complaint even quotes from two of the disclosures. On top of this, Plaintiff fails to make a plausible showing that the P-Trade Policy was designed to, or had the ability to, manipulate the stock price. Indeed, at all times, legitimate customers had full ability to purchase Eltek shares by phone at Morgan Stanley or through thousands of other brokers.

3

Third, Plaintiff fails to allege cognizable losses or loss causation. The allegations of purported "harms" to Eltek (e.g., lost "growth opportunities") are so vague that they fail to meet even notice pleading standards. Moreover, the Amended Complaint is devoid of any factual allegations showing a causal link between Morgan Stanley's P-Trade Policy and any of the indeterminate economic harms purportedly suffered by Eltek. In any event, the purported "harms" to Eltek are not cognizable damages under the law because they are not a plausible or foreseeable consequence of Morgan Stanley's requirement that a customer pick up a phone to trade Eltek, rather than type its order into a phone or computer, as per the P-Trade Policy.

Fourth, Plaintiff does not plead reliance. Indeed, Plaintiff does not allege that Eltek relied on Morgan Stanley or any manner in which Morgan Stanley allowed its customers to trade. Moreover, any reliance would have to be "reasonable or justifiable." Here, it would be grossly unreasonable for Eltek to have relied on Morgan Stanley maintaining a policy of open electronic trading in the context of the alleged fraudulent electronic trading by the John Doe Defendants.

### *Additional Grounds for Dismissal*

Plaintiff's attempt to bring this action derivatively on behalf of Eltek also fails under Rule 23.1 for multiple reasons. As an initial matter, Plaintiff failed to verify its pleading, as required under Rule 23.1(b). Additionally, Plaintiff failed to plead with particularity the demand made on Eltek, as required under Rule 23.1(b)(3). Plaintiff alleges that Eltek is an Israeli company and references Israel Companies Law 5759-1999, which provides requirements that must be met before a derivative action is filed. From the face of this statute, these requirements include a written demand letter, addressed to "the Chairman of the company's Board of Directors," that "specif[ies] the facts that create the grounds for the action and the reasons for bringing it."

Plaintiff does not allege with particularity any efforts it made with respect to the demand, including whether it met the requirements of the written demand letter under the Israeli statute.

Moreover, after demand requirements are met, the Israeli statute further requires that the party attempting to bring the derivative action obtain "approval by the Court," which requires a court to make a determination as to whether the action is "to the benefit of the company."[2] Plaintiff, however, does not allege that it obtained court approval. Moreover, the Amended Complaint is devoid of any allegations supporting a determination that the action is "to the benefit of the company" and fails to request any such determination in violation of the Israeli requirements.

Additionally, Plaintiff's claims are time-barred. According to the Amended Complaint, the P-Trade Policy was implemented on October 16, 2020, and ended nine months later. All of the information that purportedly forms the basis of Plaintiff's claims against Morgan Stanley in the Amended Complaint was known to Plaintiff by February 2021 at the latest. Indeed, New York State court filings show Plaintiff's sole member, Michael McGauley ("McGauley"), knew about the policy by February 9, 2021, and had taken the position he had claims against Morgan Stanley for initiating the P-Trade Policy. Plaintiff, however, did not file this action against Morgan Stanley until October 15, 2025, which is well beyond the applicable two-year statute of limitations following discovery. The Amended Complaint should be dismissed with prejudice for this reason alone.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff's 47-page Amended Complaint is disjointed and filled with confusing self-contradictions, unexplained statements, and non sequiturs. Below is a distillation of the

---

[2] Israel Companies Law 5759-1999, § 198.

allegations that relate to Plaintiff's description of facts regarding Eltek shares and the sparse claims against Morgan Stanley.[3]

Plaintiff XDOOD LLC, a Massachusetts limited liability Company, has held between 3,500 and 24,000 shares of the Company since November 2019. (AC ¶ 16-17.)  McGauley is the manager and sole member of XDOOD. (AC ¶ 19.)  Eltek is a manufacturer of printed circuit boards and is organized and based in Israel. (AC ¶ 30.)  Eltek shares are publicly traded and its primary listing exchange is NASDAQ. (AC ¶ 29.)

