**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

XDOOD LLC, derivatively on behalf of
ELTEK, LTD,

        Plaintiff,

   v.

INTERACTIVE BROKERS GROUP, INC.,
MORGAN STANLEY SMITH BARNEY
LLC, and JOHN DOES 1-10,

        Defendants.

Case No. 1:25-cv-08536 (LAK)

---

**DEFENDANT INTERACTIVE BROKERS GROUP, INC.'S
COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT AND
REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................1

I.     THE COMPLAINT IS PROCEDURALLY DEFICIENT FOR THREE REASONS ............................................................................1

        A.     Plaintiff Insists On Suing The Wrong Interactive Brokers Entity ......................................................................2

        B.     Plaintiff Concedes That The Complaint Flunks The Pleading Requirements For Derivative Actions Under Rule 23.1 ...........................................................................4

        C.     Plaintiff's Federal Claim Is Untimely Twice Over...........................7

II.    COUNT TWO (RULE 10B-5(A) AND (C)) IS SUBSTANTIVELY DEFICIENT.........................................................................8

        A.     No Deceptive or Manipulative Act................................................8

        B.     No Scienter ...................................................................................11

        C.     No Reliance ...................................................................................12

        D.     No Loss Causation.........................................................................13

III.   COUNT FIVE (COMMON-LAW FRAUD) IS SUBSTANTIVELY DEFICIENT.......................................................................14

CONCLUSION.....................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  2008 WL 850473 (S.D.N.Y. Mar. 27, 2008) ............................................................11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) (*ATSI I*)........................................................................9

*Axar Master Fund, Ltd. v. Bedford*,
  806 F. App'x 35 (2d Cir. 2020) ...............................................................................13

*Balintulo v. Ford Motor Co.*,
  796 F.3d 160 (2d Cir. 2015).................................................................................2, 3

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*,
  850 F. Supp. 1199 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995)..................15

*Berkey v. Third Ave. Ry. Co.*,
  155 N.E. 58 (N.Y. 1926) ............................................................................................2

*BKNS Mgmt LLC on behalf of Abbson LLC v. Messner Reeves, LLP*,
  2025 WL 2022590 (S.D.N.Y. July 18, 2025) ........................................................6, 7

*Cent. Laborers' Pension Fund v. Blankfein*,
  111 A.D.3d 40 (N.Y. App. Div. 2013) ......................................................................6

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)...................................................................................................9

*City of Aventura Police Officers' Ret. Fund v. Arison*,
  70 Misc. 3d 234 (N.Y. Sup. 2020)............................................................................6

*City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011)...................................................................................7, 8

*D'Alessio v. SEC*,
  380 F.3d 112 (2d Cir. 2004).....................................................................................10

*De Jesus v. Sears, Roebuck & Co., Inc.*,
  87 F.3d 65 (2d Cir. 1996)...........................................................................................3

*Defer LP v. Raymond James Fin., Inc.*,
654 F. Supp. 2d 204 (S.D.N.Y. 2009) ...................................................................4, 12

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................13

*Fezzani v. Bear, Stearns & Co. Inc.*,
777 F.3d 566 (2d Cir. 2015)............................................................................12

*First Nationwide Bank v. Gelt Funding Corp.*,
27 F.3d 763 (2d Cir. 1994)..............................................................................13

*Food Holdings Ltd. v. Bank of Am. Corp.*,
423 F. App'x 73 (2d Cir. 2011) .........................................................................5

*Freedman v. magicJack Vocaltec Ltd.*,
963 F.3d 1125 (11th Cir. 2020) .........................................................................6

*Gamma Traders I LLC v. Merrill Lynch Commodities, Inc.*,
41 F.4th 71 (2d Cir. 2022) ...............................................................................13

*Gurary v. Winehouse*,
190 F.3d 37 (2d Cir. 1999)...............................................................................10

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*,
585 F. Supp. 3d 405 (S.D.N.Y. 2022)...............................................................15

*Healthcare Fin. Grp., Inc. v. Bank Leumi USA*,
669 F. Supp. 2d 344 (S.D.N.Y. 2009)...............................................................13

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019)...............................................................10

*In re BP p.l.c. Derivative Litig.*,
507 F. Supp. 2d 302 (S.D.N.Y. 2007)................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
383 F. Supp. 2d 566 (S.D.N.Y. 2005)...............................................................14

*In re Initial Pub. Offering Sec. Litig.*,
399 F. Supp. 2d 261 (S.D.N.Y. 2005)...............................................................14

*In re Initial Public Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)...............................................................10

iii

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) ................................................................15

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005) (*Parmalat I*) ............................................8, 11

