**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XDOOD LLC, derivatively on behalf of ELTEK, LTD, | Civil Action: 1:25-cv-08536 (LAK) |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| v. | |
| INTERACTIVE BROKERS GROUP, INC., MORGAN STANLEY SMITH BARNEY LLC, and JOHN DOES 1-10, | |
| Defendants. | |

**DEFENDANT MORGAN STANLEY SMITH BARNEY LLC'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS THE AMENDED COMPLAINT AND OPPOSITION TO
PLAINTIFF'S REQUEST FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.      PLAINTIFF CONCEDES THAT IT DID NOT ADEQUATELY PLEAD A BASIS FOR BRINGING A DERIVATIVE ACTION.......................................... 2

    II.     PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(B) OF THE EXCHANGE ACT OR RULE 10B-5(A) OR (C) ....................................... 2

          A.      Plaintiff Has Failed to Plead Scienter .......................................................... 3

          B.      Plaintiff Has Failed To Allege That Morgan Stanley Engaged In A Manipulative Act ......................................................................................... 6

          C.      Plaintiff Has Failed to Allege a Cognizable Loss or Loss Causation ....... 7

          D.      Plaintiff Has Failed To Plead Reliance .................................................. 10

    III.    Plaintiff's Common Law Fraud Claim Fails............................................................ 11

    IV.    Plaintiff's Section 10(b) Claim is Time-Barred..................................................... 11

    V.     The Proposed SAC Is Fatally Deficient Too; Leave to Amend Should be Denied........................................................................................................ 12

CONCLUSION........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Affiliated Ute Citizens v. United States*,
  406 U.S. 128 (1972) ................................................................................................ 10

*Aimis Art Corp. v. N. Tr. Secs., Inc.*,
  641 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................................... 9

*Alpha Cap. Anstalt v. Oxysure Sys., Inc.*,
  252 F. Supp. 3d 332 (S.D.N.Y. 2017) ...................................................................... 9

*Ambase Corp. v. 111 W. 57th Sponsor LLC*,
  221 A.D.3d 521 (2023)............................................................................................ 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .......................................................................... 2, 6, 10

*Campbell v. Weihe Yu*,
  25 F. Supp. 3d 472 (S.D.N.Y. 2014) ...................................................................... 2

*Cartwright v. D'Alleva*,
  No. 17 Civ. 5953 (AT) (KHP), 2018 WL 9343524 (S.D.N.Y. Aug. 27, 2018) ...................... 11

*Chunn v. Amtrak*,
  916 F.3d 204 (2d Cir. 2019) ................................................................................. 14

*Citibank, N.A. v. K-H Corp.*,
  968 F.2d 1489 (2d Cir. 1992) ................................................................................. 8

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...................................................................... 7

*Colliton v. Bunt*,
  709 F. App'x 82 (2d Cir. 2018).............................................................................. 7

*CompuDyne Corp. v. Shane*,
  453 F. Supp. 2d 807 (S.D.N.Y. 2006) ...................................................................... 9

*Davis v. Scottish Re Grp. Ltd.*,
  30 N.Y.3d 247 (2017)............................................................................................. 14

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  390 F. Supp. 3d 432 (S.D.N.Y. 2019) ...................................................................... 9

*In re Citigroup Auction Rate Sec. Litig.*,
  700 F. Supp 2d 294 (S.D.N.Y. 2009) ........................................................................ 7

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014) ......................................................................... 8

*In re Time Warner Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993) .......................................................................................... 6

*Joffee v. Lehman Bros.*,
  410 F. Supp. 2d 187 (S.D.N.Y. 2006) ....................................................................... 8

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) .................................................................................. 7, 8

*Mason-Mahon v. Flint*,
  166 A.D.3d 754 (2d Dep't 2018)............................................................................. 13

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27, 131 S. Ct. 1309, (2011) ....................................................................... 6

