UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
XDOOD LLC, derivatively on behalf of ELTEK, LTD.,

                      Plaintiff,

                       -against-                            25-cv-8536 (LAK)

INTERACTIVE BROKERS GROUP, INC., MORGAN
STANLEY SMITH BARNEY LLC, and JOHN DOES 1-10,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/14/2026

**MEMORANDUM AND ORDER GRANTING
MOTION TO DISMISS THE AMENDED COMPLAINT**

LEWIS A. KAPLAN, *District Judge.*

      Plaintiff here purports to bring this stockholder derivative action on behalf of a small Israeli company, Eltek, Ltd. ("Eltek"). It seeks to recover for Eltek's benefit damages that plaintiff claims Eltek suffered from the alleged manipulation of the price of Eltek stock over a period of many years (and continuing today) by persons *unknown*, who are identified in the amended complaint only as "John Does."

      As plaintiff (despite its self-described "Herculean efforts" to investigate the alleged scheme)[1] evidently does not know who carried out this alleged manipulation over the last six or seven years, it has sued also two (presumably solvent) institutional defendants – Interactive Brokers Group, Inc. ("IBKR") and Morgan Stanley Smith Barney LLC ("MSSB") – for what plaintiff

---

[1]     Pl.'s Opp'n (Dkt 47-13) at 19.

2

endeavors to allege was culpable misbehavior.  Each has move to dismissed the amended complaint

against it.  This memorandum and order resolves MSSB's motion.

***Facts***

Understanding plaintiff's alleged grievances given its discursive and excessively

lengthy amended complaint and motion papers is a bit of a challenge.  But the broadest of outlines

is all that is required to resolve this motion, so the Court limits itself to that.  In doing so, the Court

assumes the truth of all well-pleaded factual allegations in the amended complaint,[2] draws

reasonable inferences in favor of plaintiff,[3] and excludes from consideration all materials submitted

that were not attached or integral to the amended complaint or incorporated in it by reference.[4]

*The Alleged Manipulation*

The core of plaintiff's claim is that several "John Does[, as] minority Eltek

shareholders . . . , through trading manipulation schemes, committed corporate sabotage and acted

as a headwind for [Eltek]'s growth initiatives" during the period beginning in November 2019 and

continuing through the present.[5]  The John Does allegedly "are liable as the primary violators who

executed the underlying manipulation, including (but not limited to) wash trades, matched orders,

---

[2]     *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024).

[3]     *Id.*

[4]     *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[5]     Am. Compl. (Dkt 6) ¶¶ 1-2.

3

spoofing, and a multi-year price fixing scheme."[6]  The objective throughout, according to plaintiff,

has been "a continuous campaign to artificially suppress, freeze, and distort the price of [Eltek]

shares."[7]

*The Alleged Cover-Up*

So what does that have to do with MSSB, which merely acted as one of many broker-

dealers intermediating sales and purchases of Eltek shares during the relevant period?

According to plaintiff, MSSB, on or about October 16, 2020, decided to disallow

*electronic* purchases of Eltek stock for approximately nine months.[8]  This so-called "P-Trade

Policy" allowed MSSB customers to continue to purchase Eltek shares *over the telephone*.[9]  Despite

alleging that MSSB instituted the P-Trade Policy to address the detected manipulation by the John

Does,[10] plaintiff insists that MSSB nonetheless was "complicit" in the alleged manipulation

scheme.[11]  In plaintiff's telling, MSSB's complicity boils down to its failure to notify proactively

customers who held Eltek shares and those who sold Eltek shares during the relevant period about

---

[6]    *Id.* ¶ 9.

[7]    *Id.* ¶ 67.

[8]    *Id.* ¶ 4.

[9]    *Id.*

[10]    *Id.*

[11]    *Id.* ¶ 6.

4

the P-Trade Policy.[12]  MSSB failed to do so, according to plaintiff, because MSSB sought to cover up its own alleged "Know Your Customer" violations that enabled the John Does' fraudulent trading in the first instance.[13]  The amended complaint does not describe those alleged violations or explain how the P-Trade Policy allegedly concealed them.  Additionally, despite the allegedly "secret" nature of the P-Trade Policy,[14] plaintiff acknowledges that customers who tried to purchase Eltek stock online during the relevant period observed a message directing them to call MSSB customer service and that, on July 22, 2021, MSSB counsel disclosed that the policy had been adopted by MSSB's Fraud Operations Unit.[15]  In any case, the policy ended approximately nine months after its adoption.[16]

*The Alleged Damages*

Plaintiff claims that the P-Trade Policy "suppressed legitimate purchase access" to Eltek stock while "simultaneously permitt[ing it] to be borrowed for short-side activity through [MSSB]'s share lending program."[17]  Plaintiff asserts that this "created a downward asymmetrical

---

[12]     *Id.* ¶ 4.

[13]     *See id.* ¶¶ 7, 124, 154.

[14]     *Id.* ¶¶ 7, 47, 144, 153-54.

[15]     *Id.* ¶¶ 40-42.

[16]     *Id.* ¶¶ 4, 7, 153.

[17]     *Id.* ¶ 47.

