UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
XDOOD LLC, derivatively on behalf of ELTEK, LTD.,

           Plaintiff,

        -against-                         25-cv-8536 (LAK)

INTERACTIVE BROKERS GROUP, INC., MORGAN
STANLEY SMITH BARNEY LLC, and JOHN DOES 1-10,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY<br>
DOCUMENT<br>
ELECTRONICALLY FILED<br>
DOC #: _____<br>
DATE FILED: __5/27/2026__

## MEMORANDUM AND ORDER GRANTING
## MOTION TO DISMISS THE AMENDED COMPLAINT

LEWIS A. KAPLAN, *District Judge.*

      Plaintiff brings this stockholder derivative action on behalf of a small Israeli company, Eltek, Ltd. ("Eltek"). It seeks to recover for Eltek's benefit damages that plaintiff claims Eltek suffered from the alleged manipulation of the price of Eltek stock over a period of many years (and continuing today) by persons *unknown*, who are identified in the amended complaint only as "John Does."

      As plaintiff (despite its self-described "Herculean efforts" to investigate the alleged scheme)[1] evidently does not know who carried out this alleged manipulation over the last six or seven years, it has sued also two (presumably solvent) institutional defendants – Interactive Brokers Group, Inc. ("IBKR") and Morgan Stanley Smith Barney LLC ("MSSB") – for what plaintiff endeavors to allege was culpable misbehavior. Each moved to dismiss the amended complaint

---

[1]     Pl.'s Opp'n MSSB's Mot. Dismiss (Dkt 47-13) at 19.

2

against it.  The Court previously granted MSSB's motion.[2]  This memorandum and order now resolves IBKR's motion.

### *Facts*

As with plaintiff's allegations against MSSB, the contours of plaintiff's claims against IBKR are not entirely clear due to the discursive nature of the amended complaint and plaintiff's motion papers.  Nevertheless, as with the Court's memorandum and order dismissing the amended complaint against MSSB, the Court here limits itself to providing the broadest of outlines of plaintiff's claims, which is all that is required to resolve this motion.  In doing so, the Court assumes the truth of all well-pleaded factual allegations in the amended complaint,[3] draws reasonable inferences in favor of plaintiff,[4] and excludes from consideration all materials submitted that were not attached or integral to the amended complaint or incorporated in it by reference.[5]

*The Alleged Manipulation*

The core of plaintiff's claims against IBKR continues to be that several "John Does[, as] minority Eltek shareholders . . . , through trading manipulation schemes, committed corporate sabotage and acted as a headwind for [Eltek]'s growth initiatives" during the period beginning in

---

[2] Mem. & Order (Dkt 55).

[3] *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 180 (2024).

[4] *Id.*

[5] *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

November 2019 and continuing through the present.[6]  The John Does allegedly "are liable as the primary violators who executed the underlying manipulation, including (but not limited to) wash trades, matched orders, spoofing, and a multi-year price fixing scheme."[7]  The objective throughout, according to plaintiff, has been "a continuous campaign to artificially suppress, freeze, and distort the price of [Eltek] shares."[8]

*The Alleged Facilitation*

So what does plaintiff claim renders IBKR liable in these circumstances?

At one point in the amended complaint, IBKR is said to have been a "broker-dealer."[9] At another, it is said to have been a "holding company," which, "[t]ogether with its [unnamed] affiliates, . . . "serves as an automated global electronic stockbroker-dealer."[10]  Further on, it is said to have "own[ed] and operate[d] its own [alternative trading system] called IATS IBKR ATS,"[11] which allegedly "play[ed] a prominent role in trading [Eltek] shares."[12]  In any case, it is said to be "primarily liable as a key participant in the" alleged manipulation by the John Does because "[i]t

---

[6]     Am. Compl. (Dkt 6) ¶¶ 1-2.

[7]     *Id.* ¶ 9.

[8]     *Id.* ¶ 67.

[9]     *Id.* ¶ 2.

[10]    *Id.* ¶ 23.

[11]    *Id.* ¶ 38.

[12]    *Id.* ¶ 49.

4

intentionally or with deliberate recklessness . . . default[ed] accounts to objectional owners ('OBO') anonymity," applied "a permissive interpretation of Rule 15c3-5 laxer than its peers," provided "short shares and borrow rates that were designed and structured to attract, conceal, and monetize manipulative trading," "offered trading capability during the earliest pre-market hours," and, through all of it, made money doing so.[13]  In brief, IBKR allegedly employed a "Deceptive Business Model Scheme" – comprised of the above policies and practices – to facilitate short selling by the John Doe customers, whose objective was to depress the price of Eltek shares.[14]

*The Alleged Damages*

Plaintiff claims that, like MSSB's P-Trade Policy, IBKR's so-called Deceptive Business Model Scheme "facilitated the suppression of Eltek's stock price," which damaged Eltek by "impair[ing] capital raising" and causing it to "los[e] growth opportunities."[15]

***Discussion***

As with MSSB, plaintiff attempts to bring two claims for relief against IBKR.  The first claim is brought under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")[16] and Rules 10b-5(a) and (c) thereunder.  Its theory is that IBKR's alleged Deceptive Business

---

[13]    *Id.* ¶¶ 8, 53-55, 66, 125-26, 157-58.

[14]    *Id.* ¶¶ 8, 65, 157-60.

[15]    *Id.* ¶¶ 142, 160.

[16]    15 U.S.C. § 78j.