Morgan Stanley Smith Barney LLC is a Delaware entity that operates the E*TRADE trading platform. (AC ¶ 27.)  Interactive Brokers Group Inc. is a Delaware Holding Company that "[t]ogether with its affiliates, it serves as an automated global electronic stockbroker-dealer." (AC ¶ 23.)

Plaintiff attempts to bring this action as a "shareholder derivative action on behalf of Eltek Ltd." to purportedly remedy alleged "ongoing fraudulent manipulation of the Company's publicly traded stock on Nasdaq during the period beginning in November 2019 and continuing through the present (the 'Relevant Period')." (AC ¶ 1.)  The John Doe Defendants "are liable as the primary violators who executed the underlying manipulation, including (but not limited to) wash trades, matched orders, spoofing, and a multi-year price fixing scheme." (AC ¶ 9.)

The John Doe Defendants "consist of business entities and individuals that traded Eltek stock on U.S. trading venues, including national securities exchanges such as Nasdaq and alternative trading systems." (AC ¶ 28.)   The John Doe Defendants "may include, but are not

---

[3] The First Amended Complaint (Dkt. 6) is cited herein as "AC ¶ __."  The allegations of the Amended Complaint are set out herein for the purposes of this motion and without conceding the veracity of the pleading.

limited to, individuals acting in concert, omnibus account holders, hedge funds, family offices, market makers, or other institutional investors." (*Id.*)

"Fraudulent market manipulation of Eltek's securities, by [the John Doe Defendants], occurred on or about October 16, 2020," when trading volume went up to 1,028,170 shares, "representing 67.7% of the Float." (AC ¶¶ 3, 70)  "This surge triggered a Nasdaq Limit Up–Limit Down ('LULD') price volatility halt automatically imposed upon algorithmic triggers . . . The halt lasted five minutes, during which no trading was processed. This was one of nine LULD halts for Eltek during the Relevant Period." (AC ¶ 70.)

"To address detected manipulation, [Morgan Stanley's] Fraud Operations Unit suspended electronic purchases of Eltek stock for approximately nine months following October 16, 2020." (AC ¶ 4.)  During the period the P-Trade Policy was in place, Morgan Stanley customers could still purchase Eltek shares by placing telephone orders with a customer service representative. (*Id.*)  "Other major brokerage firms, including Merryl Lynch of Bank of America, and Charles Schwab, instituted similar trading restrictions due to the unusual trading of Eltek stock." (AC ¶ 6.)

Morgan Stanley customers attempting to electronically purchase Eltek stock were notified in writing of the P-Trade Policy. (AC ¶ 41.)  Plaintiff cites two examples of such notifications. "On December 31, 2020, MSSB customer Heins Karam ('Karam') attempted to place an order to buy Eltek shares through the [Morgan Stanley] website and received a message stating 'Opening order for this security cannot be accepted online at this time' and providing a phone number to call customer service." (AC ¶ 42.)  On May 10, 2021, Karam received written notification by e-mail from Morgan Stanley stating: "'Currently, all orders on ELTK require instructions be provided over a recorded line.'" (AC ¶ 43.)

Without any supporting factual allegation, and having just conceded that Morgan Stanley had acted to "address detected manipulation," Plaintiff then asserts that Morgan Stanley's motive in instituting the P-Trade Policy was "to clean up its institutional KYC failures." (AC ¶ 104.) The Amended Complaint is devoid of any particularized allegations regarding what these purported KYC issues were or how they related to the P-Trade Policy. Then, in the Amended Complaint's "Scienter" section, Plaintiff makes no "KYC" allegations at all. Instead, in a non-sequitur, Plaintiff claims (without particularized factual allegations) that Morgan Stanley "acted with scienter. . . when it cancelled McGauley's account" and purportedly refused to answer his questions after being informed about his investigation into Eltek trading activity. (AC ¶ 124.)