*In re Parmalat Sec. Litig.*,
    414 F. Supp. 2d 428 (S.D.N.Y. 2006) (*Parmalat II*) ....................................................8

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
    342 F. Supp. 2d 207 (S.D.N.Y. 2004).............................................................................3

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
    2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) .............................................................13

*In re WorldCom Sec. Litig.*,
    308 F. Supp. 2d 338 (S.D.N.Y. 2004)........................................................................2, 4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..................................................................................11, 12

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991).........................................................................................................6

*Mason-Mahon v. Flint*,
    166 A.D.3d 754 (N.Y. App. Div. 2018) ........................................................................6

*McAnaney v. Astoria Fin. Corp.*,
    665 F. Supp. 2d 132 (E.D.N.Y. 2009) ...........................................................................3

*P. Stolz Fam. P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)............................................................................................7

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010).......................................................................................12

*Remington Rand. Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
    68 F.3d 1478 (2d Cir. 1995).......................................................................................15

*Sanders v. Sanders*,
    2022 WL 16984681 (2d Cir. Nov. 17, 2022)................................................................5

*Stoner v. Walsh*,
    772 F. Supp. 790 (S.D.N.Y. 1991) ...............................................................................7

iv

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)................................................................................................12

*United States v. Bestfoods*,
    524 U.S. 51 (1998).............................................................................................2, 4

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
    933 F.2d 131 (2d Cir. 1991).....................................................................................3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998).....................................................................................4

*Zornberg v. NAPCO Sec. Techs. Inc.*,
    778 F. Supp. 3d 516 (E.D.N.Y. 2025) ...................................................................10

STATUTES

15 U.S.C. § 78u-4(c)......................................................................................................1, 14

Israel Companies Law 5759-1999
    § 194(b).....................................................................................................................6
    § 194(c).....................................................................................................................6
    § 196..........................................................................................................................6
    § 198(a)......................................................................................................................6

REGULATIONS

17 C.F.R. § 240.10b-5.............................................................................................8, 9, 10

77 Fed. Reg. 55519 (Sept. 10, 2012) ...........................................................................10

RULES

Fed. R. Civ. P. 11.............................................................................................................15

Fed. R. Civ. P. 15(a) .........................................................................................................5

Fed. R. Civ. P. 23.1....................................................................................................1, 4, 5

Fed. R. Civ. P. 23.1(b) ......................................................................................................4

OTHER AUTHORITIES

Mackintosh, *How Short Selling Makes Markets More Efficient* (Oct. 1, 2020),
    https://perma.cc/UFQ4-Q3XY...............................................................................10

**INTRODUCTION**

For nearly half a year, Plaintiff refused to amend its complaint—despite Defendant's willingness to stipulate for it to do so and prior counsel's acknowledgement that the pleading is "defective." Doc. 33 (Mot.) at 1, 5. Yet now, after forcing defendants to file motions to dismiss, Plaintiff concedes that its complaint contains an "oversight" and must be dismissed unless the Court grants further leave to amend. Doc. 50 (Opp.) at 3; *see id.* at 22, 26. Plaintiff's request for leave to amend as to Interactive Brokers, though, comes in a bare two-line assertion, on the last page of the brief, with no reason whatsoever for why leave should be granted. *Id.* at 26.

This Court should refuse that belated and conclusory request and should, instead, dismiss this complaint. And not just because the complaint concededly flunks Rule 23.1 and would flunk it even with the amendment. But also, because it sues a "holding company" that did not allegedly engage in the supposedly "improper" conduct (Am. Compl. ¶¶ 1, 23); because the federal claim is time-barred twice over; because the federal claim falls well short of pleading any of the elements for scheme liability; and because the common-law claim alleges neither a representation nor actual reliance. Although the opposition brief finds these arguments "inexplicabl[e]," poorly "research[ed]," and "hard to take seriously," Opp. 22, they are fully explained, well researched, and serious indeed. Swift dismissal, at least, should follow. *See also* 15 U.S.C. § 78u-4(c).

**ARGUMENT**

**I.    THE COMPLAINT IS PROCEDURALLY DEFICIENT FOR THREE REASONS.**

Interactive Brokers' motion to dismiss identified three procedural flaws with Plaintiff's complaint: (A) it sued the wrong Interactive Brokers entity, (B) it flunked Rule 23.1, and (C) it is untimely. Plaintiff calls these arguments "empty." Opp. 1. But Plaintiff concedes that its complaint flunks Rule 23.1 and barely makes any argument on the other two fatal flaws.