*May v. Barclays PLC*,
  No. 23-CV-2583 (LJL), 2025 WL 887300 (S.D.N.Y. Mar. 21, 2025)....................... 4

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
  75 F.3d 801 (2d Cir. 1996) ........................................................................................ 5

*Sec. & Exch. Comm'n v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ...................................................................................... 11

*Seibert v. Sperry Rand Corp.*,
  586 F.2d 949 (2d Cir. 1978) ...................................................................................... 7

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010) ...................................................................................... 4

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ...................................................................................... 10

*Wilson v. Merrill Lynch & Co.*,
  671 F.3d 120 (2d Cir. 2011) ...................................................................................... 6

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) .................................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................ 3

28 U.S.C. § 1658(b) ....................................................................................................... 13

## Rules

Fed. R. Civ. P. 7(b)(1)................................................................................................... 14

Fed. R. Civ. P. 9(b) .................................................................................................... 1, 3

Fed. R. Civ. P. 15(a) ...................................................................................................... 14

Fed. R. Civ. P. 23.1 .................................................................................................... 1, 2

Morgan Stanley Smith Barney LLC ("Morgan Stanley") respectfully submits this reply memorandum of law in support of its motion to dismiss Plaintiff XDOOD LLC's ("Plaintiff" or "XDOOD") Amended Complaint against Morgan Stanley and in opposition to Plaintiff's request for leave to file a second amended complaint.[1]

## PRELIMINARY STATEMENT

The Opposition, much like the Amended Complaint, is an amalgam of self-defeating concessions and confusing and contradictory statements that sink Plaintiff's claims. As an initial matter, Plaintiff's Opposition concedes that the Amended Complaint fails to comply with Fed. R. Civ. P. 23.1 by, among other things, inadequately pleading a demand or demand futility. This alone is grounds to dismiss the Amended Complaint.

Moreover, the Opposition does nothing to rebut Morgan Stanley's showing that the pleading should be dismissed for failure to state a claim under the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Indeed, the Opposition concedes that Morgan Stanley's motive in implementing the "P-Trade Policy" was to "protect consumers"[2] and "to address"[3] the John Doe Defendants' apparent attempts to manipulate Eltek, Ltd. ("Eltek") shares—which clearly vitiates any inference of scienter and belies the existence of a manipulative act. Moreover, Plaintiff's

---

[1] The undersigned counsel recognize the page limits for reply memoranda (ten pages) and oppositions to motions (thirty-five pages) in Your Honor's Individual Practices. As this is a combined reply in support of the motion to dismiss and an opposition to Plaintiff's request for leave to amend, we submit this fourteen-page brief as a reasonable response to Plaintiff's submissions. Capitalized terms have the meaning ascribed in Morgan Stanley's Opening Brief ("MS. Br.") (ECF No. 38). Plaintiffs' Memorandum of Law in Opposition to Co-Defendant Morgan Stanley Smith Barney LLC's Motion to Dismiss (ECF No. 47-13) is referred to herein as "Opposition" or "Opp."

[2] Opp. at 7.

[3] Opp. at 16.

Opposition has no real answer to the points made in Morgan Stanley's Opening Brief regarding loss causation.  Instead, Plaintiff basically cuts-and-pastes large portions of its deficient pleadings into the Opposition and asks the Court to find something therein that supports the damages and causation elements.  There is nothing to be found.  Additionally, Plaintiff did not plead reliance and the Opposition's attempt to get around pleading this element by asserting that it is "presumed" is contrary to Second Circuit precedent.

On top of its pleading deficiencies, Plaintiff's claims are time-barred.  All of the information that purportedly forms the basis of Plaintiff's claims against Morgan Stanley regarding the P-Trade Policy was known to Plaintiff by February 2021, which is well beyond the two-year statute of limitations period.

Lastly, Plaintiff's attempt to cure the Amended Complaint's deficiencies with its proposed Second Amended Complaint ("Proposed SAC") should be rejected.  The Proposed SAC simply does not remedy the fatally infirm allegations.