5

market for Eltek's stock,"[18] which – despite the P-Trade Policy ending in approximately July 2021 – plaintiff says forced Eltek to miss growth opportunities and, in early 2024, to raise capital on less favorable terms and dilute the value of its stock.[19]

## *Discussion*

Plaintiff attempts to bring two claims for relief against MSSB. The first claim is brought under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")[20] and Rules 10b-5(a) and (c) thereunder. Its theory is that MSSB employed the P-Trade Policy as a manipulative and deceptive device that "[o]perated as a fraud on the market by deceptively concealing a material fact (that MSSB, a major broker, was unilaterally barring all electronic purchases of Eltek stock)" and that the P-Trade Policy "[c]reated a false appearance of weak market demand, artificially suppressing Eltek's share price."[21] The second claim is brought under state law and alleges common law fraud with respect to the same conduct underpinning the Exchange Act claim.[22]

To be sure, plaintiff tries to wrap a conspiratorial robe around the P-Trade Policy, but even the best seamstress could not stitch together the tatters of cloth that plaintiff holds up as sufficient.

---

[18] *Id.* ¶ 48.

[19] *Id.* ¶¶ 120, 136, 142-48.

[20] 15 U.S.C. § 78j.

[21] Am. Compl. (Dkt 6) ¶ 153.

[22] *Id.* ¶¶ 172-78.

6

*The Exchange Act Claim*

As MSSB's memoranda of law clearly demonstrate, the Exchange Act claim fails for a host of independently sufficient reasons: (1) failure to plead a manipulative act, (2) failure to plead *scienter* sufficiently, (3) failure to plead reliance, and (4) failure to allege a cognizable loss or loss causation.[23]    The Court is in substantial agreement with all of its arguments and therefore puts sharper points on just a few of them.

First, as alleged, the P-Trade Policy neither was manipulative nor deceptive.  It was disclosed (albeit not publicized), and MSSB's customers always had the options of picking up the telephone and placing a purchase order or placing electronic purchase orders through other brokerage houses.  Plaintiff's complaint that the P-Trade Policy continued to allow Eltek share lending and thus short selling is another red herring.  All or most broker-dealers permit their qualified customers to engage in short sales and actively source shares from their clients to lend to short sellers – both the short sales and the sourcing of shares to short appear to be significant revenue sources in the industry.  The fact that the P-Trade Policy, which, according to the amended complaint and to common sense, addressed possible fraud in connection with electronic purchase orders and not activity on the short side is thoroughly unremarkable.  In short, plaintiff failed to demonstrate how the P-Trade Policy aimed to, let alone did, deceive investors as to how other market participants valued Eltek stock.[24]

---

23

        *See* MSSB's Mem. Law (Dkt 37) at 9-19; MSSB's Reply (Dkt 54) at 3-11.

24

        *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007); *see also Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130-31 (2d Cir. 2011) (discussing extent to which manipulative conduct must involve misrepresentation or nondisclosure).

Second, plaintiff flatly concedes that MSSB instituted the P-Trade Policy "*[t]o address detected manipulation.*"[25] Even in the light most favorable to plaintiff, there is no way to squint hard enough to see that conceded motive as *scienter*.[26]

Third, plaintiff argues that it relied "on the assumption that [Eltek's] stock . . . would be publicly traded and valued in an efficient market free of manipulation."[27] That premise on its own terms makes no sense given plaintiff's admission that MSSB instituted the P-Trade Policy in a market that already was being (and, in plaintiff's telling, continued to be) manipulated by the John Does. Such reliance, assuming it subjectively existed, would have been objectively unreasonable.[28]

Fourth, plaintiff's theory of loss and causation simply is too attenuated to be sufficient. Plaintiff does not establish plausibly how an inability to purchase online Eltek shares from one broker-dealer for a period of approximately nine months caused Eltek to miss growth opportunities and, about three years later, to raise more capital on value-diluting terms.[29]

Finally, plaintiff's Exchange Act claim in any event is barred by the statute of limitations.[30] Plaintiff knew the alleged facts (other than the magnitude of the alleged damages)

---

[25] Am. Compl. (Dkt 6) ¶ 4 (emphasis added).

[26] *See ATSI Commc'ns*, 493 F.3d at 99; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).

[27] Pl.'s Opp'n (Dkt 47-13) at 8.

[28] *See Emergent Cap. Inv. Mgt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).

[29] *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496-97 (2d Cir. 1992).

[30] *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 654 (2010).

8

constituting the alleged violation since at least February 2021.[31]  It nevertheless waited over four years to file this action, long surpassing the two years in which it could have done so timely.[32]

*The Common Law Fraud Claim*

Plaintiff's common law fraud claim likewise is insufficient for the reasons stated by MSSB.[33]  It utterly fails even to attempt to comply with Federal Rule of Civil Procedure 9(b), which requires that averments of fraud be made with particularity.

*Other Issues*

MSSB argues that the amended complaint fails to plead adequately the requisite of a demand on Eltek's board.  It admittedly is correct.  Plaintiff nevertheless has filed as part of its response to the motions to dismiss a proposed second amended complaint, which it contends, and MSSB denies, overcomes this difficulty as well as the fatal shortcomings in its common law fraud claim.

This seems to be a singularly inappropriate time to get into the question of whether plaintiff should be permitted to amend yet again and whether the proposed second amended complaint cures any of the defects of the current pleading.  Suffice it to say that the better course of action is to decide the motion before the Court and then see what, if anything, the future holds.

---

[31]  *See* MSSB's Mem. Law (Dkt 37) at 22-23; MSSB's Reply (Dkt 54) at 11-12.

[32]  *See* 28 U.S.C. § 1658(b).

[33]  *See* MSSB's Mem. Law (Dkt 37) at 19-20; MSSB's Reply (Dkt 54) at 11.

9

## *Conclusion*

The motion of MSSB to dismiss the amended complaint (Dkt 36) is granted in all

respects.

SO ORDERED.

Dated:        May 14, 2026

Lewis A. Kaplan
United States District Judge