5

Model Scheme "provided the [John Does] with the venue, anonymity, timing flexibility, and mechanics required to execute the trading activity."[17]  The second claim is brought under state law and alleges common law fraud with respect to the same conduct underpinning the Exchange Act claim.

Apart from its entirely conclusory and factually unsupported claim that IBKR employed a so-called Deceptive Business Model Scheme to facilitate manipulative trading, the amended complaint alleges no facts that support the view that IBKR was part of a manipulative cabal or acted with any purpose or intent besides making money by providing the sorts of services that broker-dealers regularly supply to customers who take short positions in securities.  The amended complaint falls woefully short of stating a legally sufficient claim for relief for many of the reasons stated in IBKR's memoranda of law.[18]  The Court highlights a few of them.

First of all, the amended complaint purports to charge IBKR with "primary liability" for alleged market manipulation in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Yet it alleges no facts – as opposed to conclusions – establishing anything more than that IBKR, like many another broker-dealers (if indeed IBKR was a broker-dealer), facilitated short sales by customers interested in shorting securities and profited by doing so.  Assuming the truth of that allegation, there is no legally sufficient claim of manipulation of any kind, let alone of primary liability.[19]

---

[17]  Am. Compl. (Dkt 6) ¶ 65.

[18]  *See* IBKR's Mem. Law (Dkt 33) at 7-25; IBKR's Reply (Dkt 53) at 1-15.

[19]  *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 185 (2d Cir. 2013) ("[T]he performance of routine clearing services, without more, cannot trigger primary liability under § 10(b) of the Securities Exchange Act."); *Dennis v. JPMorgan Chase & Co.*, 343 F.

6

Plaintiff admits (as it must) that "any one of the acts" comprising IBKR's supposedly Deceptive Business Model Scheme is lawful and thus could "be explained away in isolation."[20] Plaintiff nonetheless maintains that "their combination makes no legitimate business sense" and therefore is manipulative.[21] That conclusion, however, does not follow necessarily. The trouble for plaintiff is that, without more, it has pleaded facts that could be "merely consistent with" IBKR's liability, thus "stop[ping] short of the line between possibility and plausibility of 'entitlement to relief.'"[22] Indeed, based on the scant allegations in the amended complaint, it is far more likely that IBKR chose to employ lawful (and perhaps profitable) broker-dealer strategies to attract and retain customers than to attempt to manipulate the market.

To plead sufficiently that IBKR's business model, which, by plaintiff's own admission, was "not inherently manipulative," nonetheless "constitute[d] manipulative activity," plaintiff had to show that IBKR had "manipulative intent," or *scienter*.[23] It quite plainly did not do so. It neither "identified any individual whose *scienter* may be imputed to" IBKR nor alleged that

---

Supp. 3d 122, 180 (S.D.N.Y. 2018) (LAK), *abrogated on other grounds by DirecTV, LLC v. Nexstar Media Grp.*, 162 F.4th 295 (2d Cir. 2025).

[20] Am. Compl. (Dkt 6) ¶ 159; *see Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 77 (2d Cir. 2021) ("[S]hort selling . . . is not, by itself, manipulative."); 17 C.F.R. § 240.14b-1(b)(ii) (contemplating and thus allowing for objecting-beneficial-owner status); *see also* Am. Compl. (Dkt 6) ¶¶ 54, 158 (describing IBKR's implementation of 17 C.F.R. § 240.15c3-5 as "laxer" than that of its peers but not unlawful).

[21] Am. Compl. (Dkt 6) ¶ 159.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[23] *Set Cap. LLC*, 996 F.3d at 77.

"collective corporate *scienter* may be inferred."[24]    IBKR's alleged motive to earn profits is insufficient "to permit an inference of *scienter* under Rule 9(b)."[25]    Plaintiff is left with only its contradictory, self-defeating, and conclusory allegations that IBKR "acted with . . . deliberate recklessness" when it engaged in otherwise lawful behavior.[26]

Second, plaintiff fails to plead sufficiently reliance or loss causation against IBKR for the same reasons it failed to do so against MSSB.[27]

Third, the common law fraud claim is entirely deficient because, no doubt among other flaws, it fails to comply with Rule 9(b).[28]

Any one of these reasons would suffice to warrant dismissal of the amended complaint against IBKR.  They all moreover presumed *arguendo* that IBKR was a broker-dealer as plaintiff alleged, that plaintiff complied with the pleading requirements of Rule 23.1 and the substantive requirements of bringing a derivative action under the applicable state or foreign law governing Eltek, and that plaintiff's Exchange Act claim was not barred by the statute of limitations. In these circumstances, there is no need to decide whether these "procedural[] deficien[cies]," as

---

[24]    *Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020) (per curiam).

[25]    *San Leandro Emer. Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813-14 (2d Cir. 1996).

[26]    *See* Am. Compl. (Dkt 6) ¶ 125.

[27]    *See* Mem. & Order (Dkt 55) at 7.

[28]    *See, e.g.*, *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 208 (S.D.N.Y. 1996).

8

IBKR styles them,[29] are fatal (although IBKR's arguments to that effect appear to have merit) or whether they could be cured by another amended pleading.  Nor will the Court now address plaintiff's request for leave to amend in the event the current amended complaint is found wanting. Sufficient unto the day is the present motion and decision.

### *Conclusion*

The motion of IBKR to dismiss the amended complaint (Dkt 32) is granted in all respects.

SO ORDERED.

Dated:        May 27, 2026

_____
Lewis A. Kaplan
United States District Judge

---

[29]     IBKR's Mem. Law (Dkt 33) at 7.