Plaintiff also makes the conclusory allegation that the P-Trade Policy negatively impacted demand for Eltek stock. (AC ¶4.) Plaintiff alleges the P-Trade Policy suppressed legitimate purchases of stock and permitted Eltek stock to be borrowed for short-side activity and that this "created a downward asymmetrical market for Eltek's stock." (AC ¶47, 48.) But Plaintiff does not make particularized factual allegations that in any way support its conclusory claim that the P-Trade Policy prevented any legitimate trading of Eltek Shares, which could still be done by phone at Morgan Stanley or through myriad other brokers. Nor does Plaintiff attempt to estimate the number of supposed legitimate stock purchases that did not go through because customers had to call in trades. And while Plaintiff makes the conclusory allegation that the P-Trade Policy negatively impacted demand for Eltek stock (AC ¶4), Plaintiff includes a chart later in the pleading that shows the price of Eltek shares rose significantly over the period of the P-Trade Policy (which is alleged to be approximately October 2020 to July 2021). (AC ¶ 104 at Figure 3.)

8

McGauley, the manager and sole member of Plaintiff XDOOD, knew of the P-Trade Policy by February 9, 2021, at the latest – which is over four years before Plaintiff filed the complaint in this action. (AC ¶ 45.)  Indeed, on February 9, 2021, McGauley filed a petition in the Supreme Court of the New York State Court, New York County, against E*TRADE Securities LLC ("E*TRADE") (which was subsequently acquired by Morgan Stanley) (Index No. 151395/2021) for pre-action discovery regarding the P-Trade Policy and "to try to obtain critical information about the [John Doe Defendants]."[4] (hereafter, the "2021 Action") (AC ¶ 45); (Verified Petition, dated February 9, 2021, Civ. No. 151395/2021, NYSCEF DOC. NO. 1 at ¶ 4).  In the 2021 Action, McGauley claimed he "has viable causes of action against E*TRADE based on its P-Trade Policy.  (*Id*. at ¶ 6.)

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

## I.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT OR RULE 10b-5(a) or (c)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S.

---

[4] This Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (holding that a court may take judicial notice of publicly filed documents "to show . . . that assertions were made in lawsuits").

at 678. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

   "Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  First, a complaint must satisfy the pleading requirements of Fed.R.Civ.P. 9(b), which requires a party to "state with particularity the circumstances constituting fraud." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 259 (S.D.N.Y. 2008).  "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI*, 493 F.3d at 99. Second, a complaint must satisfy the elevated scienter standards of the Private Securities Litigation Reform Act ("PSLRA"), which requires a party to "state with particularity facts giving rise to a strong inference that the Defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

   To state a claim for market manipulation under Section 10(b) of the Exchange Act, a plaintiff must allege "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101.  Plaintiff has failed to adequately allege any of these elements.[5]

---

[5] Because the Amended Complaint is muddled, Plaintiff's actual theory of liability remains uncertain (which alone is grounds for dismissing the pleading).  But to the extent Plaintiff's opposition brief tries to support its claim by arguing that Morgan Stanley somehow aided and abetted the John Doe Defendants, that theory of liability fails because there is no such claim under federal securities laws, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)"), and, in any event, Plaintiff failed to plead any such particularized facts or claim.

A.     **Plaintiff Has Failed to Plead Scienter**

The PSLRA's heightened standards apply to the element of scienter. *ATSI*, 493 F.3d at 102 ("This pleading requirement is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation").  "A plaintiff may satisfy this heightened pleading requirement by alleging facts '(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp 2d 294, 304-305 (S.D.N.Y. 2009) (quoting *ATSI*, 493 F.3d at 99).

Importantly, "[i]n evaluating a complaint to determine whether the facts alleged give rise to a strong inference of scienter, courts must take into account plausible opposing inferences." *Citigroup*, 700 F. Supp. 2d at 305 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)). A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

Here, not only is there an "opposing inference" that no fraud occurred, Plaintiff's own allegations directly establish that Morgan Stanley was acting transparently, reasonably, and in a manner to combat fraud.  Indeed, as set forth above, Plaintiff alleges:

- October 16, 2020, the John Doe Defendants engaged in fraudulent manipulation of Eltek's shares resulting in high trade volume. (AC ¶ 3, 70.)

- "This surge triggered a Nasdaq . . . price volatility halt." (AC ¶ 70.)

- "To address detected manipulation," Morgan Stanley initiated the P-Trade Policy. (AC ¶ 4)

- "Other major brokerage firms, including Merryl Lynch of Bank of America, and Charles Schwab, instituted similar trading restrictions due to the unusual trading of Eltek stock." (AC ¶ 6.)