1

### A.    Plaintiff Insists On Suing The Wrong Interactive Brokers Entity.

Despite Plaintiff's former counsel withdrawing from this case because of this issue—because he could not ethically oppose a motion to dismiss on this ground, *see* Mot. 8–9—the opposition brief acts as though there is nothing to see here.  This issue, though, is dispositive.

Deeply ingrained principles of corporate law (not to mention an abundance of caselaw Plaintiff leaves unaddressed) provide that "stock ownership and control is not sufficient to make the one company liable for the other, its subsidiary." *Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 65 (N.Y. 1926) (Cardozo, J.); *see* Mot. 7–8 (collecting cases).  Yet ownership and control are the absolute most Plaintiff has here.  The complaint alleges even less than that—only that it sues "a Delaware holding company" of the registered broker-dealer that operates the trading platform. Am. Compl. ¶¶ 1, 23.  And the opposition brief adds only various SEC filings by Interactive Brokers Group, Inc., confirming that it's a "Delaware holding company" with the "primary asset" of "membership interests of IBG LLC, which, in turn, owns operating subsidiaries" such as Interactive Brokers LLC (the operator of the platform at issue).  That makes Defendant Interactive Brokers Group, Inc. no different from *any other parent company in America*—which, again, are treated as "legally distinct entities" and are not generally liable for the actions of their subsidiaries, even with "control[]." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015).

Plaintiff tries to overcome this "hornbook law," *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998), first by insisting that this argument is not "appropriate for determination at the motion to dismiss stage." Opp. 11.  But scores of cases resolving this legal issue at the motion-to-dismiss stage put the lie to that assertion.  *See, e.g.*, *Balintulo*, 796 F.3d at 168; *In re WorldCom Sec. Litig.*, 308 F. Supp. 2d 338, 344–45 (S.D.N.Y. 2004); *see also* Mot. 8 (collecting more cases).  Plaintiff does not even mention these cases, far less engage with them.  And the two cases Plaintiff does cite (Opp. 11–12) have absolutely nothing to do with this issue.

2

Plaintiff gestures toward an "exception" to this "general rule," trying to hold a "parent company" liable "for the acts and omissions of the subsidiary" by *piercing the veil*.  Opp. 12.  But as Plaintiff's own case acknowledges, that requires a showing that a company used the corporate veil to impose essentially a "fraud upon the law."  *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (quoting *Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 61 (N.Y. 1926) (Cardozo, J.)).  Nothing remotely close is alleged here; the complaint is indeed "devoid of *any* specific facts or circumstances supporting" veil piercing.  *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996).  Far from the "extraordinary circumstances" necessary, Plaintiff points only to the most ordinary of circumstances:  Interactive Brokers' SEC filings showing some ownership and "general corporate supervision."  *Balintulo*, 796 F.3d at 168.  Nothing in these SEC filings rises close to "excessive[] dominat[ion]," *id.*; they are, instead, exactly the same "factors" that courts have routinely held "are insufficient to establish the type of day-to-day control necessary to disregard corporate separateness."  *E.g.*, *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004); *see also McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 144–45 (E.D.N.Y. 2009) (collecting cases on these "commonplace" parts of the "generally-accepted corporate form").

Plaintiff thus wisely moves on to argue that Interactive Brokers "misunderstands XDOOD's theory."  Opp. 12.  The real theory, Plaintiff says in a single line in the opposition brief (in all bold and italics), is that "the policies, practices, and procedures emanate from [Interactive Brokers Group, Inc.]," and "the subsidiaries are left to carry out these policies, practices, and procedures."  *Id.*  Plaintiff does not elaborate beyond this one line; it cites neither any cases nor any facts in the complaint for this theory.  To the extent Plaintiff means to suggest some sort of agency theory here—whereby Nonparty Interactive Brokers LLC was the supposed agent of

holding-company Interactive Brokers Group, Inc.—that would fail:  No such theory is pleaded, no such facts are alleged, and no such theory would be viable anyway.

"A party must plead the theories of liability it wishes to pursue," and this complaint "does not state an agency theory." *WorldCom*, 308 F. Supp. 2d at 345 (citing *Peterson v. Ins. Co. of N. Am.*, 40 F.3d 26, 32 n.3 (2d Cir. 1994)).  Nowhere, for example, does the complaint allege that Interactive Brokers Group, Inc. "designed and implemented the policies and practices" at issue. *Contra* Opp. 3; *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.").  If anything, the opposite is alleged:  The complaint expressly asserts that the "manipulation was perpetrated by . . . [non-party] Interactive Brokers LLC."  Am. Compl. ¶ 1.  The most possibly alleged (and found in the SEC filings) is that Interactive Brokers Group, Inc. has some ownership stake in, and thus measure of control over, Nonparty Interactive Brokers LLC—but "the mere fact of a parent's control over . . . subsidiaries d[oes] not establish the existence of an agency relationship." *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 n.102 (S.D.N.Y. 2009) (Kaplan, J.) (citing *Comm'r v. Bollinger*, 485 U.S. 340, 347 (1988)).  And even if the complaint had alleged more—for example, that Interactive Brokers Group, Inc. had developed the relevant policies—that would not be enough for liability:  The articulation of "general policies and procedures" stems from "the normal relationship between parent and subsidiary" and is thus not enough. *Bestfoods*, 524 U.S. at 71–72.  Plaintiff sued the wrong party, and its complaint should be dismissed.