## **ARGUMENT**

**I.    PLAINTIFF CONCEDES THAT IT DID NOT ADEQUATELY PLEAD A BASIS FOR BRINGING A DERIVATIVE ACTION**

Rule 23.1 requires a complaint in a derivative action "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors [i.e. a pre-suit demand upon the corporation] . . ." Fed. R. Civ. P. 23.1(b)(3).  Plaintiff concedes that it did not meet the requirements of this rule, including the requirement to adequately plead a demand or demand futility.  (Opp. at 22 acknowledging "[f]ailure of XDOOD to adequately allege in the AC that demand was made on Eltek to commence this action . . .").  For this reason alone, the Amended Complaint should be dismissed.  *Campbell v. Weihe Yu*, 25 F. Supp. 3d 472, 485 (S.D.N.Y. 2014) (Kaplan, J.) (dismissing complaint where plaintiff failed to comply with Rule 23.1).

2

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT OR RULE 10b-5(a) or (c)

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). A complaint must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the elevated scienter standards of the PSLRA, which requires a party to "state with particularity facts giving rise to a strong inference that the Defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

### A.    Plaintiff Has Failed to Plead Scienter

As set forth in Morgan Stanley's Opening Brief, Plaintiff has not pled any inference of scienter. (MS Br. 11-14.) Rather, the Amended Complaint concedes that Morgan Stanley's motive in implementing the P-Trade Policy was "[t]o address detected manipulation" in the market after NASDAQ generally halted trading of Eltek shares on October 16, 2020. (AC ¶ 4.) The Opposition makes a similar concession as to the reason for the P-Trade Policy:

> The AC alleges that MSSB's own Fraud Operations Unit detected the manipulation of Eltek stock on October 16, 2020, which was the reason MSSB put its P-Trade policy in place. (Opp. at 7.)

Morgan Stanley's motive to address fraud is, of course, not a "motive . . . to commit fraud" or "conscious misbehavior or recklessness," as is necessary to plead scienter. *ATSI Commc'ns, Inc.*, 493 F.3d at 99.

Plaintiff's attempt to argue that there is a strong inference of scienter, despite its admissions otherwise, is generally incomprehensible. Plaintiff cuts and pastes large portions of its pleadings into the Opposition and seemingly asks the Court to find some support for scienter within them. (Opp. at 3-4.) The allegations cited in the Opposition fail, however, because they are muddled, conclusory, and are in no way particularized. For example, the Opposition

3

reiterates its conclusory assertion that Morgan Stanley was acting to address some unexplained "KYC" issues, but does not—because it cannot—point to a single particularized factual allegation explaining what these supposed KYC failures were, when they occurred, or how a temporary requirement that Eltek trades be made by phone would further this purportedly improper motive.  Nor does the Opposition address why, if the motive for the P-Trade Policy was an internal Morgan Stanley KYC issue, "[o]ther major brokerage firms, including Merryl Lynch of Bank of America, and Charles Schwab, instituted similar trading restrictions due to the unusual trading of Eltek stock," as Plaintiff also alleges.  (AC ¶ 6.)

Moreover, even if Morgan Stanley had taken steps to remove customers who engaged in improper trading, that does not create an inference of fraud on the part of Morgan Stanley. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (quotation omitted) (remedial efforts are "a prudent course of action that weakens rather than strengthens an inference of scienter"); *accord May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2025 WL 887300, at *27 (S.D.N.Y. Mar. 21, 2025) (dismissing securities fraud claim and holding that the defendant bank's halting of new offers and sales of certain securities when issues arose weakened any inference of scienter), *reconsideration denied*, 23-CV-2583 (LJL), 2025 WL 1569633 (S.D.N.Y. June 3, 2025)).  The Opposition does not address this precedent at all.