- Morgan Stanley expressly disclosed the P-Trade Policy to customers. (AC ¶ 42.)

Plaintiff's bald allegations of "scienter" otherwise are wholly conclusory and largely incoherent.  Indeed, and without any supporting factual allegations, Plaintiff asserts in Count I that Morgan Stanley's motive in instituting the P-Trade Policy was to "buy time" to "clean up its institutional KYC failures" that it purportedly acquired in its E*TRADE acquisition. (AC ¶ 154.) But Plaintiff does not explain what these supposed KYC failures were, when they occurred, or how a temporary requirement that Eltek trades be made by phone would further this purportedly improper motive.  Nor does Plaintiff explain what Morgan Stanley is purportedly "buying time" from or how that phrase even applies in this context.  Such conclusory and confusing allegations fail to support a claim of scienter as a matter of law. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not . . .enjoy a license to base claims of fraud on speculation and conclusory allegations"); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (holding conclusory allegations of motive are insufficient; "[a] plaintiff cannot base securities fraud claims on speculation and conclusory allegations); *In re Citigroup Auction Rate Sec. Litig.*, 700 F.Supp.2d 294, 305 (S.D.N.Y. 2009) (holding plaintiff's conclusory allegations regarding defendants' motive were insufficient to give rise to a strong inference of scienter); *Guo v. Perry*, No. 23-CV-00119 (DEH)(SN), 2024 WL 5508500, at *6 (S.D.N.Y. Oct. 25, 2024), *report and recommendation adopted*, No. 23-CV-119 (DEH)(SN), 2025 WL 1047374 (S.D.N.Y. Apr. 8, 2025) ("conclusory, non-specific statements do not show that Defendant 'has motive and opportunity to commit fraud' or 'strong circumstantial evidence of conscious misbehavior or recklessness'").

What is more, even if Morgan Stanley took steps to remove customers who engaged in improper trading, that does not create an inference of fraud on the part of Morgan Stanley. Such remedial efforts are "a prudent course of action that weakens rather than strengthens an inference of scienter." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (quotation omitted); *accord May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2025 WL 887300, at *27 (S.D.N.Y. Mar. 21, 2025) (dismissing securities fraud claim and holding that the defendant bank's halting of new offers and sales of certain securities when issues arose weakened any inference of scienter), *reconsideration denied*, 23-CV-2583 (LJL), 2025 WL 1569633 (S.D.N.Y. June 3, 2025)); *Kasilingam v. Tilray, Inc.*, 2024 WL 4350118, at *13 (S.D.N.Y. Sept. 30, 2024); *Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 583 (S.D.N.Y. 2014), *aff'd sub nom. In re Lululemon Sec. Litig.*, 604 F. App'x 62 (2d Cir. 2015).

Moreover, in the Amended Complaint's "Scienter" section (AC, Section "F" at ¶¶ 123-129), Plaintiff makes no "Know Your Customer" allegations at all. Instead, in a non-sequitur, the "Scienter" section appears to focus on McGauley's personal issues with Morgan Stanley by claiming (without particularized factual allegations) that Morgan Stanley "acted with scienter. . . when it cancelled McGauley's account" and purportedly refused to answer his questions after being informed about McGauley's investigation into Eltek trading activity. (AC ¶ 124.) These conclusory allegations regarding McGauley fail to create any inference as to Morgan Stanley's motive in initiating the P-Trade Policy, let alone the requisite "strong inference" of fraud, especially in light of the contradictory allegations referenced above. Indeed, to constitute a "strong inference," the inference "must be more than merely 'reasonable' or 'permissible'—it must be cogent and . . . at least as compelling as any opposing inference one could draw from

the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 324 (2007). That is certainly not the case here.

Finally, Plaintiff fails to allege that Morgan Stanley had any financial motive to engage in the alleged conduct at issue. *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("[i]n order to raise a strong inference of scienter through 'motive and opportunity' to defraud, plaintiffs must allege that [the defendants] 'benefited in some concrete and personal way from the purported fraud'") (citation omitted).