**B.  Plaintiff Concedes That The Complaint Flunks The Pleading Requirements For Derivative Actions Under Rule 23.1.**

Plaintiff agrees with the next set of procedural flaws:  its complaint (1) is not verified and (2) does not "state with particularity" the "effort by the plaintiff to obtain the desired action from" Eltek.  Fed. R. Civ. P. 23.1(b).  Everyone agrees, therefore, that the operative complaint fails.

That is why Plaintiff proposes a "Second Amended [Complaint]" (Opp. 22), which contains a verification (Doc. 49-1 at 47–48) and a host of miscellaneous allegations on XDOOD's interaction with Eltek (Doc. 47-8 (Redline) at 9–10, 48–49). But Plaintiff makes no argument for leave to amend. The entirety of what it says on that issue is on the last page of its opposition (at 26): "XDOOD seeks leave to amend its Complaint under Fed. R. Civ. P. 15(a). The Proposed Second Amended Complaint is attached for this Court's consideration. See Exhibit 1, attached." No argument. No case citations. No reasoning. Nothing. When, as here, the request to amend appears "on the final page of [the] brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted," leave to amend should be denied. *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011); *see also, e.g.*, *Sanders v. Sanders*, 2022 WL 16984681, at *3 (2d Cir. Nov. 17, 2022) ("Given the conclusory nature of [Plaintiff's] request, we cannot say that the district court erred in refusing to grant Scott leave to amend the complaint."). And that is especially so when the plaintiff already had ample opportunity to amend but made the conscious choice to stand on the operative complaint. *See* Mot. 5–6. After forcing Interactive Brokers to expend time and money on "unnecessary motion practice," *see* Doc. 16-1 at 2—and absorbing scarce judicial resources in the process—it would be highly prejudicial to permit Plaintiff to now attempt amendments it should have tried months ago. Plaintiff should not be rewarded with a third bite at the apple.

The amendment would also be futile, and not just because of all the other problems with this complaint. It also still would fail under Rule 23.1. Plaintiff insists otherwise by claiming that, even though it is suing on behalf of an Israeli company, the demand requirement is "procedural," not "substantive," meaning Israeli law does not apply. Opp. 25. But Plaintiff is mistaken. "The function of the demand doctrine" in derivative cases "clearly is a matter of 'substance,' not

5

'procedure.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–97 (1991). "[T]he rights of a shareholder in a foreign company (including the right to sue derivatively)" are therefore "determined by the law of the place where the company is incorporated." *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007). "[B]ecause [XDOOD] is incorporated under the laws of Israel, Israeli law controls our analysis here." *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1136 (11th Cir. 2020) (citation modified).[1]

Even with the added allegations, Plaintiff does not satisfy Israeli law—or New York law, for that matter. As for Israeli law, the proposed amendment does not allege, among other things, (1) that XDOOD addressed "the chairman of the board of directors . . . in writing"; (2) that XDOOD "demand[ed]" that Eltek "exhaust its rights by instituting an action"; (3) that Eltek "passed [a] resolution" on any such demand, "including the names of those who participated in passing the resolution"; or (4) that any court was "convinced that the claim, and the conduct thereof, are *prima facie* in the best interests of the company and that the plaintiff is not acting with lack of good faith." Israel Companies Law 5759-1999, §§ 194(b), (c), 196, 198(a). Indeed, even under New York law, Plaintiff's added allegations do not suffice. They do not plead that Plaintiff "inform[ed] management 'with particularity' of the complained of acts, the potential defendants, and the specific remedial action sought" and "fairly and adequately apprise[d] the directors of the potential cause of action" for their "considered opinion." *BKNS Mgmt LLC on behalf of Abbson*

---

[1] Plaintiff's authority is not to the contrary. It involved a provision within the UK Companies Act that, "by its own terms," expressly limited its application "only to derivative claims brought in England and Wales, or Northern Ireland," which is not present under the Israeli Companies Law. *See Mason-Mahon v. Flint*, 166 A.D.3d 754, 756 (N.Y. App. Div. 2018). New York law generally looks to the place of incorporation. *See, e.g.*, *Cent. Laborers' Pension Fund v. Blankfein*, 111 A.D.3d 40, 46 n.8 (N.Y. App. Div. 2013); *see also City of Aventura Police Officers' Ret. Fund v. Arison*, 70 Misc. 3d 234, 244–50 (N.Y. Sup. 2020) (collecting cases and distinguishing Plaintiff's *Mason-Mahon* case).