The Opposition also confusingly focuses on references to "legitimate customers" and "legitimate traders" in Morgan Stanley's brief and argues that "[t]he deliberate use of that qualifier necessarily distinguishes between customers MSSB viewed as legitimate and others it did not . . . MSSB chose that language; Plaintiff did not supply it."  (Opp. at 5.)  Plaintiff then illogically concludes that the use of "legitimate" was somehow a "stunning admission [that] supports the strong inference of scienter."  (*Id*.)  This is nonsense.  It was Plaintiff that made the

4

conclusory allegation that the P-Trade Policy "suppressed ***legitimate*** purchase access." (AC ¶ 47.) (Emphasis added.) Morgan Stanley's brief simply pointed out that "Plaintiff does not make particularized factual allegations that in any way support its conclusory claim that the P-Trade Policy prevented any legitimate trading of Eltek Shares, which could still be done by phone at Morgan Stanley or through thousands of other brokers.  Nor does Plaintiff . . . even attempt to estimate any of the supposed legitimate stock purchases that did not go through because the customer had to pick up a phone to trade.  And while Plaintiff makes the conclusory allegation that the P-Trade Policy negatively impacted demand for Eltek stock (AC ¶4), Plaintiff includes a chart later in its pleading that shows that the price of Eltek shares rose significantly over the period of the P-Trade Policy . . .)" (MS Br. at 14-15.)  Far from being a "stunning admission," these points belie any inference of fraud and are not meaningfully addressed in the Opposition.[4]

Furthermore, Plaintiff, in the Opposition's scienter section, speciously argues that an "omission of material fact" harmed Eltek investors "who might have sold their shares in a downwardly biased market, completing the trade without fair pricing-without knowing that to purchase shares in the future, they would have first learned that the P-Trade Policy was in place." (Opp. at 5-6).  This argument is largely indecipherable, does not cite to any allegations in the Amended Complaint, and appears to conflate Plaintiff's derivative claims on behalf of Eltek with unasserted and fictional claims by some hypothetical investor that "might" have sold Eltek shares and then might have tried to repurchase them.  Even if such assertions were part of the Amended Complaint—which they are not—they would fail to support a claim of scienter. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813

---

[4] For example, Plaintiff had no response to the fact that traders could trade Eltek by phone at Morgan Stanley or through thousands of other brokers other than to say that the "argument is an attempt to distract." (Opp. at 5.)

(2d Cir. 1996) ("Plaintiffs do not . . . enjoy a 'license to base claims of fraud on speculation and conclusory allegations.'").

### B. Plaintiff Has Failed to Allege That Morgan Stanley Engaged in a Manipulative Act

Plaintiff fares no better with its argument that it adequately pled a "manipulative act." Manipulative acts are "practices . . . that are intended to mislead investors by artificially affecting market activity." *ATSI Commc'ns, Inc.*, 493 F.3d at 100 (citation omitted). Plaintiff fails to plead particularized facts showing that the P-Trade Policy was designed to, or had the ability to, manipulate the stock price given that (a) Plaintiff concedes the P-Trade Policy's purpose was to "address fraud" and (2) customers had full ability to purchase Eltek shares by phone at Morgan Stanley or through thousands of other brokers. Moreover, as alleged in the Amended Complaint, and conceded in the Opposition, Morgan Stanley disclosed the existence of the P-Trade policy to buyers of Eltek shares on its platform, which is a fact that is fatal to Plaintiff's claim. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011) ("[T]he market is not misled when a transaction's terms are fully disclosed.").