### B.   Plaintiff Has Failed To Allege That Morgan Stanley Engaged In A Manipulative Act

The Amended Complaint should also be dismissed for failure to plausibly plead a manipulative act. Manipulative acts are "practices ... that are intended to mislead investors by artificially affecting market activity." *ATSI*, 493 F.3d at 100 (citation omitted); *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (the word "manipulative" connotes "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities"). "[A] manipulation complaint must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the Defendants." *ATSI*, 493 F.3d at 102.

Here, Plaintiff vaguely alleges that the P-Trade Policy suppressed legitimate purchases of stock and permitted Eltek stock to be borrowed for short-side activity and that this "created a downward asymmetrical market for Eltek's stock." (AC ¶¶47, 48.) But Plaintiff does not make particularized factual allegations that in any way support its conclusory claim that the P-Trade Policy prevented any legitimate trading of Eltek Shares, which could still be done by phone at Morgan Stanley or through thousands of other brokers. Nor does Plaintiff quantify or even attempt to estimate the number of supposed legitimate stock purchases that did not go through

14

because the customer had to pick up a phone to trade. And while Plaintiff makes the conclusory allegation that the P-Trade Policy negatively impacted demand for Eltek stock (AC ¶4), Plaintiff includes a chart later in its pleading that shows that the price of Eltek shares rose significantly over the period of the P-Trade Policy (which is alleged to be approximately October 2020 to July 2021). (AC ¶ 104 at Figure 3.) Additionally, as discussed above, Plaintiff's conclusory statement that the P-Trade Policy was a "manipulative act" cannot be squared with the Amended Complaint's allegation conceding that the policy was implemented to "address detected manipulation."

Moreover, under established Second Circuit precedent, acts that are fully disclosed cannot form the basis of a market manipulation claim. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011) ("[T]he market is not misled when a transaction's terms are fully disclosed."). Here, Plaintiff concedes that the P-Trade Policy was expressly disclosed to buyers of Eltek shares on its platform. As discussed above, the Amended Complaint quotes from two such disclosures, including one that states: "Currently, all orders on ELTK require instructions be provided over a recorded line." Thus, there can be no "market manipulation claims based on this disclosed policy as a matter of law." *Kraft v. Third Coast Midstream*, No. 19-CV-9398 (LJL), 2021 WL 860987, at *23 (S.D.N.Y. Mar. 8, 2021) (finding no market manipulation where all of the alleged activities of the defendant corporation were fully disclosed).

### C.    Plaintiff Has Failed To Allege A Cognizable Loss or Loss Causation

Plaintiff must plead facts showing a "legally cognizable loss" and a "causal connection between the alleged manipulation . . . and the loss" in order to state a claim for market manipulation. *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 430 (S.D.N.Y. 2010). This requires Plaintiff to allege that Eltek suffered "specific economic harm as [a] result of Defendants'

conduct." *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 307 (S.D.N.Y. 2009).

Here, Plaintiff fails to allege any specific economic harm and instead relies solely on generalized

assertions of "suppressed stock value, impaired capital raising, and lost growth opportunities,"[6]

which Plaintiff only describes in vague and indefinite terms (e.g. unexplained "delayed

acquisitions").[7]  These allegations fail to allege a legally cognizable loss or loss causation.

> First, the allegations of economic harm above are not legally cognizable because they are

vague, conclusory, and speculative.  Indeed, the Amended Complaint fails to explain the nature

of these events or the basis of the hypothetical lost opportunities.  *Aimis Art Corp. v. N. Tr. Secs.,

Inc.*, 641 F. Supp. 2d 314, 320 (S.D.N.Y. 2009) ("[A] plaintiff in an action under § 10(b) and

Rule 10b–5 cannot recover for 'damages' based on hypothetical investments he did not make");

*Cohen*, 722 F. Supp. 2d at 431 (alleged damages that were "too speculative to measure" did not

constitute a "legally cognizable loss").