*LLC v. Messner Reeves, LLP*, 2025 WL 2022590, at \*3 (S.D.N.Y. July 18, 2025); *see, e.g.*, *Stoner v. Walsh*, 772 F. Supp. 790, 797 (S.D.N.Y. 1991).  This derivative case thus may not proceed.

### C.    Plaintiff's Federal Claim Is Untimely Twice Over.

Plaintiff finds it "hard to take this argument seriously," Opp. 22, but Plaintiff should have taken it far more seriously than it does.  Interactive Brokers made two timeliness arguments—one on the five-year statute of repose and another on the two-year statute of limitations.  *See* Mot. 12–14 ("This federal claim is time-barred by both statutes.").  Plaintiff, though, makes no argument on the statute of repose.  Plaintiff instead focuses on its assertion that "XDOOD was still gathering information" in 2025, Opp. 22, but the statute of repose is not at all concerned with the plaintiff's investigation; it can "extinguish[] a cause of action before it even accrues."  *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102–03 (2d Cir. 2004).  All that matters for the statute of repose is when the defendant's supposed violation occurred.  And here, Plaintiff agrees that it "alleges nothing about" Interactive Brokers' supposedly "Deceptive Business Model" that changed after October 15, 2020—meaning that if "that really were a violation, then it would have been a violation before October 2020."  Mot. 12.  Because more than five years have passed from Interactive Brokers' alleged manipulative act—*i.e.*, implementing its supposed "Deceptive Business Model," Am. Compl. ¶ 157—Section 10(b)'s statute of repose bars Plaintiff's claim, regardless whether Plaintiff knew of its claim.  *See* Mot. 12–13.

Plaintiff gets the statute of limitations wrong anyway.  Plaintiff emphasizes that "XDOOD's knowledge about its claim was not complete," and that "XDOOD was still gathering information."  Opp. 22.  But "XDOOD's knowledge" is not the standard.  Rather, the two-year statute of limitations begins to run when "a *reasonably diligent* plaintiff would have discovered the facts constituting the violation," "irrespective of whether the *actual* plaintiff" discovered the facts constituting its claim.  *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d

7

169, 174 (2d Cir. 2011) (citing *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010)) (emphasis added). And here, a reasonably diligent plaintiff making a claim about Interactive Brokers' supposedly fraudulent business practices "would have uncovered the facts constituting a violation" long ago. *Id.* By 2021, that diligent plaintiff would have seen the supposedly "suspicious Eltek stock trading events," would have sued in New York about them, would have received even more information "detail[ing] the trading activity," and would have been able to use publicly available data to discover the connection between Eltek's trading activity and the related broker-dealer the very same day that the trading activity takes place. Am. Compl. ¶¶ 63, 76, 111, 138–40. Plaintiff disputes none of this—which is all it takes for a statute-of-limitations dismissal.

## II.    COUNT TWO (RULE 10B-5(A) AND (C)) IS SUBSTANTIVELY DEFICIENT.

Nor is there any viable claim to be had. The federal claim, to start, fails across the board.

### A.    No Deceptive or Manipulative Act.

Plaintiff falls well short of demonstrating with particularity that Interactive Brokers Group, Inc.'s "entire business model" (Am. Compl. ¶ 157) is "by nature deceptive," *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005) (*Parmalat I*), or "deceptive in itself," *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 434 (S.D.N.Y. 2006) (*Parmalat II*). Indeed, the complaint does not even allege that the named defendant—Interactive Brokers Group, Inc.—did *anything*. Its attention is trained instead on Nonparty "Interactive Brokers LLC." Am. Compl. ¶ 1. So when the opposition says (at 10) that the allegations "describe [Interactive Brokers Group, Inc.]'s own conduct," even that is not true. And even if it were true, nothing about that alleged conduct—namely, (1) supposedly defaulting customers to objecting-beneficial-owner status; (2) maintaining a lawful but allegedly "permissive interpretation" of the Market Access Rule; and (3) providing "short shares" and offering low "borrow[ing] rates," *e.g.*, Am. Compl. ¶ 8—is by nature deceptive. *At most*, all this is (to quote Plaintiff itself) is adding "manipulation risks to its

platform" (Opp. 10)—which would be a failed attempt at an overbroad aiding-and-abetting claim that does not even exist under this statute or Rule 10b-5. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