Incredibly, Plaintiff tries to get around *Wilson* by claiming that Morgan Stanly omitted from its disclosure "that purchases of shares of Eltek are being restricted to remedy, or protect consumers, because MSSB's own Fraud Operations Unit detected . . . manipulation; that would have been full disclosure of the transaction terms." (Opp. at 7.) This argument does not save Plaintiff's claims—it sinks them. First, it concedes that Morgan Stanley was acting to protect customers, not manipulate share prices. Second, Plaintiff does not allege that Morgan Stanley had a duty to disclose the reasoning behind its policy,[5] but even if it did, information about the

---

[5] Rule 10b–5(b) "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 131 S. Ct. 1309, (2011). "[A]n omission

anomalously high trading volume was publicly known such that it led to NASDAQ's halt of trading of Eltek shares. (AC ¶¶ 72-73.) *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (holding there is no duty to disclose information to one who reasonably should be already aware of it).[6]

### C.    Plaintiff Has Failed to Allege a Cognizable Loss or Loss Causation

On the issue of damages and loss causation, Plaintiff again resorts to cutting and pasting large portions of its pleadings into the Opposition and asks the Court to locate cognizable losses and causation therein.  There are none there.

None of the allegations cited in the Opposition allege legally cognizable economic harm to Eltek.  Instead, they consist of undated, generalized, and speculative assertions of "suppressed stock value, impaired capital raising, and lost growth opportunities," which Plaintiff only describes in vague and indefinite terms (e.g. unexplained "delayed acquisitions"). (AC ¶ 142, 144.) These allegations fail to allege a legally cognizable loss or loss causation. *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 430 (S.D.N.Y. 2010) (Plaintiff must plead facts showing a "legally cognizable loss" and a "causal connection between the alleged manipulation . . . and the loss" in order to state a claim for market manipulation); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. at 307 (Paintiff must allege that it suffered "specific economic harm as [a] result of Defendants' conduct").

---

is actionable under . . . only when the corporation is subject to a duty to disclose the omitted facts." *In re Time Warner Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). .

[6] Plaintiff's opposition papers include affidavits and exhibits outside of the Amended Complaint. "[G]enerally, courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018).  In any event, these materials fail to rebut Morgan Stanley's showing that the operative pleading and the Proposed SAC are fatally infirm.

7

Additionally, the Opposition fails to identify a plausible "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks omitted).  Indeed, none of the allegations cited in the Opposition's loss causation section mention the P-Trade Policy at all; nor do they actually assert that it was the P-Trade Policy that caused any particular harm to Eltek.  In fact, the first cited allegation references purported "suppressed stock value" from January 3, 2022 through May 17, 2023—which is a time period *after* the P-Trade Policy had ended. (Opp. at 11.)  The Opposition does not identify any harm that occurred during the period of the P-Trade Policy, i.e., the 9-month period following October 16, 2020.  Accordingly, the cited allegations fail to allege loss causation.  *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (holding the complaint failed to allege loss causation where plaintiff "[did] not detail how the alleged fraud directly and proximately resulted" in plaintiff's damage).

On top of all the failings above, the Opposition does not address the basic implausibility that alleged harm to Eltek (e.g., "lost growth opportunities") was caused by the P-Trade Policy's requirement that a customer pick up a phone to trade Eltek, rather than type its order into a phone or computer.  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 300 (S.D.N.Y. 2014) (dismissing complaint where plaintiffs failed to allege a "plausible" connection between a decrease in stock price and the alleged fraud), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).

What is more, several cases cited by Plaintiff undermine its argument and establish that dismissal is proper where, as here, a plaintiff failed to adequately plead loss causation. *See, e.g.*, Opp. at 10-11 citing *Joffee v. Lehman Bros.*, 410 F. Supp. 2d 187, 191 (S.D.N.Y. 2006), *aff'd*, 209 F. App'x 80 (2d Cir. 2006) (holding plaintiff failed to adequately allege "a causal connection between that decline and Lehman's representations or alleged omissions") and *Lentell*, 396 F.3d