> Additionally, Plaintiff has failed to allege any plausible "causal link between the alleged

misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch

& Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks omitted).  Indeed, there are no

allegations whatsoever that Morgan Stanley's P-Trade Policy caused any particular harm to

Eltek.  In fact, the Amended Complaint's meandering three-and-a-half-page section on "Injury to

Corporation and Causation" does not mention the P-Trade Policy at all or even reference any

harm that occurred during the period of the P-Trade Policy (i.e., the 9-month period following

October 16, 2020.  And while Plaintiff lumps all of the defendants together and claims that their

"concurrent schemes" were the "proximate" cause of Eltek's harm (AC ¶ 142), these allegations

---

[6] AC Section VIII, ¶ 142.
[7] AC ¶ 144.

of proximate cause are purely conclusory and insufficient. *See*, *e.g.*, *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc*., 41 F.4th 71, 81 (2d Cir. 2022) (holding that plaintiff's allegation that "Defendants' manipulation of the markets for precious metals futures contracts caused prices to be artificial throughout the Class Period" was "precisely the sort of 'mere[ly] conclusory statement[ ]' that we need not credit, even on a motion to dismiss"); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (holding that the complaint failed to allege loss causation where it alleged "in a conclusory fashion … that there [was] a direct causal link between defendants' fraud and [plaintiff's] losses" and "[did] not detail how the alleged fraud directly and proximately resulted" in plaintiff's damage).

Moreover, because Plaintiff fails to allege when any of these supposed harms to Eltek took place, it is impossible to even ascertain a causal link between these events and the temporary P-Trade Policy. *See, e.g., Gamma Traders - I LLC*, 41 F.4th at 80-81 (holding that, while plaintiff pled with specificity when some of Defendants' spoofing occurred, it failed to plead loss causation "since it never actually alleges when its own trades took place").

Lastly, it is simply implausible that the P-Trade Policy's requirement that a customer pick up a phone to trade Eltek, rather than type its order into a phone or computer, caused the alleged harm to Eltek or affected its share price in an improper manner. There is no rule or regulation requiring full, unfettered, online access to all securities and legitimate traders were always able to freely trade Eltek shares at Morgan Stanley by phone or through other brokers. And to the extent the P-Trade Policy had any impact, it prevented fraud. For example, Plaintiff alleges that the John Doe Defendants caused a surge in Eltek trading volume "from 2,000 shares to 1.6M shares" in early May 2021, but that Morgan Stanley "was not a primary market participant at this

time [] due to its P-Trade Policy."[8]  This allegation evidences that Morgan Stanley was a bulwark against fraud and, to the extent Eltek was damaged, the only logical cause was the alleged intervening and improper trading activity of the John Doe Defendants.  The Amended Complaint should be dismissed for this reason alone. *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 300 (S.D.N.Y. 2014) (dismissing complaint where plaintiffs failed to allege a "plausible" connection between a decrease in stock price and the alleged fraud), aff'd, 616 F. App'x 442 (2d Cir. 2015); *see also*, *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007) (holding loss causation requires that the plaintiff's loss be foreseeable).

> ### D.    <u>Plaintiff Has Failed To Plead Reliance</u>

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action. It ensures that, for liability to arise, the 'requisite causal connection between a defendant's misrepresentation and a plaintiff's injury' exists as a predicate for liability." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159, 128 S. Ct. 761, 769, 169 L. Ed. 2d 627 (2008) quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 243, 108 S. Ct. 978, 99 L. Ed.2d 194 (1988).

Here, Plaintiff simply does not allege that Eltek relied on Morgan Stanley or any manner in which Morgan Stanley allowed its customers to trade.  And, in any event, it would be grossly unreasonable for Eltek to have relied on Morgan Stanley maintaining a policy of full electronic

---

[8] AC ¶¶ 96-97.

trading in the context of the alleged fraudulent electronic trading by the John Doe Defendants.[9]

*Maher v. Glob. Factors LLC*, No. 22-CV-6506 (LJL), 2024 WL 3356985, at *13 (S.D.N.Y. July

8, 2024), aff'd, No. 24-2068-CV, 2025 WL 1554761 (2d Cir. June 2, 2025) ("[N]ot all reliance is

sufficient to demonstrate liability under the Exchange Act. Instead, the reliance must be

'reasonable' or justifiable") (internal quotation and citation omitted).

## II.    Plaintiff's Common Law Fraud Claim Fails

The elements of common law fraud under New York law are: "(1) a material

representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an

intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused

damage to the plaintiff." *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y.