Plaintiff responds first by trying to "relax[]" the pleading standard, suggesting that Interactive Brokers is "confus[ed]" and that the PSLRA and Rule 9(b) do not apply to market-manipulation claims. Opp. 6–8. But "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)" and the PSLRA. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (*ATSI I*). Plaintiff offers nothing or next to nothing on "the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants," including "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Id.* at 102 (citation omitted). Even after three plaintiff's attorneys, three complaints/proposed complaints, a hearing, and an opposition brief, it is difficult to say what Plaintiff thinks the "manipulative acts" by Interactive Brokers *were*.

Plaintiff next highlights a handful of cases that, Plaintiff says, have "recognized similar acts as manipulative." Opp. 10. But none of these cases is remotely similar. Noticeably absent from Plaintiff's list is the only "manipulation" alleged here: short selling. Because "short selling—even in high volumes—is not, by itself, manipulative," none of these cases compares. *ATSI I*, 493 F.3d at 101. Take, for example, Plaintiff's lead case—*Bats Global*—which Plaintiff holds out as controlling this case. Opp. 1. It is nothing like this case. In *Bats Global*, the defendant-exchanges (not broker-dealers like Interactive Brokers) were alleged to have conspired with high-frequency trading firms to allow those firms to "front-run" trades of other market participants. 878 F.3d 36, 49 (2d Cir. 2017). Front-running, though, unlike short selling, is

unlawful.  77 Fed. Reg. 55519, 55520 (Sept. 10, 2012); *see also D'Alessio v. SEC*, 380 F.3d 112, 114 (2d Cir. 2004).  Short selling, by contrast, is not only lawful, but is a necessary feature of modern securities markets.  *See, e.g.*, Mackintosh, *How Short Selling Makes Markets More Efficient* (Oct. 1, 2020), https://perma.cc/UFQ4-Q3XY (chief economist of NASDAQ explaining why "[b]eing able to short sell a stock is important for market efficiency").  Nor, also unlike *Bats Global*, does Plaintiff allege that Interactive Brokers entered into any agreements with the John Does.  *Bats Global* thus bears no relation to the alleged "business model" that Plaintiff criticizes.  And the same goes for the rest of Plaintiff's cited cases.  To the extent these are real cases with real quotes, *but see* Opp. 9 (listing an apparently hallucinated quote from *Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999), which dismissed the complaint anyway), they do not help Plaintiff.[2]

Plaintiff lastly says that Interactive Brokers has a "blinkered view of § 10b" because its subsidiary's platform, even while "legally sound," had "the *effect* of causing manipulative trading."  Opp. 11 (citing *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003)).  But it is hard to imagine any aiding-and-abetting claim that would not be transformed into a primary-liability theory on this reasoning—which may be why Plaintiff's own cited case turns on whether "SEC regulations plainly prohibit the conduct as alleged."  241 F. Supp. 2d at 389; *see also id.* at 361 (manipulative acts that "are nonetheless lawful" "do not violate either Rule 10b–5(a) or (c)"); *id.* at 387 ("not all conduct that harms investors can be called 'manipulative'").

---

[2] *See, e.g.*, *Parmalat I*, 376 F. Supp. at 472 (knowingly securitizing worthless invoices); *Zornberg v. NAPCO Sec. Techs. Inc.*, 778 F. Supp. 3d 516 (E.D.N.Y. 2025) (knowingly misstating financial information in public offering supported claim for material misrepresentation under Rule 10b-5(b)—not under Rule 10b-5(a) or 10b-5(c)); *Initial Public Offering*, 241 F. Supp. 2d at 389 (finding manipulative conduct based on violation of express SEC regulations); *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 441 (S.D.N.Y. 2019) (same "front-running" activity as in *Bats Global*).

Plaintiff's theory, at bottom, is that Interactive Brokers "facilitated" the John Does' trading activity, Opp. 3, 4, 9, 10, 16—but that is nothing more than being at most an alleged "aider and abettor" (and it's not even that). *Parmalat I*, 376 F. Supp. 2d at 493. Nothing about Interactive Brokers' platform or alleged policies is *inherently* deceptive. Millions of users make millions of legitimate trades every day using that platform. That some users at some point may have made allegedly illegal trades does not make Interactive Brokers primarily liable. *See* Mot. 15–18.