8

at 175 (dismissing claim where plaintiff failed to allege defendant's conduct "is the cause of the decline in stock value that plaintiffs claim as their loss"). And the few cases that Plaintiff cites where a court denied a dismissal motion based on a lack of loss causation involved specific allegations of cognizable losses, including allegations of specific transactions, on specific dates, causing quantifiable trading losses linked to a defendant's conduct. *See*, *e.g.*, *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 826–27 (S.D.N.Y. 2006) (plaintiff alleged that defendants' trading activity on specific dates, between September 28, 2001, and October 5, 2001, caused the plaintiff's losses on a specific PIPE priced at $12 per share October 8, 2021)); *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 343 (S.D.N.Y. 2017) (plaintiff alleges losses on a specific purchase of Oxysure stock from defendants pursuant to an agreement with defendants); *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 440l, 451 (S.D.N.Y. 2019) (finding loss causation where plaintiffs alleged that exchanges enabled high-frequency trading firms to exploit loopholes in return for directing their trading activity to the defendant exchanges causing plaintiffs to trade on "worse prices than advertised"). These cases are clearly distinguishable from the vague allegations of loss in the Amended Complaint, which include no description the actual transactions involved, when they occurred, or how they are connected (either substantively or temporally) to Morgan Stanley's actions.

Tellingly, Plaintiff cites no case where a plaintiff was found to have adequately plead loss causation with nondescript and speculative allegations similar to those in the Amended Complaint. This is because caselaw holds otherwise. *See, e.g.*, *Aimis Art Corp. v. N. Tr. Secs., Inc.*, 641 F. Supp. 2d 314, 320 (S.D.N.Y. 2009) ("[A] plaintiff in an action under § 10(b) and Rule 10b–5 cannot recover for 'damages' based on hypothetical investments he did not make").

9

### D.    Plaintiff Has Failed to Plead Reliance

Plaintiff does not allege in the Amended Complaint, nor argue in the Opposition, that Eltek relied on any statement Morgan Stanley made or any manner in which Morgan Stanley allowed its customers to trade.  Instead, Plaintiff argues that it met the reliance pleading element because the Amended Complaint "alleges facts showing 'reliance on the integrity of the market.'" (Opp. at 8.)  Plaintiff fails to cite to any supporting allegation in the Amended Complaint asserting reliance on the "integrity of the market" because none exist.  Plaintiff's attempt to effectively amend its pleadings with a new reliance theory set forth in the Opposition is improper and should be rejected.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (parties may not amend their pleadings through assertions in motion papers).

In any event, an alleged "reliance" based on a belief in market efficiency would require Plaintiff to plead facts that would show that Morgan Stanley's conduct "sen[t] a false pricing signal to the market" while Eltek believed that the market "'reflect[ed] undistorted . . . estimates of the underlying economic value of the securities traded.'"  *ATSI Commc'ns, Inc.*, 493 F.3d at 100.  Again, Plaintiff makes no such allegations.  Rather, the Amended Complaint belies such a theory by alleging that the market showed signs of manipulation by the John Doe Defendants prior to and after the period of the P-Trade Policy, including multiple trading halts by NASDAQ. (AC ¶¶ 1, 73.)  Thus, Plaintiff could not assume an efficient, manipulation-free market.

Additionally, Plaintiff wrongfully asserts that, under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), reliance is "presumed" because Plaintiff's federal securities claim is based on "omissions" of material facts.  (Opp. at 9.)  This argument fails at the gate because the claims against Morgan Stanley are based on the implementation of the P-Trade Policy, not on omissions of material facts in statements to Eltek investors or Eltek.  (AC ¶ 151-155); *Waggoner*

*v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017) (dismissing claim and holding a presumption of reliance only applies where complaint is based primarily on allegations of omissions).

Moreover, even if Plaintiff had alleged purported "omissions" of fact as the basis for its claims under 10b-5(a) and (c), that still would be legally insufficient. "Omissions" alone cannot sustain 10b-5(a) and (c) claims. *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) ("omissions alone are not enough for scheme liability"). Plaintiff does not allege a claim under 10b-5(b), which concerns material misstatements or omissions.