2006) (citations omitted).  Claims of common law fraud must satisfy the requirements of Rule

9(b).  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182 (2d Cir.

2015) ("While the substantive elements of common-law fraud that must be proven are a matter

of state law, what must be pleaded and with what level of particularity are governed by Rules

9(b) and 12(b)(6)"); *Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 752 (S.D.N.Y.

2018).

---

[9] Additionally, Plaintiff does not allege "reliance" based on a belief in market efficiency, which would require Plaintiff to plead facts that would show that Morgan Stanley's conduct "sen[t] a false pricing signal to the market" while Eltek believed that the market "'reflect[ed] undistorted (though not necessarily accurate) estimates of the underlying economic value of the securities traded.'"  *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) (quoting *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 61 (7th Cir. 1995)). Even if Plaintiff had made such an allegation, it would fail because, according to the pleading, the market showed signs of manipulation prior to and after the period of the P-Trade Policy, including multiple trading halts by NASDAQ.  (AC ¶¶ 1, 73.)  Thus, Plaintiff could not assume an efficient, manipulation-free market.

Plaintiff's claim for common law fraud fails for all the same reasons that its Exchange Act claims fail. *See, e.g., Cartwright v. D'Alleva*, 2018 WL 9343524, at *6 (S.D.N.Y. Aug. 27, 2018) (dismissing common law fraud claims that "essentially track[ed] [plaintiff's] Section 10(b)claims"), *aff'd*, 782 F. App'x 77 (2d Cir. 2019).  Additionally, Plaintiff does not allege that Morgan Stanley made any representation to Eltek at all.  Plaintiff also does not allege that Eltek relied in any way on the manner in which Morgan Stanley processed Eltek trades, and "[c]ase law has consistently held that the presumption of reliance afforded a plaintiff in a 10b–5 action does not apply to a common law fraud claim." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat. Bank*, 850 F. Supp. 1199, 1221 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995).

### III.  Plaintiff Does Not Adequately Plead a Basis for Bringing A Derivative Action

Plaintiff's attempt to bring this action derivatively on behalf of Eltek fails for multiple reasons.  First, Rule 23.1(b) expressly requires that a derivative action complaint "must be verified."  Here, the Amended Complaint is not verified.

Additionally, Rule 23.1 requires a complaint in a derivative action to "state with particularity ... any effort by the plaintiff to obtain the desired action from the directors [i.e. a pre-suit demand upon the corporation] . . ." Fed. R. Civ. P. 23.1(b)(3).  "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law. . ." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015).  In adjudicating derivative actions, New York law looks to the state in which the company was formed. *See Hausman v. Buckley*, 299 F.2d 696, 700 (2d Cir. 1962) (applying Venezuelan law to bar derivative standing); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 409 (S.D.N.Y. 2007) (holding that because the company at issue was a New York corporation, "the

adequacy of the demand" is "governed by general provisions of New York corporate law"); *In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 507–08 (S.D.N.Y. 2008) (applying law of state of incorporation to demand adequacy).

Here, Plaintiff alleges that Eltek is an Israeli company and references Israel Companies Law 5759-1999, which provides requirements that must be met before a derivative action is properly filed. From the face of this statute, these requirements include a written demand letter addressed to the Chairman of the company's Board of Directors that "specif[ies] the facts that create the grounds for the action and the reasons for bringing it." Moreover, after these demand requirements are met, the Israeli statute further requires that the party attempting to bring the derivative action obtain "approval by the Court," which requires the court to determine whether the action is "to the benefit of the company. . ."[10]

Here, Plaintiff fails to allege any specifics regarding its purported demand, including whether the "demand" was written, whether it was directed to the Chairman of Eltek's Board of Directors, and what specific facts and grounds for the action were provided in the demand. *See Kalin v. Xanboo, Inc.,* 526 F. Supp. 2d 392, 410 (S.D.N.Y. 2007) (finding plaintiff's demand inadequate where complaint merely alleged that plaintiff "advised [d]efendants of his intention to bring a shareholder derivative action," but failed to detail "what wrongful action [the] [p]laintiff wanted [the defendant] to rectify or why"). Moreover, Plaintiff did not allege that it obtained court approval for this action, as required under Israeli law. Nor does the Amended Complaint include any allegations supporting a determination that this action is "to the benefit of the

---

[10] Israel Companies Law 5759-1999, § 198.

company" (as required for approval) and fails to request any such determination in violation of the Israeli requirements.[11]

## IV.    Plaintiff's Section 10(b) Claim is Time-Barred

The Amended Complaint should be dismissed as untimely.  A Section 10(b) claim is required to be brought by "not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b).  The U.S. Supreme Court has held that "actual discovery" is not required, but rather "the limitations period . . . begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010) (quoting 28 U.S.C. § 1658(b)).