### B.     No Scienter.

Although Plaintiff again insists that pleading scienter is "relaxed," it ends up conceding that it must plead "with particularity" a "strong inference" of scienter. Opp. 17. And based on the theory Plaintiff pursues—scienter premised on supposed "conscious behavior or recklessness"—Plaintiff must plead "highly unreasonable" conduct "represent[ing] an *extreme* departure from the standards of ordinary care." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (emphasis added).

It has not come close to doing so. *See* Mot. 18–19. And it barely tries to argue otherwise. When it finally gets to explaining Interactive Brokers' supposedly extremely and highly unreasonable conduct, it devotes only a single sentence to the argument. Opp. 19. All it says is that Nonparty Interactive Brokers "ignored the risks related to trading on Eltek shares." *Id.* And it cites allegations dealing with Morgan Stanley and the John Does. *Id.* The only factual allegations about Nonparty Interactive Brokers LLC are that it "was a lender of shares for shorting purposes," that it received "financial benefits," and that it "supplied short positions despite warning signs." Am. Compl. ¶¶ 125–26. All of that is quite ordinary; nothing about it amounts to the "extreme departure from the standards of ordinary care" that Plaintiff concedes it must allege. Opp. 18. And Plaintiff's "must have known" allegation, based on "the broker-defendants[] [being] the literal gatekeepers of every share traded" (Am. Compl. ¶ 127), is "simply ridiculous." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 2008 WL 850473, at *3 (S.D.N.Y. Mar. 27, 2008) (Kaplan,

11

J.).  Thus, even assuming there could be "imputation of a subsidiary's knowledge to its parent," *but see Defer*, 654 F. Supp. 2d at 218 (Kaplan, J.), that subsidiary's scienter was not close to the necessary "intent to deceive, manipulate or defraud."  *Kalnit*, 264 F.3d at 138.  And Plaintiff concedes by silence that the complaint identifies no human being at Nonparty Interactive Brokers LLC or at Defendant Interactive Brokers Group, Inc. who had scienter that could be imputed to either corporate entity.  Mot. 18.  This element is therefore not adequately pleaded.

### C.    No Reliance.

On reliance, Plaintiff claims that Interactive Brokers "did not research the relevant cases" or, worse, "researched the relevant cases but declined to bring them to this Court's attention." Opp. 17.  But the finger points the wrong way.  The relevant cases (omitted by Plaintiff's brief) hold that "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008).  And they hold, contrary to Plaintiff's assertion (at 17), that reliance is *not* "presumed" in every alleged scheme-liability or manipulation case.  *See, e.g.*, *id.* at 159–62; *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 158–60 (2d Cir. 2010).  Instead, even in a manipulation case—as Plaintiff's lone case itself holds—the plaintiff must allege and establish reliance.  *Fezzani v. Bear, Stearns & Co. Inc.*, 777 F.3d 566, 573–74 (2d Cir. 2015).  This is why Plaintiff's lone case *affirmed the dismissal of a manipulation complaint for lack of reliance. Id.* Just as here, the plaintiff there had "not specifically pleaded a causal link between any single stock purchase or sale and a corresponding [action]" by the particular defendant at issue.  *Id.* at 572. And there was no presumption of reliance.  *Id.*  Dismissal was, and is, proper.  *See* Mot. 20–21.

Plaintiffs can, of course, "establish a rebuttable presumption of reliance based on the effect of misrepresentations on the market price of securities," *Fezzani*, 777 F.3d at 572 —the so-called "fraud on the market" theory.  But Plaintiff has expressly disclaimed that theory here.  Opp. 17.

12

And for good reason:  The complaint does not allege it.  *See* Mot. 21 (collecting cases).  Nor does any other presumption of reliance apply.  *Id.*  Reliance is thus wholly missing.

### D.    No Loss Causation.

Plaintiff finds it "inexplicabl[e]" that a complaint might be dismissed for failure to plead loss causation.  Opp. 16.  But numerous courts, from the Supreme Court to the Second Circuit to this Court, have explained exactly how that can be so:  when, as here, the complaint "fail[s] to allege that the purported [deceptive conduct] caused the loss complained of."  *Healthcare Fin. Grp., Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 349–50 (S.D.N.Y. 2009); *see also, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 348 (2005) ("[W]e find the plaintiffs' complaint legally insufficient" on loss causation); *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 37 (2d Cir. 2020) ("[W]e affirm the district court's dismissal of plaintiffs' complaint on the ground that plaintiffs failed to plausibly allege loss causation."); *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, 2019 WL 1368787, at *15 (S.D.N.Y. Mar. 26, 2019) (Kaplan, J.) ("[P]laintiffs have failed adequately to plead loss causation.").  Plaintiff likewise fails to make any non-conclusory allegations that Interactive Brokers' "entire business model" caused Eltek's supposed "losses."  Am. Compl. ¶ 157.  The most this business model "caused" was trading—trading that could have occurred (and did occur) "on *scores* of other platforms and using *thousands* of other broker-dealers."  Mot. 22; *see, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).