### III.    Plaintiff's Common Law Fraud Claim Fails

Plaintiff's claim for common law fraud fails for all the same reasons that its Exchange Act claims fail. *Cartwright v. D'Alleva*, No. 17 Civ. 5953 (AT) (KHP), 2018 WL 9343524, at *6 (S.D.N.Y. Aug. 27, 2018) (dismissing common law fraud claims that "'essentially track[ed] [the] Section 10(b)claims'"), *aff'd*, 782 F. App'x 77 (2d Cir. 2019). Moreover, the Opposition lists Plaintiff's allegations of common law fraud (Opp. at 27-28), but tellingly does not—because it cannot—cite to any allegation that Morgan Stanley made any representation to Eltek or that Eltek relied in any way on the manner in which Morgan Stanley processed Eltek trades. Plaintiff attempts to remedy these defects in the SAC, but, as discussed below, these efforts fail.

### IV.    Plaintiff's Section 10(b) Claim is Time-Barred

Plaintiff spends several pages in the Opposition arguing that its claim against Morgan Stanley was brought within the statute of repose time period. (Opp. at 14-17.) But Morgan Stanley moved to dismiss based on the statute of limitations, not repose.

A Section 10(b) claim is required to be brought by "not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b)(1)-(2). Under this statute of limitation, Plaintiff's claims are

time-barred.  According to the Amended Complaint, the P-Trade Policy was implemented on October 16, 2020, and ended nine months later.  All of the information that purportedly forms the basis of Plaintiff's claims against Morgan Stanley regarding the P-Trade Policy was known to Plaintiff by February 2021 at the latest.  Indeed, Plaintiff concedes that Plaintiff's sole member, Michael McGauley, knew about the P-Trade by February 9, 2021, and had taken the position he had claims against Morgan Stanley for initiating the P-Trade Policy.  Plaintiff, however, did not file this action until October 15, 2025, which is well beyond the two-year statute of limitations following discovery.  Moreover, Plaintiff had access to publicly available data relating to Eltek trading during the period of the P-Trade Policy in 2020.  (AC ¶¶ 73, 76.)

Unable to dispute the above in its Opposition, Plaintiff attempts to evade dismissal by claiming that it did not connect the P-Trade Policy to purported Morgan Stanley "KYC" issues until a later date.  (Opp. at 19-20.)  But Plaintiff fails to identify what new information it purportedly "discovered" after February 2021, when it was discovered, or how it relates to its claim.  Moreover, in another scattershot attempt to avoid dismissal, Plaintiff alleges that economic harm did not materialize for Eltek until February 2024.  But, in making this specious argument, Plaintiff ignores that the Amended Complaint alleged that "Eltek suffered substantial harm, including suppressed stock value" back on January 3, 2022, a period well beyond the statute of limitations.  (AC ¶ 142.)  Accordingly, dismissal is warranted.

## V.      The Proposed SAC Is Fatally Deficient Too; Leave to Amend Should be Denied

As an initial matter, Plaintiff's attempt to obtain leave to amend by attaching the Proposed SAC as an exhibit to its opposition papers is procedurally deficient.  Fed. R. Civ. P. 15(a) (further amendments require either the opposing party's written consent or leave of court); Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion").

12

But, in any event, filing the Proposed SAC would be futile.  Indeed, it does not even attempt to amend any of the allegations underlying the federal securities claim against Morgan Stanley. Accordingly, Count I in the SAC for violation of SEA 10(b) and Rule 10b-5(a) and (c) fails to state a claim for the exact same reasons set forth above.

Furthermore, the added allegations in the SAC relating to the common law fraud (Proposed SAC ¶¶ 199-207) are vague, devoid of particularized facts, and fail to cure any of the claim's infirmities.  For example, Plaintiff's new allegations assert that Morgan Stanley's did not notify Eltek of its P-Trade Policy and that this was a "material omission." But, fatal to the claim, Plaintiff fails to allege that Morgan Stanley had a duty to disclose that information to Eltek or that the "omission" was the result of a fraudulent motive.  *Ambase Corp. v. 111 W. 57th Sponsor LLC*, 221 A.D.3d 521, 523 (1st Dep't 2023) (dismissing fraud claim based on omission where plaintiffs did not allege any duty to disclose).  Furthermore, Plaintiff's added "reliance" allegation is incomprehensible (Proposed SAC ¶ 204)[7] and Plaintiff does not even attempt to cure its damages/loss causation deficiencies.