According to the Amended Complaint, the P-Trade Policy was implemented on October 16, 2020, and all of the information that forms the basis of Plaintiff's claims against Morgan Stanley was known to Plaintiff in early 2021 – over 4 years prior to the filing of this action on October 15, 2025.  Indeed, McGauley, the manager and sole member of Plaintiff XDOOD, knew of the P-Trade Policy by February 9, 2021, at the latest. (AC ¶ 139.)  Indeed, on February 9, 2021, McGauley filed a petition in New York state court against E*TRADE Securities LLC (which was subsequently acquired by Morgan Stanley) (Civ. No. 151395/2021) for pre-action discovery regarding the P-Trade Policy and "to try to obtain critical information about the [John

---

[11] Plaintiff's failures in regard to the court approval are true even if this Court is empowered to make a determination as to "the benefit to the company" and grant approval (in place of an Israeli court).

Doe Defendants]." (hereafter, the "2021 Action") (AC ¶ 139); (Verified Petition, dated February 9, 2021, Civ. No. 151395/202, NYSCEF DOC. NO. 1).[12]

In the 2021 Action, McGauley claimed that he had "viable causes of action against E*TRADE" based on its P-Trade Policy. (*Id*. at ¶¶ 4-6.)  Thus, the statute of limitations began to run by that date at the latest.  Moreover, the P-Trade Policy was otherwise readily discoverable.  As discussed above, back in December 2020, Morgan Stanley was expressly informing customers, in writing, of the electronic trade restrictions. (AC ¶ 42.)  This was nearly five years before this action was filed.  And Plaintiff admits that it had access to publicly available data relating to Eltek trading activity at broker-dealers during the period of the P-Trade Policy in 2020. (AC ¶¶ 73, 76.)  Accordingly, the Amended Complaint should be dismissed with prejudice for this reason alone. *See Thea v. Kleinhandler*, 807 F. 3d 492, 501 (2d Cir. 2015) (statute of limitations defense "may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint").

## **CONCLUSION**

Plaintiff's claims fail on every level.  Its own allegations demonstrate that Morgan Stanley was acting transparently and with the intent to combat fraud.  And while the Amended Complaint uses the buzzwords of fraud, like "scienter" and "loss causation," it offers no particularized factual allegations supporting any of the elements of its claims.  Moreover,

---

[12] The Verified Petition is attached as Exhibit A to the Declaration of Michael J. Tiffany in Support of Morgan Stanley Smith Barney's Motion to Dismiss the Amended Complaint, dated March 16, 2026. The Verified Petition may be considered on this motion as a "document[] incorporated into the complaint by reference . . ." (AC ¶ 139; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) and by judicial notice of a publicly filed document in a lawsuit. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (holding that a court may take judicial notice of publicly filed documents "to show . . . that assertions were made in lawsuits . . .").

Plaintiff failed to meet the requirements of Rule 23.1 and has pled itself out of court by acknowledging that it discovered the facts at issue over four years ago – well beyond the statute of limitations.  For each of these reasons, this case should end and the Amended Complaint should be dismissed with prejudice.

Date: March 16, 2026

LEADER BERKON COLAO & SILVERSTEIN LLP

By: /s/ *Glen Silverstein*
    Glen Silverstein, Esq.
    gsilverstein@leaderberkon.com
    Michael J. Tiffany, Esq.
    mtiffany@leaderberkon.com
    Daniel A. Johnson
    djohnson@leaderberkon.com
    630 Third Avenue, 17th Floor
    New York, New York 10017

    *Attorneys for Defendant Morgan Stanley Smith Barney LLC*