Plaintiff suggests that *Gamma Traders I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022), "overruled" all these cases and created a new standard for pleading causation in "the manipulation context."  Opp. 16.  But it did no such thing.  In fact, *Gamma Traders* supports dismissal—which is why the motion cited it (at 23).  In *Gamma Traders*, the Court found that even pleading same-day, post-spoof trades did not justify an inference of injury; "this is precisely the sort of 'merely conclusory statement' that we need not credit."  41 F.4th at 80–81.  Plaintiff's

13

similarly conclusory assertions and failure to proximately tie Interactive Brokers' alleged conduct (allowing short selling) to Eltek's supposed damages similarly warrants dismissal.

Plaintiff then turns back the clock, insisting that "all" it "must plead" is that the "securities prices were artificially inflated." Opp. 15 (bold and italics omitted). But not even Plaintiff's cited case says that. Instead, it says that plaintiffs must at least plead that *plus* "sufficient identification of the cause." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 578 (S.D.N.Y. 2005) (dismissing for failure to plead loss causation). On reconsideration, moreover, the court there emphasized that "[i]t is now clear . . . that plaintiffs cannot satisfactorily allege loss causation simply by alleging that they purchased securities at artificially inflated prices." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 265 (S.D.N.Y. 2005). The Supreme Court over 20 years ago, after all, rejected Plaintiff's proposed standard "for loss causation, which require[s] only that a plaintiff allege that she had bought a security at an artificially inflated price." *Id.* (citing *Dura Pharms.*, 544 U.S. at 346). Plaintiff has no answer to this. Its federal claim should be dismissed with prejudice, at a minimum. *See also* 15 U.S.C. § 78u-4(c).

## III.    COUNT FIVE (COMMON-LAW FRAUD) IS SUBSTANTIVELY DEFICIENT.

Plaintiff's state-law claim fails both because Interactive Brokers made no representations or omissions to Plaintiff or Eltek—it's not alleged to have engaged with them at all—and because Plaintiff and Eltek did not even allegedly actually rely on Interactive Brokers. *See* Mot. 23–25.

Plaintiff barely addresses this claim, and does not address the legal authority supporting its dismissal. After some throat clearing on the legal standard (Opp. 20–21), Plaintiff argues first that because "XDOOD states a claim under § 10b," Plaintiff's "common law fraud claim also survives." Opp. 21. The premise is wrong; the federal claim fails. But even if the federal claim survived, Plaintiff's conclusion would not follow. New York fraud has different elements, *see* Mot. 24—most notably here that (1) "trading activity cannot constitute a misrepresentation or

14

omission for purposes of common law fraud under New York law," *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 424 (S.D.N.Y. 2022); and (2) New York law "requires that plaintiffs allege actual reliance for misrepresentations and omissions" rather than relying on any presumption of reliance, *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *4 & n.44 (S.D.N.Y. Oct. 22, 2013); *see also Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 850 F. Supp. 1199, 1221 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995). Plaintiff ignores the first difference, and does not dispute that it has failed to allege actual reliance. It has no argument against dismissal.

The most Plaintiff musters is that its fraud claim is based on "concealment and omission." Opp. 21. But exactly what Interactive Brokers supposedly concealed or omitted is left unsaid. And in any event, Plaintiff's own case states that "a concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose," typically by way of "a fiduciary or other relationship signifying a heightened level of trust." *Remington Rand. Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). Plaintiff does not so much as mention any duty to disclose, and nothing of the sort existed. This claim thus also fails.

## CONCLUSION

For these reasons, this Court should dismiss the Amended Complaint with prejudice and should conduct the PSLRA-mandated Rule 11 review at the end of the case with an eye toward this "unnecessary motion practice," to quote Plaintiff's former counsel. Doc. 16-2 at 4.

15

Dated:  April 24, 2026

Respectfully submitted,

/s/ James R. Saywell

Geoffrey J. Ritts (*pro hac vice* forthcoming)

Henry Klehm III
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Tel: (212) 326-3939
Facsimile: (212) 755-7306
hklehm@jonesday.com

James R. Saywell (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Fax: (216) 579-0212
jsaywell@jonesday.com

*Counsel for Defendant*
*Interactive Brokers Group, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ James R. Saywell
James R. Saywell

*Counsel for Defendant*
*Interactive Brokers Group, Inc.*

17