Finally, the SAC does not cure the derivative action deficiencies because it fails to allege that Plaintiff obtained "approval by the Court," as required under Israel Companies Law 5759-1999, § 198.  The definition of "Court" is defined as the "District Court" in Israel. (Opp. at 26.) Plaintiff, in its Opposition, attempts to excuse its non-compliance with this requirement by arguing that the requirement under Israeli law is a "'procedural matter" that "does not govern New York Plaintiffs." (Opp. at 23.)  Plaintiff cites *Mason-Mahon v. Flint*, 166 A.D.3d 754, 755 (2d Dep't 2018)—but that case did not recognize a categorical rule that foreign laws requiring

---

[7] The Proposed SAC demonstrates that Eltek did not "rely" on Morgan Stanley or its policies in deciding to list on NASDAQ; Eltek was listed on NASDAQ before, during, and after the P-Trade policy and through the present day. (*See, e.g.*, Proposed SAC ¶ 86.)

judicial approval of derivative actions are always characterized as procedural. Rather, it held that the U.K. law at issue in that case was procedural because "by its own terms . . . [it] applies to derivative claims brought in England." *Id.* at 756. The Israeli law, conversely, has no such restriction on its application and is therefore more closely in line with the judicial-permission requirements in the British Virgin Islands and Canada, which the Court of Appeals, in *Davis v. Scottish Re Grp. Ltd.*, 30 N.Y.3d 247, 254-255 (2017), described as substantive.[8]

For the above reasons, the Proposed SAC is fatally infirm and Plaintiff should be denied leave to amend. *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (affirming denial of leave to amend where amendment would be futile).

## CONCLUSION

The Opposition concedes that the Amended Complaint is deficient under Rule 23.1 so that dismissal is warranted. The Amended Complaint and the Proposed SAC also fail for myriad other infirmities set forth above. After filing two grossly deficient pleadings, and proposing a third one with the same infirmities, this case should end and the Amended Complaint should be dismissed with prejudice.

Date: April 24, 2026

LEADER BERKON COLAO &
SILVERSTEIN LLP

By: /s/ *Michael J. Tiffany*
    Glen Silverstein, Esq.
    gsilverstein@leaderberkon.com
    Michael J. Tiffany, Esq.
    mtiffany@leaderberkon.com
    630 Third Avenue, 17th Floor
    New York, New York 10017

    *Attorneys for Defendant Morgan Stanley
    Smith Barney LLC*

---

[8] Nor does the Amended Complaint include any allegations supporting a determination that this action is "to the benefit of the company" such that approval would be warranted by this Court.

14

**LOCAL RULE 7.1(C) CERTIFICATION**

I, Michael J. Tiffany, hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746, that the total number of words in this reply memorandum of law in support of its motion to dismiss Plaintiff XDOOD LLC's Amended Complaint against Morgan Stanley and in opposition to Plaintiff's request for leave to file a second amended complaint, inclusive of headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, certificate of word count and signature block, is 4,721 words, and accordingly is in compliance with the word limits delineated in Local Rule 7.1(c) for opposition motions. In determining the number of words, I relied on the word count of the word-processing system used to prepare the document.

Date: April 24, 2026

LEADER BERKON COLAO & SILVERSTEIN LLP

By: /s/ *Michael J. Tiffany*
Glen Silverstein, Esq.
gsilverstein@leaderberkon.com
Michael J. Tiffany, Esq.
mtiffany@leaderberkon.com
630 Third Avenue, 17th Floor
New York, New York 10017

*Attorneys for Defendant Morgan Stanley Smith Barney LLC*